**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GINA MCINTOSH, Individually and On Behalf of All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>     v.<br><br>KATAPULT HOLDINGS, INC., LEE EINBINDER, HOWARD KURZ, ORLANDO ZAYAS, and KARISSA CUPITO,<br><br>                       Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Gina McIntosh ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Katapult Holdings, Inc. ("Katapult" or the "Company"), f/k/a FinServ Acquisition Corp. ("FinServ"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Katapult; and (c) review of other publicly available information concerning Katapult.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Katapult securities between December 18, 2020 and August 10, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Katapult claims to be a "next-generation platform for digital and mobile-first commerce focused on the non-prime consumer." Katapult provides point-of-sale lease-purchase options for non-prime consumers (*i.e.* consumers with credit scores are higher than those of subprime borrowers, but lower than those of prime borrowers) who cannot access traditional financing products. Katapult allegedly "solves critical consumer pain points by transforming the way non-prime consumers shop for durable goods" and claims merchants benefit from "higher retail conversion and greater marketing spend efficiency by reaching this underserved segment."

3.      FinServ was a blank check company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses.

4.     On December 18, 2020, FinServ announced that it had entered into a definitive merger agreement with legacy Katapult[1] whereby the combined company would operate as Katapult and its shares would trade on NASDAQ under the new symbol "KPLT." FinServ touted legacy Katapult as "[a] leading e-commerce POS, lease purchase platform provider focused on the estimated $50 billion of annual nonprime consumer durable goods e-commerce spend" with an "[e]stablished position in e-commerce ecosystem with significant platform support from top-tier e-commerce retailers, leading e-commerce platforms and lending partners."

5.     On June 9, 2021, Katapult announced that it had completed the merger. On June 10, 2021, Katapult announcing that its shares and warrants would begin trading on the NASDAQ Stock Market under the symbols "KPLT" and "KPLTW" respectively.

6.     On August 10, 2021, Katapult issued a press release announcing disappointing financial results for the second quarter of 2021 including a net loss of $8.1 million, compared to $5.1 million in net income for the second quarter of 2020. The Company further disclosed that it "observed meaningful [negative] changes in both e-commerce retail sales forecasts and consumer spending behavior" and retracted its full year 2021 guidance, claiming it could not "accurately predict our consumer's buying behaviors for the remainder of the year."

7.     On this news, the Company's share price fell $5.47, or more than 56%, to close at $4.26 per share on August 10, 2021, on unusually heavy trading volume.

8.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Katapult was experiencing declining e-commerce retail sales and consumer spending, (2) that

---

[1] The pre-merger, private entity, Katapult Holdings, Inc., is referred to herein as "legacy Katapult" to distinguish it from the post-merger Katapult.

despite Katapult's assertions that it was clear and compelling value proposition to both consumers and merchants, transforming the way nonprime consumers shop for essential goods and enabling merchant access to this underserved segment, Katapult lacked visibility into its consumers' future buying behavior; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

<u>**JURISDICTION AND VENUE**</u>

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, prior to the merger, FinServ's principal executive offices were located in this District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.     Plaintiff Gina McIntosh, as set forth in the accompanying certification, incorporated by reference herein, purchased Katapult securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant Katapult (f/k/a FinServ) is incorporated under the laws of Delaware with its principal executive offices located in Plano, Texas. Katapult's common stock and warrants trade on the NASDAQ Stock Market under the symbols "KPLT" and "KPLTW" respectively. Before the merger closed on June 9, 2021, FinServ's Class A common stock traded on the NASDAQ exchange under the symbol "FSRV," its redeemable warrants under the symbol "FSRVW," and its units under the symbol "FSRVU." Each unit consisted of one share of Class A common stock and one-half of one redeemable warrant.

16.     Defendant Lee Einbinder ("Einbinder") was the Chief Executive Officer ("CEO") of FinServ prior to the merger, and a member of Katapult's board of directors after the merger.

17.     Defendant Howard Kurz ("Kurz") was the Chief Financial Officer ("CFO") of FinServ prior to the merger.

18.     Defendant Orlando Zayas ("Zayas") was the CEO of legacy Katapult prior to the merger, and the CEO of Katapult after the merger.

19.     Defendant Karissa Cupito ("Cupito") was the CFO of legacy Katapult prior to the merger, and the CEO of Katapult after the merger.

20.     Defendants Einbinder, Kurz, Zayas, and Cupito (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to

4

control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.    Katapult claims to be a "next-generation platform for digital and mobile-first commerce focused on the non-prime consumer." Katapult provides point-of-sale lease-purchase options for non-prime consumers who cannot access traditional financing products. Katapult allegedly "solves critical consumer pain points by transforming the way non-prime consumers shop for durable goods" and claims merchants benefit from "higher retail conversion and greater marketing spend efficiency by reaching this underserved segment."

22.    FinServ was a blank check company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses.

**Materially False and Misleading**
<u>**Statements Issued During the Class Period**</u>

23.     The Class Period begins on December 18, 2020. On that day, FinServ issued a

press release entitled "Katapult to Become a Publicly Traded Company through Merger with

FinServ Acquisition Corp." Therein, FinServ, in relevant part, stated:

> New York, NY, December 18, 2020 – Katapult Holding, Inc. ("Katapult"), an e-
> commerce focused financial technology company, and FinServ Acquisition Corp.
> (NASDAQ: FSRV) ("FinServ"), a special purpose acquisition company, today
> announced that they have entered into a definitive merger agreement. Upon
> closing of the transaction, the combined company (the "Company") will operate
> as Katapult and plans to trade on Nasdaq under the new symbol "KPLT". The
> transaction reflects an implied pro forma combined enterprise value for the
> Company of approximately $1 billion.
>
> Katapult is a leading provider of e-commerce point-of-sale ("POS") purchase
> options for nonprime US consumers. Katapult's fully digital, next generation
> technology platform provides consumers with a flexible lease purchase option to
> enable them to obtain essential durable goods from Katapult's network of top tier
> e-commerce retailers. Katapult's sophisticated end-to-end technology platform
> provides both a seamless integration with merchants and exceptional customer
> experiences.
>
> Orlando Zayas, CEO of Katapult, stated, "Today's announcement marks the
> beginning of an exciting new chapter in our history and we are delighted to be
> entering into this transaction with FinServ to become a publicly traded company.
> Since our inception, Katapult's goal has always been to provide a clear,
> transparent, and attractive transaction solution for nonprime consumers to access
> the essential products they need for everyday living. Today, we are serving over
> 150 merchants and 1.4 million consumers with our leading technology platform
> and e-commerce POS solution. This transaction will allow us to accelerate our
> growth opportunities and continue to build the premier company that provides
> consumers access to the goods they need and deserve through a flexible lease
> purchase transaction. It is an honor to lead Katapult's strategic direction and my
> pleasure to continue to work with our great team to continue to grow this
> business."
>
> Lee Einbinder, CEO of FinServ, stated, "After a comprehensive search process, in
> which we examined numerous business combination opportunities, Katapult
> emerged as the most impressive partner, exceeding all of our criteria for a
> successful transaction. Katapult has a differentiated and best-in-class technology
> platform, with significant opportunities to continue its growth trajectory by
> expanding its merchant and consumer base. We are pleased to help facilitate
> Katapult's listing on Nasdaq, and excited to be partnering with their entire

management team as they continue to lead Katapult's expansion as a publicly listed company."

Brian Hirsch, Co-founder & Managing Partner of Tribeca Venture Partners and Director of Katapult, stated, "Katapult's next generation technology platform, which provides a seamless digital experience for both consumers and merchants, ease of use and quick integration, and sophisticated risk modelling has helped fuel the company's explosive growth over the past three years under Orlando's leadership. This transaction provides Katapult with an even greater ability to strategically invest in its organic growth based on the large addressable market they serve."

**Katapult Investment Highlights**

- A leading e-commerce POS, lease purchase platform provider focused on the estimated $50 billion of annual nonprime consumer durable goods e-commerce spend

- Delivers a clear and compelling value proposition to both consumers and merchants, transforming the way nonprime consumers shop for essential goods and enabling merchant access to this underserved segment

- Proprietary technology platform, purpose-built for e-commerce, combining superior consumer and merchant experiences with powerful risk management capabilities and scalability

- Established position in e-commerce ecosystem with significant platform support from top-tier e-commerce retailers, leading e-commerce platforms and lending partners

- Attractive, profitable financial profile with approximately $250 million of projected revenue (+172% y/y) for 2020

- Proven and experienced management team, who will continue leading the combined company

**Transaction Summary**

Under the terms of the proposed Transaction, FinServ will merge with Katapult at a pro forma combined enterprise value of approximately $1 billion and equity value of $962 million, representing EV/EBITDA multiples of 14.1x and 6.6x projected EBITDA for 2021 and 2022, respectively. Total consideration paid to Katapult's existing shareholders will be $833 million.

Cash proceeds of the transaction will fund up to $325 million of cash consideration to Katapult's existing shareholders and $50 million of cash to Katapult's balance sheet. The cash components of the transaction will be funded by FinServ's cash in trust of $250 million (assuming no redemptions) as well as a

$150 million private placement of common stock at $10 per share from various institutional investors, led by Tiger Global Management and Neuberger Berman Funds, that will close concurrently with the merger. The balance of the consideration to Katapult's equity holders will consist of equity in the Company. Existing Katapult equity holders have the potential to receive an earnout for additional shares of equity if certain price targets are met as set forth in the definitive merger agreement. Katapult's current equity holders will own approximately 50% of the pro forma company, assuming no cash redemptions.

The transaction is expected to close during the first half of 2021 and remains subject to approval by FinServ stockholders representing a majority of the outstanding FinServ voting power, the effectiveness of a registration statement to be filed with the Securities and Exchange Commission (the "SEC") in connection with the transaction, the expiration of the HSR Act waiting period, and other customary closing conditions. The Boards of Directors of both Katapult and FinServ have unanimously approved the contemplated transaction.

24.     On January 20, 2021, FinServ and legacy Katapult were featured at the Northland Capital SPAC Investor Conference. During the conference, Defendant Einbinder stated, in relevant part:

And [legacy Katapult] is really a technology company at heart, really benefiting from the trends in migration to e-commerce, which has only been accelerated with COVID.

And the management team has the right background and not only just background, the proof is in the pudding as they say, they've had over 100% organic growth in top line revenues, for the three years that they've been running this company as a team.

And more importantly, going forward, the growth rates are going to continue to be very high relative to other opportunities. So depending on what you want to look at EBITDA or revenues, you're talking about growth rates that are north of 75%.

We also feel like the point of sale, payment market, if you will, whether there is a lot of players coming into it, mentioned Affirm before that there's other players in the market, whether it's a PayPal, and Afterpay, Sezzle or whatever. Katapult is the only company that we're aware of that is playing in that market for the nonprime consumer.

Now, there are other folks trying to get into it. But Katapult is, and I think the team will tell you this has been their mission from since this management team started running the company, is to be only in the e-commerce sector and online in a digital way. And their technology has proved out and that's why we've done our

own due diligence with their key merchants, and that's why the merchants loved them.

And we think the business model is resilient. This is a company that will do well, whether it's a good economy or bad economy, and actually with COVID, actually there's benefits and the company will talk about that. So we think the company is only scratching the surface, we think there's tremendous upside. The stock market is obviously reacted well since the announcement. But even with that and we'll talk about valuation at the end, we think this is still a very compelling valuation, we think there's still a lot of room to run both by the management team to deliver on the projections that they'll share with you and for the stock as well.

25.    On May 18, 2021, FinServ filed its Proxy Statement and Prospectus on Form

424b3 soliciting stockholder approval of the merger. Therein, FinServ stated, in relevant part:

FinServ's board of directors considered a number of factors pertaining to the merger as generally supporting its decision to enter into the merger agreement and the transactions contemplated thereby, including, but not limited to, the following material factors:

- ***Growth Prospects***. Katapult is a market leader in an attractive and growing industry with an already successful business and with strong growth prospects within the e-commerce sector of the fintech industry;

- ***Large Addressable Market***. Katapult competes in a total U.S. addressable market estimated currently at approximately $40-50 billion. Supported by powerful consumer and retail trends, Katapult's potential addressable market will continue to grow;

- ***Proprietary Technology Platform with Compelling Value Proposition***. Katapult has innovated with a proprietary platform that provides scalability, operational efficiency and competitive differentiation and a two-sided value proposition to both merchants and consumers;

- ***Due Diligence***. Due diligence examinations of Katapult and discussions with Katapult's management and FinServ's legal advisors concerning FinServ's due diligence examination of Katapult;

- ***Financial Condition***. FinServ's board of directors also considered factors such as Katapult's historical financial results, outlook, financial plan and debt structure, as well as the financial profiles of publicly traded companies in the fintech industry and adjacent markets, and certain relevant information with respect to companies that had been acquisition targets or received equity financings in transactions similar to the merger. In considering these factors, FinServ's board of directors reviewed

Katapult's recent growth in certain key financial metrics (including merchants, consumers, revenue and adjusted EBITDA metrics), the current prospects for growth if Katapult achieved its business plans and various historical and current balance sheet items for Katapult. In reviewing these factors, FinServ's board of directors noted that Katapult was well-positioned in its industry for strong future growth;

- ***Experienced and Proven Management Team***. Katapult has a strong management team and the senior management of Katapult intend to remain with New Katapult in the capacity of officers and/or directors, which will provide helpful continuity in advancing Katapult's strategic and growth goals;

- ***Lock-Up***. The Chief Executive Officer and certain other significant Pre-Closing Holders of Katapult have agreed to be subject to a six-month lock-up in respect of their shares of New Katapult common stock (subject to certain customary exceptions);

- ***Other Alternatives***. FinServ's board of directors believes, after a thorough review of other business combination opportunities reasonably available to FinServ, that the proposed merger represents the best potential business combination for FinServ and the most attractive opportunity for FinServ's management to accelerate its business plan based upon the process utilized to evaluate and assess other potential acquisition targets, and FinServ's board of directors' belief that such process has not presented a better alternative; and

- ***Negotiated Transaction***. The financial and other terms of the merger agreement and the fact that such terms and conditions are reasonable and were the product of arm's length negotiations between FinServ and Katapult.

26.     On May 19, 2021, FinServ issued a press release entitled "FinServ Acquisition Corp. Announces Effectiveness of Registration Statement and Special Meeting Date for Proposed Business Combination with Katapult Holdings, Inc." Therein, FinServ, in relevant part, stated:

NEW YORK--(BUSINESS WIRE)--FinServ Acquisition Corp., Inc. ("FinServ") (NASDAQ: FSRV) announced today that the U.S. Securities and Exchange Commission (the "SEC"), has declared effective its Registration Statement on Form S-4 (as amended, the "Registration Statement"), which includes a definitive proxy statement/prospectus in connection with FinServ's special meeting of

stockholders (the "Special Meeting") to approve the proposed business combination with Katapult Holdings, Inc. ("Katapult").

FinServ Acquisition Corp.'s stockholders of record at the close of business on May 11, 2021 (the "Record Date") are entitled to receive notice of the Special Meeting and to vote the shares of common stock of FinServ owned by them at the Special Meeting. The Special Meeting will be held on June 7, 2021, at 2:00 p.m. Eastern Time, via a virtual meeting at the following address: https://www.cstproxy.com/finservacquisition/sm2021. Registration will begin on June 3, 2021 at 9:00 a.m. Eastern Time. FinServ Acquisition Corp. stockholders entitled to vote at the Special Meeting will need the control number that is printed on their respective proxy cards to enter the Special Meeting.

27.     On June 9, 2021, the Company issued a press release entitled "Katapult Completes Business Combination with FinServ Acquisition Corp. & Announces Timing of First Quarter 2021 Financial Results Conference Call." Therein, Katapult stated, in relevant part:

NEW YORK, June 09, 2021 (GLOBE NEWSWIRE) -- Katapult Holdings, Inc., an e-commerce focused financial technology company, and FinServ Acquisition Corp. ("FinServ"), a special purpose acquisition company, today announced that they have completed their previously announced merger. The business combination was approved at a special meeting of stockholders of FinServ on June 7, 2021, and closed today, June 9, 2021. The combined company now operates as Katapult Holdings, Inc. ("Katapult") and Katapult's common shares and warrants will begin trading on the Nasdaq Stock Market under the ticker symbols "KPLT" and "KPLTW", respectively, starting tomorrow, June 10, 2021.

Katapult's management team, led by CEO Orlando Zayas, will continue to execute the growth strategy of the Company. Brian Hirsch, Managing Partner at Tribeca Venture Partners and one of the original investors in Katapult will serve as Chairman of Katapult's newly formed Board of Directors.

Orlando Zayas, CEO of Katapult, stated, "Taking our company public is a testament to the hard work and dedication of the entire Katapult team. We would like to thank the FinServ team for their belief in our success, and we look forward to their continued partnership as stockholders and members of our Board. We are thrilled to embark on this next stage in our company's history and excited to see the opportunities ahead of us for strong growth and long-term value creation."

Lee Einbinder, CEO of FinServ, stated, "We are pleased to complete the merger with Katapult, and I am very excited to continue to work with the Katapult team to execute on their growth plan. Katapult's differentiated and best-in-class fintech platform, growing roster of high-quality merchant partners, and expanding customer base make it well-positioned for a strong growth trajectory."

28.     On June 10, 2021, the Company issued a press release entitled "Katapult

Announces First Day of Trading." Therein, Katapult stated, in relevant part:

> NEW YORK, June 10, 2021 (GLOBE NEWSWIRE) -- Katapult Holdings, Inc. (NASDAQ: KPLT), a leading e-commerce focused financial technology company, today announced it will begin trading its common shares and warrants on the Nasdaq Stock Market under the Ticker "KPLT" and "KPLTW" respectively.

> Katapult Holdings Inc. and FinServ Acquisition Corp., a special acquisition company, closed their previously announced merger on June 9, 2021, and the combined company now operates as Katapult Holdings Inc.

> "Today is the mark of a very important milestone for Katapult and I am immensely proud of our team and their dedication to our mission to bring nonprime consumers the same buying power as a prime consumer. We have seen significant revenue growth and look forward to working with the amazing team at FinServ to continue executing our growth strategy," said Orlando Zayas, CEO of Katapult, who will continue to lead the company.

29.     On June 15, 2021, the Company issued a press release entitled "Katapult

Announces First Quarter 2021 Financial Results." Therein, Katapult stated, in relevant part:

> NEW YORK, June 15, 2021 (GLOBE NEWSWIRE) -- Katapult Holdings, Inc. ("Katapult" or the "Company") (NASDAQ: KPLT), an e-commerce focused financial technology company, today announced financial results for the first quarter ended March 31, 2021.

> "We are pleased to report strong first quarter 2021 results and excited to begin a new chapter as a publicly traded company. Our results reflect solid execution and a strong positive trajectory in our business as we continue to onboard more merchants and drive growth with our existing customers," said Orlando Zayas, CEO of Katapult. "Looking to the remainder of 2021 and beyond, we are excited about the breadth of opportunities available to us to continue to expand our business and build long-term shareholder value."

> **First Quarter 2021 Financial and Operating Highlights:**

> - Total Revenue for the first quarter was $80.6 million, an increase of 88% year-over-year, driven by strong growth in originations as we continue to add new merchant relationships and expand with our existing merchants.

- Gross Originations were $63.7 million, an increase of 71% from $37.2 million in Q1 2021.

- Onboarded 26 new retailers in the first quarter of 2021, including Motorola, Simply Mac, and Cybertron.

- Our Adjusted EBITDA in the first quarter was $14.7 million, up 122% from $6.6 million in the first quarter of 2020, primarily reflecting the scalability of our business as revenue growth is outpacing our operating expense growth.

- Net Income was $8.1 million in the first quarter, up 120% year-over-year. Adjusted Net Income for the first quarter was $9.3 million, up 146% from $3.8 million in the first quarter of 2020.

\*      \*      \*

**2021 Financial Guidance**

As of June 15, 2021, Katapult anticipates FY 2021 Gross Originations, Revenue and Adjusted EBITDA to be in the following ranges:

- Gross Originations: $375-$425 million

- Revenue: $425-$475 million

- Adjusted EBITDA: $50-$60 million

30.    The above statements identified in ¶¶ 23 – 29 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Katapult was experiencing declining e-commerce retail sales and consumer spending, (2) that despite Katapult's assertions that it was clear and compelling value proposition to both consumers and merchants, transforming the way nonprime consumers shop for essential goods and enabling merchant access to this underserved segment, Katapult lacked visibility into its consumers' future buying behavior; and (3) that, as a result of the foregoing, Defendants'

positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

31.    On August 10, 2021, Katapult issued a press release disclosing poor financial results for the second quarter of 2021, eliminated its prior financial guidance, and disclosed that it lacked visibility into its consumers buying behaviors. Specifically, Katapult stated:

PLANO, Texas, Aug. 10, 2021 (GLOBE NEWSWIRE) -- Katapult Holdings, Inc. ("Katapult" or the "Company") (NASDAQ: KPLT), an e-commerce focused financial technology company, today announced financial results for the second quarter ended June 30, 2021.

"We are pleased to report second quarter 2021 results and are confident in our strategy to deliver value to our business partners and consumers and are excited about the growing interest in Katapult from both merchants, e-commerce platforms, and prime partners" said Orlando Zayas, CEO of Katapult. "Looking to the remainder of 2021 and beyond, we are excited about the opportunities available to us to continue to expand financial possibilities for consumers that are left behind and looking for items that they need."

**Second Quarter 2021 Financial and Operating Highlights:**

- Total revenue was $77.5 million, an increase of 27.6% year-over-year. Year-to-date revenue reached $158.1 million as compared to $103.6 million last year, an increase of 52.6% year-over-year.

- Gross Originations were $64.4 million, up 1% compared to the first quarter of 2021, and down 17% year-over-year. Our compound annual growth rate for Gross Originations was 75.4% from the second quarter of 2019 through the second quarter of 2021.

- Onboarded 31 new retailers.

- Net loss was $8.1 million, down from $5.1 million of net income in the second quarter of 2020. Adjusted net income was $1.5 million, down 70.4% from $5.2 million in the second quarter of 2020.

- Adjusted EBITDA was $3.9 million, down 64.8% from $11.1 million in the second quarter of 2020, primarily reflecting our increased investment in growth initiatives, more normalized, and therefore lower, seasonal lease payment performance, new hire costs and incremental public company costs.

14

**Guidance**

Since our Q1 earnings call and continuing to date, many new developments emerged that have an impact to our business. We observed meaningful changes in both e-commerce retail sales forecasts and consumer spending behavior, and in the past few weeks, the onset of new policies from the COVID-19 variants. Given the current macro trends and uncertainty to accurately predict our consumer's buying behaviors for the remainder of the year, we believe it is best to remove explicit guidance for the remainder of 2021. While the short-term outlook may not be 100% clear, we do continue to believe in our mission, our core business fundamentals, and are extremely pleased with the progress of our strategic investments that will drive long term growth. We expect to have more insight into these new and evolving patterns by our third quarter earnings call.

32.     On this news, the Company's share price fell $5.47, or more than 56%, to close at $4.26 per share on August 10, 2021, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Katapult securities between December 18, 2020 and August 10, 2021, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Katapult's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Katapult shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Katapult or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

    (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

    (b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Katapult; and

    (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

39.     The market for Katapult's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Katapult's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Katapult's securities relying upon the integrity of the market price of the Company's securities and market information relating to Katapult, and have been damaged thereby.

40.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Katapult's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Katapult's business, operations, and prospects as alleged herein.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Katapult's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at

artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

42.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.     During the Class Period, Plaintiff and the Class purchased Katapult's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

44.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Katapult, their control over, and/or receipt and/or modification of Katapult's allegedly materially misleading misstatements, their desire to complete the merger, and/or their associations with the Company which made them privy to confidential proprietary information concerning Katapult, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE
(FRAUD-ON-THE-MARKET DOCTRINE)**

45.     The market for Katapult's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Katapult's securities traded at artificially inflated prices during the Class Period.  On February 12, 2021, the Company's share price closed at a Class Period high of $19.09 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Katapult's securities and market information relating to Katapult, and have been damaged thereby.

46.     During the Class Period, the artificial inflation of Katapult's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Katapult's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Katapult and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.     At all relevant times, the market for Katapult's securities was an efficient market for the following reasons, among others:

        (a)     Katapult shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Katapult filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Katapult regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Katapult was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

48.     As a result of the foregoing, the market for Katapult's securities promptly digested current information regarding Katapult from all publicly available sources and reflected such information in Katapult's share price. Under these circumstances, all purchasers of Katapult's securities during the Class Period suffered similar injury through their purchase of Katapult's securities at artificially inflated prices and a presumption of reliance applies.

49.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.   All that is necessary is that the facts withheld be material in the

sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Katapult who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Katapult's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Katapult's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Katapult's financial well-being and prospects, as specified herein.

55.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Katapult's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Katapult and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a

course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Katapult's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to

obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Katapult's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Katapult's securities during the Class Period at artificially high prices and were damaged thereby.

59.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Katapult was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Katapult securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM

**Violation of Section 20(a) of The Exchange Act
Against the Individual Defendants**

62.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.     Individual Defendants acted as controlling persons of Katapult within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, Katapult and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 27, 2021              **GLANCY PRONGAY & MURRAY LLP**

                                    By:  *s/ Gregory B. Linkh*
                                    Gregory B. Linkh
                                    230 Park Avenue, Suite 358
                                    New York, NY 10169
                                    Tel: (212) 682-5340
                                    Fax: (212) 884-0988
                                    glinkh@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Gina McIntosh*

## SWORN CERTIFICATION OF PLAINTIFF

Katapult Holdings, Inc., SECURITIES LITIGATION

I,          Gina McIntosh                          , certify:

1. I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2. I did not purchase Katapult Holdings, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Katapult Holdings, Inc., during the class period set forth in the Complaint are as follows:

   See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

   ☐ Check here if you are a current employee or former employee of the defendant Company.

   I declare under penalty of perjury that the foregoing are true and correct statements.

8/17/2021

Dated: _____

DocuSigned by:

*Gina McIntosh*

CDFEBE16B029471...

_____

Gina McIntosh

**Gina McIntosh's Transactions in Katapult Holdings, Inc. (KPLT)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 8/6/2021 | Bought | 1,100 | $9.3766 |
| 8/10/2021 | Sold | -700 | $4.7450 |
| 8/10/2021 | Sold | -400 | $4.7401 |