UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GINA McINTOSH, MATIS NAYMAN and FELIPE DE CASTRO LUNA, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>KATAPULT HOLDINGS, INC., LEE EINBINDER, HOWARD KURZ, ORLANDO ZAYAS, KARISSA CUPITO, and DEREK MEDLIN,<br><br>　　　　　　Defendants. | Case No. 1:21-cv-07251-JPO |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

COOLEY LLP
Aric H. Wu
Brian M. French
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
ahwu@cooley.com
bfrench@cooley.com

COOLEY LLP
Koji F. Fukumura (*pro hac vice*)
10265 Science Center Drive
San Diego, CA 92121-1117
Tel: (858) 550-6000
kfukumura@cooley.com

April 11, 2023

*Attorneys for Defendants Katapult Holdings, Inc., Lee Einbinder, Howard Kurz, Orlando Zayas, Karissa Cupito, and Derek Medlin*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT.............................................................................................................................. 2

I.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(b)............................ 2

      A.     The Guidance Statements Were Forward-Looking ................................................ 2

      B.     The Guidance Statements Were Accompanied By Meaningful Cautionary Language...................................................................................................................... 5

      C.     Plaintiffs Fail To Allege Particularized Facts Giving Rise To A Strong Inference That Any Defendant Made The Guidance Statements With Actual Knowledge They Were False Or Misleading................................................ 7

            1.     Plaintiffs Concede That Defendants Had No Motive ............................... 7

            2.     The SAC's Cited Documents Do Not Show Actual Knowledge That The Guidance Statements Were False Or Misleading....................... 7

II.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 14(a)............................ 9

      A.     Plaintiffs Apply The Wrong Pleading Standard And Misstate The Law............... 9

      B.     Plaintiffs Fail To State A "Pure Omission" Claim ............................................. 10

            1.     The Structure And Risks Of Katapult's Waterfall Arrangements Were Widely Publicized ............................................................................ 10

            2.     Prime Lenders' Loosening Of Lending Standards Was Not A Known, Material Trend Or Uncertainty Under Item 303 ........................ 12

      C.     Plaintiffs Fail To Allege Any Statement In The Proxy Was False Or Misleading........................................................................................................... 14

III.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 20(a)........................... 15

CONCLUSION......................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aceto Sec. Litig.*,
2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)..................................................................................8

*In re Aceto Sec. Litig.*,
2021 WL 4350501 (E.D.N.Y. Mar. 16, 2021)................................................................................8

*In re Adient Sec. Litig.*,
2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020)..................................................................................3

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013)........................................................................................11

*In re Bank of Am. Sec., Derivative, & ERISA Litig.*,
757 F. Supp. 2d 260 (S.D.N.Y. 2010)........................................................................................14

*Baum v. Harman Int'l Indus.*,
408 F. Supp. 3d 70 (D. Conn. 2019)............................................................................................6

*In re Bemis Sec. Litig.*,
512 F. Supp. 3d 518 (S.D.N.Y. 2021)..................................................................................3, 4, 6

*Bisel v. Acasti Pharma*,
2022 WL 4538173 (S.D.N.Y. Sept. 28, 2022)............................................................................14

*Enzo Biochem. v. Harbert Discovery Fund, LP*,
2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021)..............................................................................9

*Fort Worth Emps.' Ret. Fund v. Biovail*,
615 F. Supp. 2d 218 (S.D.N.Y. 2009)........................................................................................15

*Galestan v. OneMain Holdings*,
348 F. Supp. 3d 282 (S.D.N.Y. 2018)......................................................................................4, 5

*Gissin v. Endres*,
739 F. Supp. 2d 488 (S.D.N.Y. 2010)..........................................................................................3

*Gray v. Wesco Aircraft Holdings*,
454 F. Supp. 3d 366 (S.D.N.Y. 2020)..............................................................................2, 3, 4, 6

*Greco v. Qudian*,
2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022)..............................................................................8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Holbrook v. Trivago*,
2019 WL 948809 (S.D.N.Y. Feb. 26, 2019) ..................................................................10, 13

*Honig v. Hansen*,
2021 WL 4651475 (S.D.N.Y. Oct. 6, 2021) .............................................................15

*In re IAC/InterActiveCorp Sec. Litig.*,
695 F. Supp. 2d 109 (S.D.N.Y. 2010).....................................................................13

*Institutional Invs. Grp. v. Avaya*,
564 F.3d 242 (3d Cir. 2009)...................................................................................4

*In re Keyspan Sec. Litig.*,
383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...................................................................12

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
272 F. Supp. 2d 243 (S.D.N.Y. 2003).....................................................................11

*In re Merrill Lynch Auction Rate Sec. Litig.*,
704 F. Supp. 2d 378 (S.D.N.Y. 2010).....................................................................12

*Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)................................................................................................4

*In re Peabody Energy Sec. Litig.*,
2022 WL 671222 (S.D.N.Y. Mar. 7, 2022) ...............................................................3

*In re Romeo Power Sec. Litig.*,
2022 WL 3701095 (S.D.N.Y. Aug. 25, 2022)...........................................................5

*Seibert v. Sperry Rand*,
586 F.2d 949 (2d Cir. 1978)...................................................................................11

*Slayton v. Am. Express*,
604 F.3d 758 (2d Cir. 2010)......................................................................5, 6, 7, 8

*St. Clair-Hibbard v. Am. Fin. Tr.*,
812 F. App'x 36 (2d Cir. 2020) ..............................................................................11

*Steamfitters Loc. 449 Pension Plan v. Skechers*,
412 F. Supp. 3d 353 (S.D.N.Y. 2019)......................................................................3

*In re Supercom Sec. Litig.*,
2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018) ...........................................................3

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Synergy Pharms. Sec. Litig.*,
2021 WL 4480625 (E.D.N.Y. Sept. 30, 2021) ...........................................................4

*TechnoMarine v. Giftports*,
758 F.3d 493 (2d Cir. 2014).................................................................................15

*Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police
Officers' & Firefighters' Ret. Plan*,
2021 WL 5142702 (2d Cir. Nov. 5, 2021)................................................................7

*In re Turquoise Hill Res. Sec. Litig.*,
2022 WL 4085677 (S.D.N.Y. Sept. 2, 2022)........................................................4, 6

*In re Vivendi Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)..................................................................................10

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands*,
495 F. Supp. 3d 622 (N.D. Ill. 2020) .....................................................................13

*Wochos v. Tesla*,
985 F.3d 1180 (9th Cir. 2021) .................................................................................3

*Zhou v. Faraday Future Intelligent Elec.*,
2022 WL 13800633 (C.D. Cal. Oct. 20, 2022)........................................................10

**Statutes and Rules**

15 U.S.C. § 78u-4(b)(1) .......................................................................................15

17 C.F.R. § 229.303(b)(2)(ii)................................................................................13

Fed. R. Civ. P. 8(a) .............................................................................................9

Fed. R. Civ. P. 9(b) .............................................................................................9

## PRELIMINARY STATEMENT

Plaintiffs' brief makes two types of arguments: factual arguments that mischaracterize the Second Amended Complaint ("SAC") and its cited documents, and legal arguments that ignore the Private Securities Litigation Reform Act ("PSLRA") and settled Second Circuit precedent. But Plaintiffs cannot avoid the facts, which present a classic strike-suit scenario: a public company issues a forecast, complete with cautions and disclaimers, and is sued for "fraud" because it later revised that forecast. And Plaintiffs cannot avoid the law, which was designed to weed out claims exactly like these at the pleading stage.

Plaintiffs' Section 10(b) arguments barely pass the straight-face test. They insist that projections are not forward-looking if "based on information existing as of the date the statements were made"—a characteristic of *every* forward-looking statement. They label 35 pages of specific risk factors "boilerplate," but never engage with a single line of it. And to show that Defendants had "actual knowledge" that their projections would not pan out, Plaintiffs rely on a subsequent, internal forecast that those projections *would* pan out.

Their Section 14(a) arguments fare no better. Plaintiffs' brief claims that facts about Katapult's waterfall arrangements were concealed, even though the SAC confirms that they were widely publicized. And Plaintiffs not only abandon their only alleged "known trend" theory under Item 303 of Regulation S-K, but replace it with an unalleged version that makes no sense and does not even purport to satisfy the necessary legal elements.

Even after three tries and with the benefit of pirated confidential information, Plaintiffs cannot come close to stating a cognizable claim against Defendants. The Court should dismiss this case with prejudice.

1

## ARGUMENT

**I.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(b)**

Plaintiffs challenge two statements (the "Guidance Statements") under Section 10(b):

- "As of June 15, 2021, Katapult *anticipates* FY 2021 Gross Originations, Revenue and Adjusted EBITDA to be in the following ranges . . . ." ¶ 122.[1]

- "[G]iven the data we have today, we continue to *believe* that this *guidance* is reasonable and appropriate." ¶ 125.

Both are protected under the PSLRA safe harbor for forward-looking statements, and Plaintiffs' brief does not remotely show otherwise.[2]

### A.    The Guidance Statements Were Forward-Looking

Plaintiffs argue that the Guidance Statements "were not forward looking at all," but "statements of present fact." Opp'n at 11. According to Plaintiffs, projections cannot be forward-looking when "explicitly based on information existing as of the date the statements were made." *Id.* at 12. That is every bit as wrong as it sounds.

"[A]ll statements of projections come with the implied statement that they are believed and are based on recent trends in the industry and the market and the performance of the business." *Gray v. Wesco Aircraft Holdings*, 454 F. Supp. 3d 366, 390 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021). "That is inherent in the notion of a projection." *Id.* To exclude a projection from the safe harbor for stating the obvious—*i.e.*, that it is based on available data—"would rip a large hole in that statute and deprive issuers and makers of such statements of the precise protection

---

[1] "MTD" refers to Defendants' memorandum in support of their motion to dismiss. ECF No. 66. "Ex." refers to the exhibits attached to the declaration of Brian M. French in support of the MTD. ECF No. 67. "Opp'n" refers to Plaintiffs' opposition to Defendants' MTD. ECF No. 78. Unless otherwise noted, all emphasis is added, and all internal citations, quotation marks, and alterations are omitted.

[2] Plaintiffs have withdrawn their claims against Defendant Derek Medlin. Opp'n at 21 n.11 ("Plaintiffs withdraw the claims alleged against Defendant Medlin in response to Defendants' arguments."). The Court should therefore dismiss the claims against him with prejudice.

the safe harbor was intended to provide." *Id.*; *see Wochos v. Tesla*, 985 F.3d 1180, 1192 (9th Cir. 2021) ("The statutory safe harbor would cease to exist if it could be defeated simply by showing that a statement has the sort of features that are inherent in *any* forward-looking statement.").

Here, neither phrase Plaintiffs focus on (*i.e.*, "As of June 15, 2021," "given the data we have today") can "meaningfully be distinguished from the future projection of which they are a part." *Gissin v. Endres*, 739 F. Supp. 2d 488, 505 (S.D.N.Y. 2010); *see Steamfitters Loc. 449 Pension Plan v. Skechers*, 412 F. Supp. 3d 353, 363 (S.D.N.Y. 2019) (forward-looking to "stat[e] their educated guess about what the preceding quarter's financial data would mean for the company's future"), *aff'd sub nom. Cavalier Fundamental Growth Fund v. Skechers*, 826 F. App'x 111 (2d Cir. 2020). And even if either phrase were severable from the projections themselves, neither one "provide[d] any *specific* information about [Katapult's] current circumstances"— meaning both were "too vague to be actionable apart from the future projections." *In re Supercom Sec. Litig.*, 2018 WL 4926442, at *21 (S.D.N.Y. Oct. 10, 2018); *see In re Adient Sec. Litig.*, 2020 WL 1644018, at *19 (S.D.N.Y. Apr. 2, 2020) ("[W]hen the present-tense portion of mixed present and future statements does not provide specific information about the current situation, but merely says that, whatever the present situation is, it makes the future projection attainable, the present-tense portion of the statement is too vague to be actionable apart from the future projection.").

Unsurprisingly, therefore, courts consistently hold that the PSLRA safe harbor protects statements indistinguishable from the Guidance Statements. *See, e.g.*, *In re Peabody Energy Sec. Litig.*, 2022 WL 671222, at *17 (S.D.N.Y. Mar. 7, 2022) (projection expressly "based on what we know today" was forward-looking and protected under the safe harbor); *In re Bemis Sec. Litig.*, 512 F. Supp. 3d 518, 532 (S.D.N.Y. 2021) (projection expressly based on "currently available" information was forward-looking and protected under the safe harbor); *Gissin*, 739 F. Supp. 2d at

3

505, 507 n.108 (projections expressly "based on our current expectation" and "on our current view and what we know" were forward-looking and protected under the safe harbor).

Plaintiffs' reliance on *Galestan* is misplaced. *See* Opp'n at 12-13; *Galestan v. OneMain Holdings*, 348 F. Supp. 3d 282, 304 (S.D.N.Y. 2018) (not forward-looking to state, "We remain comfortable with our previously stated EPS guidance"). That decision's one-sentence analysis (based on a three-page motion to dismiss) is an outlier in the Second Circuit. The overwhelming weight of authority holds that "statements which merely endorse or state the speaker's belief in a certain future outlook"—as Cupito's statement does here—"satisfy the PSLRA forward-looking requirement." *Gray*, 454 F. Supp. 3d at 387 (collecting cases); *see, e.g.*, *In re Turquoise Hill Res. Sec. Litig.*, 2022 WL 4085677, at *24 (S.D.N.Y. Sept. 2, 2022); *Bemis*, 512 F. Supp. 3d at 532; *In re Synergy Pharms. Sec. Litig.*, 2021 WL 4480625, at *11 (E.D.N.Y. Sept. 30, 2021); *see also Institutional Invs. Grp. v. Avaya*, 564 F.3d 242, 256 (3d Cir. 2009) (forward-looking to "express[] only defendants' continuing comfort with the earlier . . . annual projection"). Indeed, "[t]o take the view that an expression of 'present belief' in a forward-looking statement is a 'present fact'—and therefore not itself a forward-looking statement—would work an end-run around the PSLRA's safe harbor provision." *Bemis*, 512 F. Supp. 3d at 532. As far as Defendants can tell, no court has ever cited *Galestan* for its anomalous holding. And this Court should decline to be the first.[3]

---

[3] *Galestan* is also factually distinguishable. Unlike here, *Galestan* involved 11 former employees who alleged that defendants (i) received detailed reports that their forecasts would be impossible to achieve, then (ii) reaffirmed those forecasts anyway. *See* 348 F. Supp. 3d at 287-90. Also unlike here, *Galestan*'s "remain comfortable" statement was tied to other present-tense statements the court held were knowingly false when made. *See id.* at 292-93. In any event, *Galestan* is no answer for the fact that the Guidance Statements are inactionable statements of opinion. MTD at 22 n.11; *see Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) ("[A] sincere statement of pure opinion is not an untrue statement of material fact, regardless whether an investor can ultimately prove the belief wrong."); *see also Gray*, 454 F. Supp. 3d at 400 ("Plaintiff also has failed to allege facts supporting the strong inference that either Wesco's management or board did not hold the beliefs they professed.").

**B.    The Guidance Statements Were Accompanied By Meaningful Cautionary Language**

As Defendants' MTD laid out, the Guidance Statements were accompanied by extensive, meaningful cautionary language. MTD at 14-15. It easily satisfies the standard for the PSLRA safe harbor. And Plaintiffs have no persuasive response.

*First*, Plaintiffs label the cautionary language "boilerplate and generic," but tellingly avoid engaging with a single line of it. Opp'n at 14. And for good reason: The cautionary language here was exemplary. The Proxy alone contained 35 pages of highly specific "Risk Factors," including that Katapult might fail to meet guidance due to "factors affecting discretionary spending for nonprime consumers," "the impact of the COVID-19 pandemic," "disproportionate[]" exposure to Wayfair's "economic performance," "strategic actions" by other market participants, and difficulty sustaining previous "rapid growth." MTD at 14-15 (citing SEC filings). These risks directly relate to the reasons Katapult pulled its guidance on August 10, 2021, MTD at 8-9, so they more than satisfy the PSLRA.[4] *See Slayton v. Am. Express*, 604 F.3d 758, 773 (2d Cir. 2010) (cautionary language must list "important factors that could realistically cause results to differ materially," but "need not include the particular factor that ultimately causes its projection not to come true").

*Second*, Plaintiffs contend that Defendants' alleged knowledge of ██████████████ ████████████████ somehow invalidated all of this cautionary language. Opp'n at 14-15 & n.4. That manages to be factually and legally incorrect. The SAC and its cited documents confirm that

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[4] Plaintiffs' cases are a far cry from this one. *See* Opp'n at 15. Both involved generic cautionary language that was itself misleading. *See In re Romeo Power Sec. Litig.*, 2022 WL 3701095, at *3 (S.D.N.Y. Aug. 25, 2022) (cautionary language itself was "misleading"); *Galestan*, 348 F. Supp. 3d at 295, 304 (one-sentence risk disclosure was "boilerplate" and "itself misleading").

MTD at 19-20 (citing ¶¶ 165, 169); *infra* Part I.C.2. But even setting that aside, courts in this District rightly refuse "to consider the defendant's knowledge in assessing whether cautionary language is sufficiently meaningful," as it would "conflate[] the actual knowledge and meaningful cautionary language prongs of the PSLRA." *Turquoise Hill Res.*, 2022 WL 4085677, at \*29; *see Gray*, 454 F. Supp. 3d at 394 ("If the Court were to [consider the defendant's knowledge in assessing cautionary language], an allegation of actual knowledge of falsity would suffice to deprive a forward-looking statement of the protections of safe harbor even if there were meaningful cautionary language otherwise. Such a result would be contrary to the disjunctive nature of the safe harbor elements."); *Bemis*, 512 F. Supp. 3d at 534 (same); *see also Slayton*, 604 F.3d at 766 ("The safe harbor is written in the disjunctive."); MTD at 13.

*Third*, Plaintiffs suggest that the cautionary language must have been boilerplate because Katapult's full-year guidance "never deviated at any time between December 2020 and June of 2021 despite changed circumstances." Opp'n at 15-16. That is plainly wrong. Logical problems aside, Katapult *did* change its guidance in April 2021 when it began forecasting ranges and lowered its EBITDA outlook from $70 million to $50-$60 million. MTD at 6. What's more, the May 18, 2021 Proxy added a legion of new, Katapult-specific risk factors that did not appear in earlier public filings. *E.g.*, Ex. 1 at 47, 49-50 (warning Katapult might fail to meet guidance due to "factors affecting discretionary spending for nonprime consumers," "disproportionate[]" exposure to Wayfair's "economic performance," "forecasts of market growth . . . prov[ing] to be inaccurate").

*Fourth*, in a single, unexplained sentence, Plaintiffs observe that the PSLRA safe harbor "does not protect material omissions." Opp'n at 15. That is irrelevant here, as Plaintiffs challenge the projections themselves—a point Plaintiffs' own authority emphasizes. *See Baum v. Harman Int'l Indus.*, 408 F. Supp. 3d 70, 83 (D. Conn. 2019) ("[T]o the extent that plaintiff argues the

6

Management Projections themselves were false and misleading for failing to account for future acquisitions, the safe harbor *does* preclude this claim.").

### C.    Plaintiffs Fail To Allege Particularized Facts Giving Rise To A Strong Inference That Any Defendant Made The Guidance Statements With Actual Knowledge They Were False Or Misleading

The Guidance Statements are inactionable for another, independent reason: Plaintiffs do not allege facts showing that they were made with actual knowledge they were false or misleading.

#### 1.    Plaintiffs Concede That Defendants Had No Motive

Plaintiffs no longer contend that Defendants had a motive to deceive. Instead, they announce that motive is irrelevant to the actual-knowledge prong of the PSLRA safe harbor. Opp'n at 17 n.6. That is not the law. The Second Circuit has squarely held that "where the plaintiffs do not allege facts supporting a motive, . . . their circumstantial evidence of actual knowledge must be correspondingly greater." *Slayton*, 604 F.3d at 776; *see Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan*, 2021 WL 5142702, at *1 (2d Cir. Nov. 5, 2021) (same). Accordingly, Plaintiffs' allegations must clear the higher bar here.

#### 2.    The SAC's Cited Documents Do Not Show Actual Knowledge That The Guidance Statements Were False Or Misleading

Defendants' MTD explained that the March and April 2021 emails cited in the SAC confirmed that ███████████████████████████████████████, all but precluding an inference of actual knowledge. MTD at 17-19. In response, Plaintiffs simply throw the March and April 2021 emails overboard. They now rest their *entire* actual-knowledge theory on one document: a June 19, 2021 presentation that post-dates the Guidance Statements. Opp'n at 17-21. But that document is demonstrably unhelpful to Plaintiffs.

For one thing, Plaintiffs cannot solve the timing problem. MTD at 19. They do not deny that the presentation was circulated days *after* the Guidance Statements were made. ¶ 168. Nor do they deny that this constitutes pleading "fraud by hindsight." *See* MTD at 19; *see also Greco v. Qudian*, 2022 WL 4226022, at *9 (S.D.N.Y. Sept. 13, 2022) ("The Second Circuit has firmly rejected the 'fraud by hindsight' approach."); *In re Aceto Sec. Litig.*, 2019 WL 3606745, at *7 (E.D.N.Y. Aug. 6, 2019) ("The mere disclosure of adverse information shortly after a positive statement does not support a finding that the prior statement was false at the time it was made."). As for their footnoted suggestion that "there is no indication" that the data was "unavailable" in the days and weeks prior, Opp'n at 19 n.9, that turns the PSLRA pleading standard on its head.[5]

But even setting that aside, Plaintiffs' theory is irreconcilable with the presentation itself. MTD at 19-20; Ex. 17. The presentation explicitly forecasted that ██████████████, Ex. 17 at 1024, making it hard to understand why Plaintiffs think it shows actual knowledge of a *miss*. They insinuate that ██████████████████████████████████████████████, but that is pure speculation—not a word of the SAC supports it. *See Greco*, 2022 WL 4226022, at *9 ("It is not sufficient for these purposes to allege that an opinion was unreasonable, irrational, excessively optimistic, or not borne out by subsequent events." (cleaned up)); *Slayton*, 604 F.3d at 776 n.9 ("We emphasize that under this prong of the statutory safe harbor, the plaintiffs must show more than recklessness—an objective inquiry—they must show actual subjective knowledge. Therefore, even if we were to conclude, based on the alleged facts, that the risk . . . was so obvious that defendants must have been aware of it, this

---

[5] The same footnote conjectures that Defendants might have had "a duty to update" the Guidance Statements after receiving the presentation. Opp'n at 19 n.9. That theory is not only unalleged—it is wrong as a matter of law. *See In re Aceto Sec. Litig.*, 2021 WL 4350501, at *10 (E.D.N.Y. Mar. 16, 2021) ("[T]here is generally no duty to update run-of-the-mill earnings forecasts.").

would not avail the plaintiffs." (cleaned up)). They also claim that the presentation's reference to

███████████████████████████ somehow "contradicts" Zayas's August reference to

"macro headwinds," Opp'n at 19, though Defendants cannot imagine how; Zayas did not say that

he meant the same headwinds, or that they were as strong in mid-June as in mid-August.

At bottom, Plaintiffs' only alleged window into Defendants' actual knowledge—at the time

the Guidance Statements were made—is a subsequent, internal forecast that Katapult would *meet*

its guidance. That dooms Plaintiffs' Section 10(b) claims, and the Court should dismiss them.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 14(a)

Plaintiffs challenge the May 18, 2021 Proxy under Section 14(a) and Item 303 of

Regulation S-K. That challenge fails both because Item 303 did not create a duty to disclose here,

and because Plaintiffs do not adequately allege that the Proxy's generic description of Katapult's

waterfall arrangements was false or misleading. MTD at 23-30. Defendants begin, however, by

addressing a few threshold problems with Plaintiffs' analysis.

### A.    Plaintiffs Apply The Wrong Pleading Standard And Misstate The Law

Pleading Standard. Plaintiffs incorrectly apply Rule 8(a) to their claim. Opp'n at 21-22.[6]

As Plaintiffs' own authority explains, "if a plaintiff's factual assertions in a Section 14(a) claim

are premised on fraudulent conduct, they are subject to heightened pleading requirements, even if

they disclaim reliance on a fraud theory." *Enzo Biochem. v. Harbert Discovery Fund, LP*, 2021

WL 4443258, at *8 (S.D.N.Y. Sept. 27, 2021) (holding that "Rule 9(b)'s heightened pleading

standard is applicable because the Complaint pleads allegations that are anchored in fraud"). Here,

the SAC clearly and repeatedly accuses the Section 14(a) Defendants of fraud, so its allegations

must satisfy Rule 9(b). MTD at 11-12 (citing ¶¶ 16-18, 41-49, 150, 219, 225-228).

---

[6] Although Plaintiffs never cite Rule 8(a) directly, they implicitly invoke it by quoting the SAC's (legally ineffective) attempt to disclaim reliance on a fraud theory. Opp'n at 21-22 (quoting ¶ 217).

Legal Elements. Plaintiffs are wrong to suggest that their claim only requires negligence. Opp'n at 27. A Section 14(a) claim based on Item 303, like this one, requires "actual knowledge" of both (i) "the relevant trend or uncertainty," and (ii) "a fairly substantial probability that the known risk at issue will materialize and have a material impact—if not a more-likely-than-not standard, then something not too much below that." *Holbrook v. Trivago*, 2019 WL 948809, at *12 (S.D.N.Y. Feb. 26, 2019); *see* MTD at 24 (collecting cases).

Duty To Disclose. Plaintiffs appear to contend, based on one out-of-circuit case, that "pure omissions" are actionable under Section 14(a) even absent a duty to disclose. Opp'n at 28-29 (citing *Zhou v. Faraday Future Intelligent Elec.*, 2022 WL 13800633 (C.D. Cal. Oct. 20, 2022)). But that is not the law in the Second Circuit. MTD at 23-24 (collecting cases); *In re Vivendi Sec. Litig.*, 838 F.3d 223, 239 (2d Cir. 2016) ("A 'pure omission' is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." (cleaned up)). Nor was *Zhou* even a "pure omission" case; the very paragraph Plaintiffs rely on states that the *Zhou* defendants had allegedly "omit[ed] to disclose material facts necessary to make [their] statements not false and/or misleading." 2022 WL 13800633, at *16 (cleaned up).

**B.      Plaintiffs Fail To State A "Pure Omission" Claim**

Defendants' MTD established that Item 303 did not create a duty to disclose here because (i) the structure and risks of Katapult's waterfall arrangements were widely publicized, and (ii) prime lenders' loosening of lending standards did not qualify as a known, material trend or uncertainty on May 18, 2021. MTD at 25-29. None of Plaintiffs' responses holds water.

**1.      The Structure And Risks Of Katapult's Waterfall Arrangements Were Widely Publicized**

Plaintiffs do not dispute that "where allegedly undisclosed material information is in fact readily accessible in the public domain, a defendant may not be held liable for failing to disclose

[it]." *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 576 (S.D.N.Y. 2013) (cleaned up), *aff'd*, 566 F. App'x 93 (2d Cir. 2014); *see In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 272 F. Supp. 2d 243, 250 (S.D.N.Y. 2003). Nor could they; that has been the law of the Second Circuit for decades. *See, e.g.*, *Seibert v. Sperry Rand*, 586 F.2d 949, 952 (2d Cir. 1978) ("There is no duty to disclose information to one who reasonably should already be aware of it.").

Instead, Plaintiffs maintain that Katapult's public disclosures were too "simple" to adequately convey the risks of its waterfall arrangements. Opp'n at 23-25. Failing that, Plaintiffs argue that Katapult's disclosures were not disseminated widely enough. *Id.* at 25-26. Plaintiffs are wrong on both scores.

A simple concept can be expressed simply, and Katapult's waterfall arrangements are quite simple: If the prime lender declines an application, Katapult can approve it. That simple dynamic was disclosed. MTD at 25-26 (collecting disclosures). And its corollary is equally simple: If the prime lender approves an application, Katapult cannot approve it. Every risk Plaintiffs identify merely restates that corollary in different words. Opp'n at 23-24 (*e.g.*, "Katapult *only* had the opportunity to serve a customer when the lender above Katapult declined to lend to a customer"; "Katapult's particular position within the waterfall renders Katapult *completely* reliant on the entity above it in the waterfall declining the initial application"; "each additional customer served by the prime lender 'up the waterfall' meant one less customer flowing 'down the waterfall' to Katapult" (emphases in original)); *see also St. Clair-Hibbard v. Am. Fin. Tr.*, 812 F. App'x 36, 39 (2d Cir. 2020) ("A proxy statement need not negatively characterize all the facts that are disclosed or expressly verbalize all adverse inferences from those facts."). And Plaintiffs have no answer for Zayas's interview or the other public statements elaborating upon the very dynamic Plaintiffs claim was concealed. MTD at 26; *see* Ex. 16 at 12 ("Affirm may be interested in ultimately entering the

11

non-prime space or otherwise diverting traffic from Katapult."); Ex. 5 at 2, 4 ("[Affirm] continuously make[s] refinements to [its] risk model" to maximize profits in response to changing economic conditions); Ex. 4 at 3 ("We are in a waterfall situation where, when the economy gets rough, the prime lenders tighten up.").

So Defendants will not belabor the point. For the reasons detailed in Defendants' MTD, Katapult amply disclosed the structure and risks of its waterfall arrangements. MTD at 25-27.

Plaintiffs fare no better in arguing that Katapult's disclosures were not disseminated widely enough. Opp'n at 25-26. The disclosures were not in obscure newspapers; they were in public SEC filings and investor calls, MTD at 25-26, including those on which Plaintiffs themselves rely, *e.g.*, ¶¶ 63, 65. One was on the investor call announcing the merger in December 2020. ¶ 63. Another was at a major investor conference, ¶ 65, the transcript of which FinServ filed with the SEC in January 2021.[7] Even Zayas's interview was filed with the SEC in March 2021, just weeks before the Proxy was issued. Ex. 4 at 3. Needless to say, "it is unrealistic to argue that documents available on the SEC website are not readily accessible to the investing public." *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 396 (S.D.N.Y. 2010) (quoting *In re Keyspan Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003)), *aff'd sub nom. Wilson v. Merrill Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011); *see also* Ex. 1 at 216 (Proxy advising investors to review FinServ's public filings on the SEC website).

### 2. Prime Lenders' Loosening Of Lending Standards Was Not A Known, Material Trend Or Uncertainty Under Item 303

Plaintiffs' Item 303 theory ultimately requires that (i) prime lenders' loosening of lending standards qualified as a material trend or uncertainty on May 18, 2021, and (ii) Einbinder, Kurz,

---

[7]    *See*    https://www.sec.gov/Archives/edgar/data/1785424/000121390021003302/ea133671-425_finservacq.htm (last visited April 2, 2023).

and Zayas knew it. *See* MTD at 24, 27-29. Plaintiffs' brief confirms the SAC alleges neither one.

*First*, Plaintiffs never argue—not once—that prime lenders' loosening of lending standards was, on May 18, 2021, "reasonably likely" to have a "*material* impact" on Katapult's business, much less that any Defendant knew it. *See* 17 C.F.R. § 229.303(b)(2)(ii); *Holbrook*, 2019 WL 948809, at *13 ("[Defendant's] post hoc description of the extent of the ultimate impact . . . does not speak to what the Company knew or should have known at the time."). The SAC is equally silent on the point. *See* MTD at 28. That is fatal to Plaintiffs' entire Item 303 theory.

*Second*, Plaintiffs' brief, like their SAC, never suggests that Einbinder or Kurz knew of any supposed trend or uncertainty. *See* Opp'n at 27 (arguing that Zayas, and only Zayas, was aware). That, too, is fatal to Plaintiffs' only claim against Einbinder and Kurz.

*Third*, Plaintiffs abandon the SAC's theory that "the negative trends first showed up *in the spring of 2021*," ¶ 138 (emphasis in original), and now insist that a "loosening trend . . . had existed for years," Opp'n at 26.[8] Plaintiffs base this new, unpleaded theory on comments Zayas made in August 2021. *Id.* at 26-27. But Zayas did not say that a loosening trend had existed for years; he said that Katapult had seen tightening *and* loosening off and on "throughout the years," ¶¶ 100-101; Ex. 14 at 22, with loosening this time "starting in the spring," ¶ 98. It should go without saying that oscillating between two directions is not a "trend" in one. Besides, "[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 124 (S.D.N.Y. 2010).

*Fourth*, Einbinder and Kurz cannot be liable under Item 303 for failing to disclose information about Katapult (*i.e.*, a separate company from FinServ) pre-merger. *See W. Palm*

---

[8] Plaintiffs change course because, as Defendants' MTD pointed out, a pattern must persist for more than just a few months to qualify as a trend under Item 303. MTD at 27-28 (collecting cases).

*Beach Firefighters' Pension Fund v. Conagra Brands*, 495 F. Supp. 3d 622, 647 (N.D. Ill. 2020) ("Item 303 requires disclosure of trends that could impact 'net sales or revenues or income from continuing operations.' . . . Nothing about this language suggests that the disclosure requirement could apply to the operations of a potential acquisition target; if anything, the reference to 'continuing operations' appears to suggest the opposite."), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands*, 2022 WL 1449184 (7th Cir. May 9, 2022)). Defendants' MTD flagged this problem, MTD at 28-29, and Plaintiffs have no serious response. They offer no alternative reading of the regulatory text. They cite no contrary authority; their cases have nothing to do with Item 303. Opp'n at 27-28. And contrary to Plaintiffs' alarmist rhetoric, acknowledging the express limits of a single regulation would hardly render all proxies "meaningless." *Id.*

*Fifth*, Plaintiffs cannot identify any factual allegation in the SAC that Zayas was involved with FinServ's Proxy. *See* MTD at 29. This is all the SAC says: "Defendants named in this Count, jointly and severally, solicited and/or permitted use of their names in solicitations contained in the Prospectus Statement and other proxy solicitation materials." ¶ 221; *see* Opp'n at 28 (citing ¶ 221). If that is not a conclusory allegation, then nothing is. *See Bisel v. Acasti Pharma*, 2022 WL 4538173, at *15 (S.D.N.Y. Sept. 28, 2022) ("conclusory allegations . . . are not sufficient" to plead a violation of Section 14(a)). Indeed, Plaintiffs flunk the standard stated in their own authority. *See In re Bank of Am. Sec., Derivative, & ERISA Litig.*, 757 F. Supp. 2d 260, 294 (S.D.N.Y. 2010) (requiring factual allegations rising to the "critical threshold for a Section 14(a) claim" of "drafting" or "knowingly participat[ing] in the distribution" of a proxy).

### C. Plaintiffs Fail To Allege Any Statement In The Proxy Was False Or Misleading

Plaintiffs try to defend their strange, "[i]n the alternative" challenge to a generic description of Katapult's waterfall arrangements. *See* ¶ 215 ("A waterfall is where the application will flow from the prime lender to other financing and lease-purchase options automatically; this gives the

14

consumer the best option for their situation."); Opp'n at 29. Although the SAC never specifies "the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1), Plaintiffs' brief declares it "was misleading because it failed to provide any warning about the risks," Opp'n at 29. That is nonsense. A misleading statement "affirmatively create[s] an impression of a state of affairs that differ[s] in a material way from the one that actually exists" and is "necessarily inconsistent with the truth." *Honig v. Hansen*, 2021 WL 4651475, at *5 (S.D.N.Y. Oct. 6, 2021) (collecting cases). The Proxy's short, accurate description is neither of those things. And regardless, Katapult amply disclosed the structure and risks of its waterfall arrangements. MTD at 25-27; *supra* Part II.B.1.

## III.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 20(a)

Plaintiffs fail to state a claim under Sections 10(b) and 14(a), so their Section 20(a) claims should be dismissed, too. MTD at 30; *cf.* Opp'n at 29 (conceding the dependence).

## <u>CONCLUSION</u>

For the foregoing reasons and those stated in Defendants' MTD, the SAC should be dismissed. Plaintiffs do not request leave to amend, let alone explain what they would do differently in a fourth pleading. *See TechnoMarine v. Giftports*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies."). Nor can the SAC's deficiencies be cured through amendment. *See Fort Worth Emps.' Ret. Fund v. Biovail*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009) (dismissing with prejudice because the "plaintiff has already amended its complaint once," the statements "fall squarely within the PSLRA's safe harbor for forward looking statements," and this flaw is "incurable on the facts of this case"). The Court's dismissal, therefore, should be with prejudice.

Dated:    April 11, 2023    Respectfully submitted,

            COOLEY LLP

            By */s/ Aric H. Wu*
               Aric H. Wu

            Aric H. Wu
            Brian M. French
            55 Hudson Yards
            New York, NY 10001
            Tel: (212) 479-6000
            Fax: (212) 479-6275
            ahwu@cooley.com
            bfrench@cooley.com

            Koji F. Fukumura (*pro hac vice*)
            10265 Science Center Drive
            San Diego, CA 92121-1117
            Tel: (858) 550-6000
            Fax: (858) 550-6420
            kfukumura@cooley.com

            *Attorneys for Defendants Katapult Holdings,*
            *Inc., Lee Einbinder, Howard Kurz, Orlando*
            *Zayas, Karissa Cupito, and Derek Medlin*

16