**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GINA McINTOSH, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>KATAPULT HOLDINGS, INC., LEE EINBINDER, HOWARD KURZ, ORLANDO ZAYAS, KARISSA CUPITO and DEREK MEDLIN<br>　　　　　Defendants. | Case No. 1:21-cv-07251-JPO |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Matthew M. Guiney
Kate M. McGuire
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
guiney@whafh.com

*Lead Counsel for Plaintiffs and the Class*

July 3, 2024

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ...................................................................................1

II.   SUMMARY OF LITIGATION AND PROCEDURAL HISTORY .......................................2

     A.     Nature of the Action.........................................................................................2

     B.     Initial Complaint and Lead Appointment Process ....................................................3

     C.     Lead Counsel's Investigation and the Amended Complaint.................................3

     D.     The Court Denies in Part the Motion to Dismiss
            the Amended Complaint and Denied Defendants'
            Motion for Reconsideration ...............................................................................3

     E.     Plaintiffs Initiated Discovery Of Defendants.........................................................4

     F.     Mediation Efforts and Settlement Negotiations......................................................4

III.  STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e) ...........................5

IV. ARGUMENT..................................................................................................................7

     A.     The Settlement Is Fair, Reasonable, and Adequate in Light of the
            Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors ....................................7

            1.     Plaintiffs and Lead Counsel Adequately
                    Represented the Settlement Class ...............................................................7

            2.     The Proposed Settlement Is the Product of
                    Good Faith Arm's-Length Negotiations
                    by Informed, Experienced Counsel.............................................................9

            3.     The Relief Provided for the Class is Adequate .........................................10

                    a)     The Relief Provided for the Class is Adequate .............................10

                    b)     The Costs, Risks, and Delay of Continued Litigation,
                            Trial and Appeal ..............................................................................11

                    c)     The Risks of Maintaining Class Action Status ..............................13

                      d)     The Stage of the Proceedings and the
                            Amount of Discovery Completed ....................................................14

                      e)     The Reasonableness of the Settlement Fund
                            and the Individual Defendants' Ability to
                            Withstand a Greater Judgment........................................................14

i

f)     The Proposed Method for Distributing
Relief Is Effective ...........................................................16

g)     Attorneys' Fees, Reimbursement of Expenses,
and Award to Plaintiffs ...................................................16

h)     The Parties Have Entered No Side Agreement...........................17

i)     There Was No Preferential Treatment;
The Plan Treats All Class Members
Equitably Based on the Strength of Their Claims ........................17

V.   Class Certification Is Appropriate for Settlement Purposes ...................................18

A.   The Settlement Class Is Sufficiently Numerous ...................................19

B.   Common Questions of Law or Fact Exist...........................................19

C.   Plaintiffs' Claims Are Typical of Those of the Settlement Class.........................20

D.   Plaintiffs and Lead Counsel Adequately
Represent the Settlement Class...............................................21

E.   The Predominance and Superiority Requirements Are Satisfied .........................22

F.   The Court Should Appoint Lead Counsel as Counsel for the Class .....................23

G.   The Court Should Approve the Proposed
Form and Method of Notice.................................................24

VI.   PROPOSED SCHEDULE OF EVENTS ............................................25

VII. CONCLUSION ...........................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  aff'd, 818 F.2d 145 (2d Cir. 1987)...........................................................................15

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................14

*Amchem Products, Inc., v. Windsor*,
  521 U.S. 591 (1997)..................................................................................18, 19, 23

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)............................................................................................22

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................................13

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
  2015 WL 224631 (S.D. Cal. Jan. 15, 2015)...........................................................21

*Cagan v. Anchor Sav. Bank FSB*,
  No. 88 Civ. 3024,
  1990 WL 73423 (E.D.N.Y. May 22, 1990) ...........................................................15

*In re Cendant Corp. Litig*,
  264 F.3d 201 (3d Cir. 2001)...................................................................................13

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)...................................................................................19

*In re China Med. Corp. Sec. Litig.*,
  No. 8:11-1061 JLS (ANX),
  2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ........................................................10

*In re China MediaExpress Holdings, Inc. S'holder Litig.*,
  No. 11-CV-0804 (VM),
  2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015).....................................................17

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................................................17

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ...........................................................................17

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)............................................................................... *passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)..............................................................................19

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)...............................................................................10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240 (CM),
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...............................................6, 20, 21

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  312 F.R.D. 332 (S.D.N.Y. 2015) .......................................................................20

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990)..............................................................................21

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................13, 20

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) .....................................................................5, 14

*In re Indep. Energy Holdings PLC*,
  No. 00 Civ. 6689 (SAS),
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003).......................................................10

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015).............................................................................20

*Karvaly v. eBay, Inc.*,
  245 F.R.D. 71 (E.D.N.Y. 2007) ........................................................................18

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) ................................................................11

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  2009 WL 4730185 (D.N.J. Dec. 4, 2009).............................................................12

*Lea v. Tal Educ. Grp.*,
  No. 18-CV-5480 (KHP),
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)........................................................10

*Leung v. Home Boy Rest. Inc.*,
   No. 07CIV8779RJSDFE,
   2009 WL 398861 (S.D.N.Y. Feb. 18, 2009)....................................................................9

*Marisol A. by Forbes v. Giuliani*,
   929 F. Supp. 662 (S.D.N.Y. 1996), *aff'd sub nom.*
   *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .............................................20

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   No. 04 CIV. 8144 (CM),
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................................21, 22

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..........................................................................16

*Mikhlin v. Oasmia Pharm. AB*,
   No. 19CV4349NGGRER,
   2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ...............................................................11

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)............................................................................15

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1035 (N.D. Cal. 2008) .......................................................................14

*Palacio v. E*TRADE Fin. Corp.*,
   No. 10 Civ. 4030 (LAP) (DCF),
   2012 WL 2384419 (S.D.N.Y. June 22, 2012) ..............................................................5

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019)........................................................................................7

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ..........................................................................17

*In re Refco, Inc. Sec. Litig.*,
   No. 05 Civ. 8626 (JSR),
   2010 WL 11586941 (S.D.N.Y. May 11, 2010) ............................................................8

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)............................................................................................19

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ....................................................................................19

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 8331 (CM) (MHD),
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .................................................................8, 24

*Tan Chao v. William*,
  2020 WL 763277 (2d Cir. Jan. 2, 2020) ............................................................................17

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..............................................................................16

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
  No. 08-CV-11117, 2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015),
  *aff'd in part, vacated in part*, 699 F. App'x 8 (2d Cir. 2017)...........................................17

*Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ...................................................................14

*Vargas v. Cap. One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014) ........................................................................................24

*In re Vivendi Universal, S.A.*,
  242 F.R.D. 76 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016)..............................................................................19, 20, 21

*In re Vivendi Universal, S.A., Sec. Litig.*,
  2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ........................................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005).........................................................................................5, 9, 20

*In re Warner Commc'ns Sec. Litig.*,
  798 F.2d 35 (2d Cir. 1986).................................................................................................6

## STATUTES & RULES

Fed. R. Civ. P.
  Rule 23(a).........................................................................................................................18
  Rule 23(a)(1)......................................................................................................................19
  Rule 23(a)(2)......................................................................................................................20
  Rule 23(a)(3)......................................................................................................................20
  Rule 23(a)(4)......................................................................................................................21
  Rule 23(b)(3)..........................................................................................................18, 22, 23
  Rule 23(b)(3)(D)...........................................................................................................18, 19
  Rule 23(c)(2)......................................................................................................................24
  Rule 23(e)....................................................................................................................6, 7, 24
  Rule 23(e)(1).......................................................................................................................6

Rule 23(e)(2)...............................................................................................................6, 7
Rule 23(e)(2)(A)................................................................................................................8
Rule 23(e)(2)(B)................................................................................................................9
Rule 23(e)(2)(C).........................................................................................................11, 12
Rule 23(e)(2)(C)(ii)........................................................................................................16
Rule 23(e)(2)(C)(iii)........................................................................................................16
Rule 23(e)(2)(C)(iv)........................................................................................................17
Rule 23(e)(2)(D)..............................................................................................................17
Rule 23(g)........................................................................................................................23
Rule 23(g)(1)(A).........................................................................................................9, 23

Private Securities Litigation Reform Act ("PSLRA")...................................................24
15 U.S.C. § 78u-4(a)(4)..................................................................................................18

Securities Exchange Act of 1934.......................................................................................2
Section 10(b), 15 U.S.C. § 78j(b).............................................................................3, 4, 11
Section 14(a), 15 U.S.C. § 78n(a)....................................................................................2
Section 20(a), 15 U.S.C. § 78t(a)...........................................................................2, 4, 11

## OTHER AUTHORITIES

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002).............................5

## I.    PRELIMINARY STATEMENT

The Parties[1] have reached a proposed Settlement of the above-captioned action (the "Action"). If approved, the Settlement would resolve all claims against Defendants in exchange for compensation totaling $2,500,000 in value. The settlement consideration is comprised of: (i) a cash component of $1,775,000 (the "Cash Component"); and (ii) an additional component worth $725,000 comprised of Katapult common stock (the "Settlement Shares") and/or cash (the "Additional Component"). Lead Plaintiff Matis Nayman and additional plaintiff Felipe de Castro Luna (collectively, "Plaintiffs") believe that the Settlement represents an excellent result for the Settlement Class given, *inter alia*, the risks, costs, and delays of continued litigation. In short, it is substantively fair, reasonable and adequate.

The Settlement was also arrived at through a procedurally fair process. By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of their claims. Moreover, the Settlement is the result of a mediator's recommendation by Michelle Yoshida, Esq. of Phillips ADR, an experienced and well-respected mediator of complex actions, who made the recommendation after months of negotiations with the Parties following a failed full-day mediation session. The involvement of a mediator of Ms. Yoshida's caliber—and inability of the Parties to reach a quick resolution—evidences the hard-fought nature of the litigation.

As discussed in greater detail below, Plaintiffs and their counsel believe that the proposed Settlement meets the standards for preliminary approval and is in the best interests of the

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated July 3, 2024 (the "Stipulation"). A true and correct copy of the Stipulation and its exhibits are attached as Exhibit A to the Declaration of Matthew M Guiney in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Guiney Decl.").

1

Settlement Class.  Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.  Defendants do not oppose entry of the agreed upon preliminary approval order.

## II.    SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

### A.    Nature of the Action

Plaintiffs asserted claims on behalf of a putative class of investors pursuant to §§10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("1934 Act") and SEC Rules 10b-5 and 14a-9 promulgated thereunder against Defendants Katapult Holdings Inc., ("Katapult," or the "Company") f/k/a FinServ Acquisition Corp. ("FinServ"), Orlando Zayas, Karissa (Long) Cupito, Derek Medlin, Lee Einbinder and Howard Kurz (collectively, "Defendants").

Defendant Katapult is the product of the merger of an earlier Katapult entity ("legacy Katapult") and Finserv.  Finserv was a Special Purpose Acquisition Company ("SPAC"), created with the sole purpose of buying a company to take it public.  Legacy Katapult was – and Katapult is – a provider of financing for consumers with sub-optimal credit.  Plaintiffs alleged that during the period leading up to the merger, Defendants falsely offered and reiterated their belief in representations about Katapult's business model and expected performance.

Katapult's access to customers was through a "waterfall" arrangement with prime lenders, where if a prime lender rejected a borrower as too high a risk, that borrower would automatically be passed on to Katapult, who had the opportunity to offer the customer a loan on which Katapult would make profit.  Plaintiffs alleged that: 1) the Proxy Statement Prospectus that Defendants filed on May 18, 2021 in connection with the business combination between FinServ and Katapult (the "Prospectus") failed to disclose critical information about the waterfall, including that prime lenders could decide to extend credit to customers with lower credit ratings that Katapult had projected would be in its customer pool restricting the flow of customers to Katapult.

2

As to Plaintiffs' Section 10(b) and 10b-5 claims, Plaintiffs alleged that between June 15, 2021 and August 9, 2021, both dates inclusive (the "Class Period"), Defendants made false and misleading statements about Katapult's then current beliefs about its near-term financial prospects, including statements that were misleading because of what Defendants knew was then happening with respect to its waterfall partnerships.

**B.    Initial Complaint and Lead Appointment Process**

On August 21, 2021, Plaintiffs filed the initial complaint. ECF No. 1. On May 26, 2022, the Court appointed Matis Nayman as Lead Plaintiff, and approved his selection of Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Lead Counsel. ECF No. 40.

**C.    Lead Counsel's Investigation and the Amended Complaint**

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) FinServ and Katapult's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, press releases, blog posts, and news articles concerning FinServ and Katapult, (c) FinServ and Katapult investor call transcripts; and (2) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, contacting former Katapult employees and other sources of relevant information. Lead Counsel also consulted with a damages and loss causation expert. On November 10, 2022, Plaintiffs filed and served the 71-page operative Second Amended Complaint. ECF No. 59.

**D.    The Court Denies in Part the Motion to Dismiss the Amended Complaint and Denied Defendants' Motion for Reconsideration**

On January 9, 2023, Defendants filed motions to strike, or alternatively, dismiss, Plaintiffs' Second Amended Complaint. ECF Nos. 65, 68. Plaintiffs filed their oppositions to each of those motions on March 6, 2023 (ECF Nos. 77, 78) and on April 11, 2023, Defendants filed their replies.

ECF Nos. 79 and 80.  On August 8, 2023, United States District Judge J. Paul Oetken of the United States District Court for the Southern District of New York denied Defendants' motion to strike and granted in part and denied in part Defendants' motion to dismiss, including dismissal of Plaintiffs 10(b) and 10b-5 claim, as well as the 20(a) claim based thereon, and defendants Cupito and Medlin against whom only dismissed claims were brought.

### E.    Plaintiffs Initiated Discovery Of Defendants

On September 6, 2023, Defendants Lee Einbinder, Katapult Holdings, Inc., Howard Kurz, and Orlando Zayas filed their answer and affirmative defenses to the Amended Complaint, ECF No. 88.  Thereafter, discovery commenced.  On September 25, 2023, the Parties held their Rule 26(f) conference, and on September 26, 2023, the parties' Civil Case Management Plan and Scheduling Order was entered by the Court.  ECF No. 90.  Lead Plaintiffs served interrogatories and multiple document requests on Defendants and received responses and objections from Defendants. Defendants also served multiple document requests on Plaintiffs and received responses and objections from Plaintiffs.

### F.    Mediation Efforts and Settlement Negotiations

On December 18, 2023, Lead Counsel and Defendants' Counsel participated in a full-day mediation session with Ms. Yoshida.  In advance of that session, the Parties exchanged, and provided to Ms. Yoshida, detailed mediation statements and exhibits, which addressed the issues of both liability and damages.  The mediation was conducted on the same day as, and in coordination with, the mediation of a case in a related action, *In re FinServ Acquisition Corp. SPAC Litigation*, No. 2022-0755-PAF ("Delaware Action"), pending in Delaware Chancery Court. The session ended without any final agreement being reached.

Thereafter, Ms. Yoshida conducted further discussions with the Parties, which culminated in Ms. Yoshida making a mediator's recommendation to resolve the Action for total settlement

consideration in this Action of $2,500,000 in total value (the "Settlement Consideration"), comprised of: (i) a cash component of $1,775,000 (the "Cash Component"); and (ii) an additional component worth $725,000 comprised of Katapult common stock (the "Settlement Shares") and/or cash (the "Additional Component").

The Parties subsequently accepted Ms. Yoshida's recommendation. The agreement in principle to settle the Action that was memorialized in a term sheet (the "Term Sheet"), which was fully executed in May, 2024, following significant additional negotiations. The Term Sheet sets forth, *inter alia*, Plaintiffs' in this case's agreement to settle and release all claims asserted against Defendants in return for $1,775,000 of the Cash Component and $725,000 of the Additional Component, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement. Following extensive negotiations, on July 3, 2024, the Parties executed the Stipulation. Guiney Decl., Ex. A.

## III.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

The law favors settlement, particularly in class actions and other complex cases because they tie up substantial judicial resources, use up the parties' time and money, and, in such cases, litigation resolution is usually significantly delayed. *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030 (LAP) (DCF), 2012 WL 2384419, at *7 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'"); *Newberg on Class Actions* (4th ed. 2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007

5

WL 2230177, at *4 (S.D.N.Y. July 27, 2007). Courts recognize that settlements require significant compromise between negotiating parties, and do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement.").

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2) **Approval of the Proposal.** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, in evaluating a settlement, the Second Circuit directs courts to consider the *Grinnell* factors: (1) complexity, expense, and likely duration of the litigation; (2) reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class through the trial; (7) ability of the defendants to withstand a greater judgment; (8) range of reasonableness of the settlement fund in light of the best possible recovery; and (9) range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of

litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).[2]

Courts however, cannot "engage in a complete analysis at the preliminary approval stage … as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Payment Card Interchange*, 330 F.R.D. at 30 (quoting *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014)). For instance, it is not possible to evaluate the reaction of the Class to the settlement at this time as notice of the Settlement has not yet been disseminated. *Id.* at 30.

A preview of the factors considered by courts in granting final approval demonstrates that this Settlement is well within the range of possible approval. The proposed Settlement satisfies each of the factors under Rule 23(e)(2) and *Grinnell*. The Court will likely be able to approve the Settlement as fair, reasonable and adequate.

## IV.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors

#### 1.    Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Plaintiffs and Class Counsel have adequately represented the Class throughout the course of the litigation and its settlement. Plaintiffs have no interests antagonistic to other Class Members, their claims are typical

---

[2] The Rule 23(e) factors, as amended in 2018, "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Thus, in determining whether a settlement will likely be approvable under Rule 23(e)(2), the court "considers the Rule 23(e)(2) factors, and then considers additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors." *Id.*

of Class Members' claims, and Plaintiffs share an interest with the other Class Members in obtaining the largest possible recovery for the Class. *See In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626 (JSR), 2010 WL 11586941, at *10 (S.D.N.Y. May 11, 2010) ("In this case there is no conflict between [] Plaintiffs and members of the Settlement Class. [] Plaintiffs and the Settlement Class share the common objective of maximizing recovery."); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014) (same).

Further, Plaintiffs have worked closely with Class Counsel throughout the pendency of this Action to achieve the best possible result for themselves and the Class. Plaintiffs and Class Counsel have diligently prosecuted this Action on the Class's behalf, including by thoroughly investigating the facts to draft the operative Complaint, filing oppositions to Defendants' motions to dismiss, and strike, defeating Defendants' motion to strike, in part, Defendants' motions to dismiss, and negotiating a favorable settlement that provides a substantial cash recovery for Class Members.

Plaintiffs retained highly experienced counsel with a successful track record of representing investors in similar securities cases. As to the adequacy of Class Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Class Counsel have been involved in this action from the beginning, including, among other things, conducting a pre-filing investigation, filing an initial complaint, retaining an investigator to interview former Katapult employees, filing an amended and a Second Amended Complaint ("SAC") retaining a damages expert to evaluate the case, opposing Defendants' motions to strike and dismiss the SAC, seeking and obtaining certification of the Class, preparing a mediation

statement for the first mediation and participating in that mediation, completing expert discovery, opposing Defendants' motions for summary judgment and to exclude Plaintiffs' experts, defeating Defendants' motion to certify the summary judgment decision for interlocutory appeal, drafting and negotiating pretrial motions and submissions, preparing for trial, participating in a second mediation, formalizing the settlement, and filing the instant motion for preliminary approval.

Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country. *See* ECF No. 19-4 (Wolf Haldenstein firm resumé).

### 2. The Proposed Settlement Is the Product of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel

The Rule 23(e)(2)(B) factor is a procedural one – whether "the proposal was negotiated at arm's length." Courts initially presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties"); *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021) (similar). Further, a mediator's involvement in settlement negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in

complex litigation, is further proof that it is fair and reasonable").

The proposed Settlement followed hard-fought litigation proceeding through motions to dismiss and strike as well as arm's-length negotiations in a mediation session with esteemed mediator, Michelle Yoshida. During this mediation session, the Parties negotiated zealously, taking into account the merits of Plaintiffs' claims and the defenses thereto, including the Parties' view of each sides' strengths, weaknesses, and the risks and expenses involved in the impending trial. The mediation was conducted on the same day as, and in coordination with, the mediation of a case in a related action, *In re FinServ Acquisition Corp. SPAC Litigation*, No. 2022-0755-PAF ("Delaware Action"), pending in Delaware Chancery Court. The negotiations were at all times adversarial and conducted at arm's length, producing a result that the Parties believe to be in their respective best interests. The arm's-length nature of the negotiations and Ms. Yoshida's involvement support the conclusion that the Settlement is fair and was achieved free of collusion. *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval).

After the Parties' mediation session was unsuccessful, hard-fought negotiations continued. It was only after further vigorous negotiations for months, that Ms. Yoshida proposed, and the Parties accepted, the terms of settlement in principle leading to the Settlement with which Parties seek to resolve this action.

### 3.    The Relief Provided for the Class is Adequate

Each of the factors set out in Rule 23(e)(2)(C), as well as the non-duplicative factors set out in *Grinnell*, 495 F.2d at 463, weigh in favor of preliminarily approving the Settlement.

### a)    The Relief Provided for the Class is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a

settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). This section of Rule 23(e) "subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." *Mikhlin v. Oasmia Pharm. AB*, No. 19CV4349NGGRER, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (internal citations omitted).

> **b)** **The Costs, Risks, and Delay of Continued Litigation, Trial and Appeal**

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

The risks inherent in this litigation are apparent from the Court's motion to dismiss order. Although Plaintiffs were successful in defeating a portion of the motion to dismiss, they lost that motion as to a significant part of their complaint, their 10(b) and related 20(a) allegations, which also resulted in the loss of certain defendants from the action.  If the case were not to settle, after the ultimate resolution of the remaining claims in trial court, Plaintiffs would have to appeal those dismissed claims to have any hope of recovery thereon, and success on appeal is by no means certain.

Moreover, as to Plaintiffs' remaining claims, there is simply no guarantee that the evidence would ultimately support them.  Indeed, the only certainty is that continued litigation would have been costly, risky, and drawn out.  This is because "securities class actions are inherently complex" (*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4,

2009)), and frequently take a long time to litigate, in part because they often involve significant post-trial motions and appeals. *See, e.g., In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery).

In order to prevail at summary judgment motion and trial, Plaintiffs would have to **prove**, *inter alia*, that the statements and omissions were false and misleading, Defendants knew or were reckless in not knowing their statements and omissions were false and misleading at the time made, and that those statements and omissions were corrected and caused recoverable damages for the Settlement Class. Plaintiffs anticipate Defendants would present strong arguments challenging Plaintiffs' pleading and proof on all of those elements in their expected motion(s) for summary judgment and/or at trial.

Further, even if Plaintiffs were able to prove liability, Defendants would have asserted that Plaintiffs could not establish loss causation and damages. Although Plaintiffs believed that they had meritorious arguments in response to Defendants' assertions, it cannot be disputed that the Parties held extremely disparate views on loss causation and damages and, had Defendants' arguments been accepted in whole or part, they would have dramatically limited or foreclosed any potential recovery. *See In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig*., 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

Finally, even if Plaintiffs prevailed on liability and the Settlement Class was awarded damages, Defendants likely would appeal the verdict and award, and Plaintiffs would likely appeal

concerning the dismissal of certain of their claims. The appeals process would have likely spanned several years, during which, the Settlement Class would receive no distribution of any damage award. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.

By contrast, the Settlement provides a favorable, immediate cash recovery for the Class and eliminates the risk, delay, and expense of continued litigation. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"). Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through and beyond trial, the $2.5 million Settlement is a fair and adequate recovery that serves the best interests of the Class.

Thus, the potential costs, delay, and complexity of continued litigation favor preliminary approval of the Settlement.

### c)    The Risks of Maintaining Class Action Status

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, the class has not yet been certified, and Plaintiffs are aware that there is a risk the Court could disagree. Even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. *See, e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement

**d)    The Stage of the Proceedings and the Amount of Discovery Completed**

That formal discovery was in its early stages does not weigh against preliminary approval. As discussed above, Plaintiffs conducted a thorough and informed investigation through multiple iterations of the pleading stage and relied on experts to inform their negotiation positions. Moreover, Plaintiffs engaged in substantial briefing on the motions to strike and to dismiss, and the Parties exchanged detailed mediation briefs and participated in a mediation process in conjunction with an experienced mediator. *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, [] Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the ... industry.  The Court finds that [] Plaintiffs were well-informed to 'gauge the strengths and weaknesses of their claims and the adequacy of the settlement.'").  *See also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) (quotation marks and citations omitted) ("the Court need not find that the parties have engaged in extensive discovery… it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the Settlement.") (quotation marks and citations omitted); *see also IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").  Here, Plaintiffs had more than sufficient information to evaluate the Settlement. This factor supports approval.

**e)    The Reasonableness of the Settlement Fund and the Individual Defendants' Ability to Withstand a Greater Judgment**

The Settlement provides for a Settlement Fund of $2,500,000, with $1,775,000 in cash, and $725,000 in Katapult stock, or if certain conditions prevail at the time for distribution, additional

cash. Plaintiffs' estimated maximum aggregate damages were, under the parties' estimation, approximately $41 million. The Settlement represents a strong result for the Class, returning approximately 5.22% of maximum potential damages to investors. This best-case scenario assumes that Plaintiffs prevail at trial and the Court and jury accept Plaintiffs' damages theory, including proof of loss causation, in the full amount proffered by Plaintiffs' expert. Anything less than a complete victory could eliminate recoverable damages. Courts judge the reasonableness of a settlement "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), aff'd, 818 F.2d 145 (2d Cir. 1987).

The percentage of damages here is well within the range of acceptability. *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."); *Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"). When there are problems facing a case – as here – "any amount could be deemed reasonable." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008).

A defendant's ability to withstand a judgment greater than that secured by settlement is generally not one of the determining factors. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in

favor of settlement approval.'").

### f)    The Proposed Method for Distributing Relief Is Effective

As required by Rule 23 (e)(2)(C)(ii), the method for processing Settlement Class Members' claims and distributing relief to eligible claimants is well-established and effective. Here, JND ("JND"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements.

### g)    Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As set out in the Notice, Class Counsel intend to seek an award of attorneys' fees of no more than one third of the Settlement Amount, and recover litigation expenses in an amount not to exceed $60,000. This fee request is reasonable and in line with fees awarded in other class settlements approved in similar cases. "For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million." *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014); *In re China MediaExpress Holdings, Inc. S'holder Litig.*, No. 11-CV-0804 (VM), 2015 WL 13639423, at *1 (S.D.N.Y. Sept. 18, 2015) (awarding attorneys' fees of 33.33% of settlement fund). Class Counsel will receive no payment until after the Court issues an order awarding attorneys' fees following the Settlement Hearing.

16

### h)    The Parties Have Entered No Side Agreement

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of securities purchased during the Settlement Class Period request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *1 (S.D.N.Y. Oct. 16, 2019), appeal withdrawn sub nom. *Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

### i)    There Was No Preferential Treatment; The Plan Treats All Class Members Equitably Based on the Strength of Their Claims

The Court must also evaluate whether the Settlement treats Class Members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Class Member, including Plaintiffs. Courts preliminarily approve proposed plans of allocation if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-CV-11117, 2015 WL 5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part,* 699 F. App'x 8 (2d Cir. 2017).

Plaintiffs designed the Plan with the assistance of Plaintiffs' damages expert to distribute the Net Settlement Fund in a manner consistent with the claims alleged and loss causation principles. The Plan, fully disclosed in the Long Notice, provides for distribution of the Net Settlement Fund to Authorized Claimants *pro rata*, based on the amount and timing of each claimant's transactions during the Class Period. Plaintiffs and all other Class Members will receive

17

payment pursuant to the same formula, based upon the relative losses they sustained.

As explained in the Notice, in addition to their *pro rata* distribution pursuant to the Plan of Allocation, Plaintiffs will also seek reimbursement of costs incurred representing the Class, as authorized by the PSLRA. 15 U.S.C. §78u-4(a)(4). Plaintiffs will request an amount not to exceed $10,000 in total for plaintiffs' efforts representing the Class. These requested awards do not result in inequitable treatment as they are compensation for Plaintiffs' significant expenditures of time and effort in representing the Class and helping to secure the Settlement.

## V.    CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES

In preliminarily approving the proposed Settlement, this Court must consider whether to certify the Settlement Class settlement under Rules 23(a) and (b)(3). *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). To certify a class, the Court must determine whether four threshold requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Rule 23(b). *Id.* at 614. In certifying the Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Further, at this point, the Court need not conduct a rigorous analysis to determine whether to certify a class but should reserve this analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). Here, the proposed Settlement Class meets the requirements of and satisfies Rule 23(a) and 23(b)(3).

The proposed Settlement Class consists of "(a) all persons and entities who purchased or otherwise acquired Katapult securities between June 15, 2021 and August 9, 2021, both dates inclusive (the "Settlement Class Period"), and/or (b) beneficially owned and/or held the Class A

18

common stock of FinServ Acquisition Corp ("PSAC") as of May 11, 2021 and were eligible to vote at FinServ's June 7, 2021 special meeting and were allegedly damaged thereby (the "Settlement Class")." Stipulation, 1(pp). This Action satisfies all certification factors.[3]

### A.    The Settlement Class Is Sufficiently Numerous

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and Plaintiffs must only show "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-245 (2d Cir. 2007). Indeed, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("a court may make common sense assumptions regarding numerosity"). Although the exact size of the Settlement Class is not yet known, the numerosity requirement is generally satisfied in a securities class action as "a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, there are likely thousands of potential Class Members as FinServ's and Katapult's shares were publicly traded on the NASDAQ. Thus, the numerosity requirement is met.

### B.    Common Questions of Law or Fact Exist

Commonality requires that "questions of law or fact [are] common to the class." *EVCI*,

---

[3] "Whether trial would present intractable management problems, see Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *Amchem Prods., Inc., 521 U.S. at 593 (1997)*.

2007 WL 2230177, at *13. Securities class actions are particularly well-suited to class treatment as the commonality requirement "is applied permissively." *Id*; *see also Vivendi*, 242 F.R.D. at 84. Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 451. The common issue must be of such a nature that it is "capable of classwide resolution—which means that [determination of] its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, (2011)). Commonality is satisfied if the plaintiffs charge defendants with a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in the company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015). Rule 23(a)(2) is satisfied here. Plaintiffs' claims that Defendants violated the federal securities laws by omitting and/or misrepresenting material facts related its waterfall customer acquisition arrangement in the Proxy Statement/Prospectus and misrepresented or omitted material facts about Katapult's financial prospects arrangement in publicly disseminated statements during the Settlement Class Period, unquestionably raise issues of the Settlement Class.

### C.    Plaintiffs' Claims Are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that the representative's claim be typical of those of the class members. Typicality requires that "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). "Typical," however, does not mean identical. *EVCI*, 2007 WL 2230177, at *13.; *Vivendi*, 242 F.R.D. at 85 ("In prosecuting their case, plaintiffs will necessarily

seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims. Such allegations are generally considered sufficient to satisfy the typicality requirement"). Particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Like other Settlement Class Members, Plaintiffs allege that they purchased or acquired Katapult securities during the Settlement Class Period, and/or beneficially owned and/or held the Class A common stock of FinServ as of May 11, 2021 and were eligible to vote at FinServ's June 7, 2021 special meeting and were damaged due to Defendants' conduct. Because Plaintiffs and the other members of the Settlement Class were allegedly affected by the same conduct, the typicality requirement is met. *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

### D.    Plaintiffs and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement has traditionally entailed a two-pronged inquiry: first, the showing that the interests of the representative parties will not conflict with the interests of Settlement Class Members, and second, the representative parties' counsel is qualified, experienced, and able to conduct the proposed litigation vigorously. *EVCI*, 2007 WL 2230177, at *13. Plaintiffs are adequate if their interests do not conflict with those of the class. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009).

As explained above, Plaintiffs and Lead Counsel are adequate representatives. First,

Plaintiffs and the other Settlement Class Members were all injured by Defendants' allegedly materially false statements. If Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations). Accordingly, the interests of Plaintiffs and other members of the Settlement Class are aligned, as they share the objective of maximizing recovery from Defendants. *Mild v. PPG Indus., Inc.*, 218CV04231RGKJEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019).

Second, Lead Counsel are experienced in prosecuting class actions having successfully prosecuted securities class actions in Federal Court and throughout the country. *See* ECF Nos. 19-4 (Lead Counsel's firm resumé). They have also committed significant resources to representing the proposed Class.

### E. The Predominance and Superiority Requirements Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Here, issues related to Defendants' alleged violations of the federal securities laws present numerous issues of law and fact such as: (a) whether the Defendants' acts and omissions as alleged herein violated the federal securities laws; (b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, prospects, and management of the Company; (c) whether the Individual Defendants caused the Company to issue false and misleading statements during the Class Period; (d) whether Defendants acted knowingly or recklessly in issuing false and misleading statements; (e) whether the prices of the Company's securities during the Class Period were artificially inflated because of the conduct alleged; and (f) whether the members of the Class have sustained damages and, if so, what is the

proper measure of damages.  "Predominance is a test readily met in certain cases alleging []

securities fraud," *Amchem*, 521 U.S. at 625, and it is met here.

Finally, "a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Indeed, the damages suffered by members

of the Settlement Class are not sufficient to make it economical to prosecute separate actions in

order to recover individual losses sustained as a result of Defendants' alleged violations of the

securities laws.  *Amchem.*, 521 U.S. at 617 ("The policy at the very core of the class action

mechanism is to overcome the problem that small recoveries do not provide the incentive for any

individual to bring a solo action.").  Accordingly, a class action is superior to other available

methods for the fair and efficient adjudication of the controversy.  Class certification for settlement

purposes is, therefore, appropriate.

### F.    The Court Should Appoint Lead Counsel as Counsel for the Class

A court that certifies a class must also appoint class counsel.  *See* Fed. R. Civ. P. 23(g).  In

making this appointment, the Federal Rules direct courts to consider: "(1) the work counsel has

done in identifying or investigating potential claims in the action; (2) counsel's experience in

handling class actions, other complex litigation, and the types of claims asserted in the action; (3)

counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to

representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Wolf Haldenstein was appointed Lead Counsel in May 2022 (ECF No. 40), and since that

time, the firm has devoted substantial time, effort, and resources to identifying, investigating,

litigating and settling the claims in this matter.  Moreover, as explained above, Wolf Haldenstein

has substantial experience prosecuting securities class actions.  For these reasons, among others,

Plaintiffs respectfully request that the Court appoint Lead Counsel to serve as Class Counsel.

23

**G.     The Court Should Approve the Proposed Form and Method of Notice**

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval the Claims Administrator will mail the Notice and Proof of Claim Form (attached to the Stipulation of Settlement) to all Settlement Class Members who can be identified with reasonable effort, including through the records maintained by Defendants during the Settlement Class Period. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014)*.* In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *Shapiro*, 2014 WL 1224666 at *17 ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice.  The Notice will advise Settlement Class Members of, *inter alia*: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses.  The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to or being excluded form the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and expenses.  The proposed form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA.

## VI.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing the Notice and publication of the Summary Notice, and deadlines for submitting claims or for opting out of, or objecting to, the Settlement.  The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order ("Prelim. Appr. Order"):

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶9) | To be commenced not later than 20 business days after entry of Prelim. Appr. Order |
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶10) | Not later than 10 business days after the Notice Date |
| Deadline for filing of opening papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Prelim. Appr. Order ¶21) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Prelim. Appr. Order ¶¶16, 19) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Prelim. Approval Order ¶21) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶13(a)) | 120 calendar days after the Notice Date |
| Settlement Hearing (Prelim. App. Order ¶ 4) | Not earlier than 120 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

Plaintiffs request that the Court schedule the Settlement Hearing for a date 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  As this motion is unopposed, Plaintiffs request that the Court consider this motion for preliminary approval on the papers at this time.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the unopposed motion.

Dated: July 3, 2024                              Respectfully submitted,

                                                 **WOLF HALDENSTEIN ADLER**
                                                 **FREEMAN & HERZ LLP**

                                                 /s/  Matthew M. Guiney
                                                 Matthew M. Guiney
                                                 270 Madison Avenue
                                                 New York, New York 10016
                                                 Telephone: (212) 545-4600
                                                 Facsimile: (212) 686-0114
                                                 guiney@whafh.com

                                                 *Lead Counsel for Plaintiffs and the Class*

                                                 Brian Schall (Pro Hac Vice forthcoming)
                                                 **THE SCHALL LAW FIRM**
                                                 2049 Century Park East, Suite 2460
                                                 Los Angeles, California 90067
                                                 Telephone: (424) 303-1964
                                                 brian@schallfirm.com

                                                 *Additional Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 3, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/ Matthew M. Guiney</u>