# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GINA McINTOSH, Individually and On
Behalf of All Others Similarly Situated,

        Plaintiff,

                        Case No. 1:21-cv-07251 (AS)

        vs.

KATAPULT HOLDINGS, INC., LEE
EINBINDER, HOWARD KURZ,
ORLANDO ZAYAS, KARISSA CUPITO
and DEREK MEDLIN

        Defendants.


**STIPULATION AND AGREEMENT OF SETTLEMENT,**
**COMPROMISE, AND RELEASE**

This Stipulation and Agreement of Settlement, Compromise, and Release, dated July 3, 2024 (the "**Stipulation**"), is entered into by and among:  (i) Lead Plaintiff Matis Nayman and additional plaintiff, Felipe de Castro Luna (collectively, "**Plaintiffs**"), on behalf of themselves and all other members of the Settlement Class (as defined in Paragraph 1 below); and (ii) Katapult Holdings, Inc. ("**Katapult**"), Orlando Zayas, Karissa Cupito, Derek Medlin, Lee Einbinder, and Howard Kurz ("**Defendants**") (Plaintiffs and Defendants, together, the "**Parties**").[1]  Subject to the terms and conditions set forth herein and the approval of the Court of Southern District of New York (the "**Court**") under Federal Rule of Civil Procedure 23, the Settlement embodied in this

---

[1] All terms herein with initial capitalization shall, unless defined elsewhere in this Stipulation, have the meanings given to them in Paragraph 1 below.

Stipulation is intended to be a full and final disposition of the claims asserted against Defendants in the above-captioned stockholder class action (the "**Action**").

**WHEREAS**:

A.    On November 5, 2019, FinServ Acquisition Corp. ("**FinServ**" or the "**Company**"), a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination, completed its initial public offering of 25 million units, with each unit consisting of one share of FinServ Class A common stock and one half of a warrant with an exercise price of $11.50 per share.

B.    On December 18, 2020, FinServ, Keys Merger Sub 1, Inc. and Keys Merger Sub 2, LLC (both wholly owned subsidiaries of FinServ), and legacy Katapult Holdings, Inc. ("**Legacy Katapult**") entered into an Agreement and Plan of Merger, pursuant to which FinServ would acquire Legacy Katapult (the "**de-SPAC Transaction**").

C.    On May 18, 2021, FinServ filed a definitive proxy statement pursuant to Section 14(a) of the Securities Exchange Act of 1934 with the United States Securities and Exchange Commission relating to the de-SPAC Transaction (such proxy statement together with any preliminary proxy filings, as well as any amendments or supplements thereto, the "**Proxy**").

D.    On June 7, 2021, a majority of FinServ stockholders voted to approve the de-SPAC Transaction; the de-SPAC Transaction closed on June 9, 2021, and FinServ changed its name to Katapult Holdings, Inc. ("**Katapult**").

E.    During the period between June 15, 2021 and August 9, 2021, Katapult and certain Individual Defendants made statements about Katapult's financial prospects that Plaintiffs have alleged to contain misrepresentations or omissions.

2

F.    On August 27, 2021, Plaintiff Gina McIntosh filed the initial Class Action Complaint on behalf of herself and all others similarly situated, commencing this action in the Southern District of New York bearing the caption *McIntosh v. Katapult Holdings et al.*, No. 1:21-cv-07251.

G.    On May 26, 2022, the Court appointed Matis Nayman as Lead Plaintiff, and approved his selection of Wolf Haldenstein Adler Freeman & Herz LLP ("**Wolf Haldenstein**") as Lead Counsel.

H.    On November 10, 2022, Plaintiffs filed and served the 71-page operative Second Amended Complaint, bringing claims under §§10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 and rules promulgated thereunder, alleging that: (1) the Proxy failed to disclose critical information about Katapult's "waterfall" arrangement with prime lenders, including that prime lenders could decide to extend credit to customers with lower credit ratings that Katapult had projected would be in its customer pool, restricting the flow of the waterfall of customers to Katapult, and that the waterfall was Katapult's only way to grow its customer base; and (2) between June 15, 2021 and August 9, 2021, both dates inclusive (the "**Class Period**"), Defendants made false and misleading statements about Katapult's financial prospects.  ECF No. 59.

I.    On January 9, 2023, Defendants filed a motion to dismiss, and, in the alternative, a motion to strike the Second Amended Complaint.  ECF Nos. 65–70.  Lead Plaintiffs filed their oppositions to each of those motions on March 6, 2023, withdrawing their claims against defendant Medlin.  ECF Nos. 77, 78.  On April 11, 2023, Defendants filed their replies.  ECF Nos. 79 and 80.

J.    On August 8, 2023, the Court denied Defendants' motion to strike and granted in part and denied in part Defendants' motion to dismiss.  In that decision, the Court dismissed

Plaintiffs' Section 10(b) and Rule 10b-5 claim, the Section 20(a) claim based thereon, as well as Defendants Cupito and Medlin.

K.    On September 6, 2023, Defendants Katapult, Zayas, Einbinder, and Kurz filed an Answer to the Second Amended Complaint (the "**Answer**").

L.    On December 18, 2023, Plaintiffs' Counsel and Defendants' Counsel participated in a mediation session (the "**Mediation**") before Michelle Yoshida (the "**Mediator**"). The Mediation was also attended by plaintiff in an action captioned *In re FinServ Acquisition Corp. SPAC Litigation*, No. 2022-0755-PAF, pending in Delaware Chancery Court (the "**Delaware Plaintiff**"), which asserted breach of fiduciary duty claims against FinServ's directors and officers in connection with the de-SPAC Transaction (the "**Delaware Action**").

M.    In advance of the Mediation, the Parties as well as the Delaware Plaintiff exchanged mediation statements and exhibits through the Mediator, which addressed the issues of both liability and damages. The Mediation ended without any agreement being reached. Following additional discussions between the Parties and the Mediator as well as the Delaware Plaintiff, on February 21, 2024, the Mediator made a recommendation to settle the Action as well as the Delaware Action, which expired by its terms at 5:00 p.m. PT on February 22, 2024.

N.    As a result of extensive, arm's-length negotiations during and following the Mediation, the Parties as well as the Delaware Plaintiff accepted the Mediator's recommendation. Thereafter, the Parties continued to negotiate extensively at arm's length concerning the non-monetary terms of the Settlement and reached an agreement in principle to settle the Action that was memorialized in a Settlement Term Sheet executed on May 20, 2024 (the "**Settlement Term Sheet**").

O.     The Settlement Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims against Defendants in the Action in return for $2,500,000 in total settlement value—with $1,775,000 paid in cash and the remainder paid in either shares of freely-tradeable Katapult common stock or additional cash—subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

P.     On May 21, 2024, the Parties informed the Court of the agreement in principle to settle the Action and agreed to suspend all upcoming deadlines in the Action.  ECF No. 93.

Q.     This Stipulation (together with the exhibits hereto) reflects the final and binding agreement among the Parties and supersedes the Settlement Term Sheet.

R.     Plaintiffs, through Plaintiffs' Lead Counsel, have conducted an investigation relating to the claims and the underlying events alleged in the Action.  Plaintiffs' Lead Counsel has analyzed the evidence adduced during the investigation as described above and have also researched the applicable law with respect to the claims asserted in the Action and the potential defenses thereto.  This investigation and the settlement negotiations between the Parties have provided Plaintiffs with a detailed basis upon which to assess the relative strengths and weaknesses of the Parties' respective positions in the Action.

S.     Based upon their investigation, prosecution, and mediation of the Action, Plaintiffs and Plaintiffs' Lead Counsel have concluded that the terms and conditions of the Settlement and this Stipulation are fair, reasonable, and adequate to Plaintiffs and the other Settlement Class Members and in their best interests.  Based on Plaintiffs' direct oversight of the prosecution of the Action, along with the input of Plaintiffs' Lead Counsel, Plaintiffs have agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering:

(i) the substantial benefits that Plaintiff and the other Settlement Class Members will receive from the resolution of the Action; (ii) the attendant risks of litigation; and (iii) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation. The Settlement and this Stipulation shall in no event be construed as, or deemed to be, evidence of a concession by Plaintiffs of any infirmity in the claims asserted in the Action.

T.    Defendants deny all allegations of wrongdoing, fault, liability, or damage to Plaintiffs or the Settlement Class, and further deny that Plaintiffs have asserted a valid claim as to any of them. Defendants further deny that they engaged in any wrongdoing or committed any violation of law or breach of duty and believe that they acted properly, in good faith, and in a manner consistent with their legal duties and are entering into the Settlement and this Stipulation solely to avoid the substantial burden, expense, inconvenience, and distraction of continued litigation and to resolve each of Plaintiffs' claims against Defendants. The Settlement and this Stipulation shall in no event be construed as, or deemed to be, evidence of or an admission or concession on the part of any of the Defendants with respect to any claim or factual allegation or of any fault or liability or wrongdoing or damage whatsoever or any infirmity in the defenses that any of the Defendants have or could have asserted.

U.    The Parties recognize that the Action has been filed and prosecuted by Plaintiffs in good faith and defended by Defendants in good faith and further that the New York Settlement Consideration to be paid, and the other terms of the Settlement as set forth herein, were negotiated at arm's length, in good faith, and reflect an agreement that was reached voluntarily after consultation with experienced legal counsel.

**NOW THEREFORE**, it is **STIPULATED AND AGREED**, by and among Plaintiffs (individually and on behalf of the Settlement Class) and Defendants that, subject to the approval

of the Court under Rule 23 of the Federal Rules of Civil Procedure, for good and valuable consideration set forth herein and conferred on Plaintiffs and the other members of the Settlement Class, the sufficiency of which is acknowledged, the claims asserted in the Action on behalf of the Settlement Class against Defendants shall be finally and fully settled, compromised, and dismissed with prejudice, and that the Released Plaintiffs' Claims shall be finally and fully compromised, resolved, discharged, settled, and dismissed with prejudice against the Released Defendants' Persons, and that the Released Defendants' Claims shall be finally and fully compromised, resolved, discharged, settled, and dismissed with prejudice against the Released Plaintiffs' Persons, in the manner set forth herein.

## I.    DEFINITIONS

1.    In addition to the terms defined elsewhere in this Stipulation, the following capitalized terms, used in this Stipulation and any Exhibits attached hereto and made a part hereof, shall have the meanings given to them below:

(a)    "**CIC**" means an acquisition of Katapult by way of merger or through the acquisition of all of the outstanding shares of Katapult common stock (including by tender offer) or any other corporate transaction in which all of the outstanding shares of Katapult common stock are extinguished.

(b)    "**CIC Transaction**" means a transaction or transactions effecting a CIC.

(c)    "**Defendants' Counsel**" means Cooley LLP.

(d)    "**Delaware Court**" means the Delaware Court of Chancery.

(e)    "**Delaware Judgment**" means the order and final judgment to be entered by the Delaware Court approving the Delaware Settlement.

(f)    "**Delaware Settlement**" means the resolution of the Delaware Action on the terms and conditions set forth in the Delaware Stipulation.

7

(g)    "**Delaware Settlement Shares**" means the number of Settlement Shares for the Delaware Action, which shall be calculated by dividing $2,775,000 by the VWAP (defined below) of Katapult common stock for the ten (10) consecutive trading days immediately preceding the date of a hearing on final approval of the Delaware Judgment.

(h)    "**Delaware Stipulation**" means the Stipulation and Agreement of Settlement, Compromise, and Release, dated July 3, 2024, entered into by the parties to the Delaware Action.

(i)    "**de-SPAC Transaction**" means FinServ's merger with Legacy Katapult, which closed on June 9, 2021.

(j)    "**DTC**" means the Depository Trust & Clearing Corporation, including its subsidiary the Depository Trust Company.

(k)    "**Effective Date**" means the first date by which all of the events and conditions specified in Paragraph 32 of this Stipulation have been met and have occurred or have been waived.

(l)    "**Final**," when referring to the New York Judgment or any other court order, means (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any motion for reconsideration, reargument, appeal, or other review of the order; or (ii) if there is an appeal from the New York Judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari, reconsideration, or otherwise, or (b) the date the New York Judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari, reconsideration, reargument, or other form of review, or the denial of a writ of certiorari, reconsideration, reargument, or other form of review, and, if certiorari, reconsideration, or other form of review is granted, the date of final affirmance following review

pursuant to that grant; provided, however, that any disputes or appeals relating solely to (i) the amount, payment, or allocation of attorneys' fees and expenses or (ii) the plan of allocation of the Settlement proceeds (as submitted or subsequently modified), shall have no effect on finality for purposes of determining the date on which the New York Judgment becomes Final and shall not otherwise prevent, limit or otherwise affect the New York Judgment, or prevent, limit, delay or hinder entry of the New York Judgment.

(m)    "**Litigation Expenses**" means costs and expenses incurred by Plaintiffs' Counsel in connection with commencing, prosecuting, and settling the Action, for which Plaintiffs' Counsel intend to apply to the Court for payment from the New York Cash Settlement Fund.

(n)    "**New York Brokerage Account**" means the securities brokerage account that Plaintiffs' Lead Counsel will designate as the recipient of the New York Settlement Shares.

(o)    "**New York Cash Settlement Amount**" means the $1,775,000 cash consideration that Defendants shall pay or cause to be paid in accordance with Paragraph 7 of this Stipulation and any additional cash consideration that Katapult shall pay in accordance with Paragraphs 7 and 8 of this Stipulation.

(p)    "**New York Cash Settlement Fund**" means the New York Cash Settlement Amount plus any and all interest earned thereon.

(q)    "**New York Class Settlement Shares**" means the New York Settlement Shares, less any New York Settlement Shares awarded to Plaintiffs' Counsel for attorneys' fees and Litigation Expenses.

(r)    "**New York Escrow Account**" means the account maintained by Plaintiffs' Lead Counsel and into which the New York Cash Settlement Amount, plus the net cash proceeds

from the sale of any New York Class Settlement Shares, shall be deposited and maintained and held in escrow under the control of Plaintiffs' Lead Counsel.

(s)    "**New York Judgment**" means the Order and Final Judgment substantially in the form attached hereto as **Exhibit B**, to be entered by the Court approving this Settlement.

(t)    "**New York Net Settlement Fund**" means the New York Settlement Fund (including, if applicable, the net cash proceeds from the sale of any New York Class Settlement Shares deposited into the New York Escrow Account in accordance with Paragraph 8(g) below, as well as accrued interest thereon) less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any attorneys' fees and/or Litigation Expenses awarded by the Court from the Settlement Fund; and (iv) any other costs or fees approved by the Court.

(u)    "**New York Settlement Consideration**" means a total consideration equal to $2,500,000, comprised of $1,775,000 paid in cash and the remainder paid in either New York Settlement Shares or additional cash in accordance with Paragraphs 7 and 8 of this Stipulation.

(v)    "**New York Settlement Fund**" means the New York Cash Settlement Fund plus the New York Settlement Shares.

(w)    "**New York Settlement Hearing**" means the hearing to be held by the Court to determine whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved.

(x)    "**New York Settlement Shares**" means the number of shares of freely-tradeable Katapult common stock to be issued and delivered by Katapult in accordance with Paragraph 7(b) of this Stipulation, including, as applicable, any New York Excess Settlement Shares to be delivered to the New York Brokerage Account pursuant to Paragraph 7(b)(ii) of this

Stipulation and any Delaware Unused Settlement Shares to be delivered to the New York Brokerage Account pursuant to Paragraph 7(b)(iii) of this Stipulation.

(y)    "**Notice**" means the Notice of Pendency and Proposed Settlement of Class Action, substantially in the form attached hereto as **Exhibit A-1**, which is to be mailed (or emailed) to potential Settlement Class Members.

(z)    "**Notice and Administration Costs**" means the costs, fees, and expenses that are incurred by the Settlement Administrator and/or Plaintiffs' Counsel in connection with: (i) providing notice to the Settlement Class; and (ii) administering the Settlement, including but not limited to the costs, fees, and expenses incurred in connection with the Escrow Account.

(aa)    "**Plan of Allocation**" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice.

(bb)    "**Plaintiffs' Lead Counsel**" means Wolf Haldenstein Adler Freeman & Herz LLP.

(cc)    "**Plaintiffs' Counsel**" means Plaintiffs' Lead Counsel and the Schall Law Firm.

(dd)    "**Preliminary Approval Order**" means the Order, substantially in the form attached hereto as **Exhibit A**, directing notice of the Settlement and scheduling Settlement-related events.

(ee)    "**Redeeming Stockholders**" means the persons and entities who exercised redemption rights in connection with the de-SPAC Transaction.

(ff)    "**Released Claims**" means, collectively, the Released Plaintiffs' Claims and the Released Defendants' Claims.

11

(gg)    "**Released Defendants' Claims**" means all actions, causes of action, suits, liabilities, claims, rights of action, debts, sums of money, covenants, contracts, controversies, agreements, promises, damages, contributions, indemnities, and demands of every nature and description, whether or not currently asserted, whether known claims or Unknown Claims, suspected, existing, or discoverable, whether arising under federal, state, common, or foreign law, whether based in contract, tort, statute, law, equity, or otherwise, that arise out of or are based upon the institution, prosecution, or settlement of the claims against Defendants.  For the avoidance of doubt, Defendants' Released Claims do not include any claims to enforce the terms of this Settlement (the "**Excluded Defendants' Claims**").

(hh)    "**Released Defendants' Persons**" means Defendants, FinServ, FinServ Holdings LLC ("**FinServ Holdings**"), Keys Merger Sub 1, Inc., Keys Merger Sub 2, LLC, and any and all of their respective current and former directors, officers, employees, employers, parent entities, controlling persons, owners, members, principals, affiliates, subsidiaries, managers, partners, limited partners, general partners, stockholders, representatives, attorneys, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, agents, heirs, executors, trustees, personal representatives, estates, administrators, predecessors, successors, assigns, insurers, and reinsurers.

(ii)    "**Released Plaintiffs' Claims**" means all actions, causes of action, suits, liabilities, claims, rights of action, debts, sums of money, covenants, contracts, controversies, agreements, promises, damages, contributions, indemnities, and demands of every nature and description, whether or not currently asserted, whether known claims or Unknown Claims, suspected, existing, or discoverable, whether arising under federal, state, common, or foreign law, whether based in contract, tort, statute, law, equity, or otherwise (including, but not limited to,

federal and state securities laws), that Plaintiffs or any other Settlement Class Member (i) asserted in the Second Amended Complaint; or (ii) could have asserted in the Second Amended Complaint or in any other court, tribunal, proceeding, or other forum that relate to the purchase or other acquisition of Katapult securities between June 15, 2021 and August 9, 2021, both dates inclusive, or the proxy vote (and information provided in advance of the proxy vote) held at FinServ's June 7, 2021 special meeting, and are based on, arise out of, or relate to the same set of operative facts as those set forth in the Second Amended Complaint, including but not limited to (A) any statements, representations, misrepresentations, or omissions in the Proxy, or (B) Katapult's financial projections between June 15, 2021 and August 9, 2021 (both dates inclusive). The New York Plaintiffs' Released Claims do not include: (1) any claims to enforce the terms of the New York Settlement; or (2) any claims asserted in the Delaware Action (collectively, the "**Excluded Plaintiffs' Claims**").

(jj)    "**Released Plaintiffs' Persons**" means Plaintiff, all other Settlement Class Members, Plaintiffs' Lead Counsel, and any and all of their respective current and former directors, officers, employees, employers, parent entities, controlling persons, owners, members, principals, affiliates, subsidiaries, managers, partners, limited partners, general partners, stockholders, representatives, attorneys, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, agents, heirs, executors, trustees, personal representatives, estates, administrators, predecessors, successors, assigns, insurers, and reinsurers.

(kk)    "**Released Persons**" means, collectively, the Released Plaintiffs' Persons and the Released Defendants' Persons.

(ll)    "**Releases**" means the releases set forth in Paragraphs 4-5 of this Stipulation.

(mm)  "**Settlement**" means the resolution of Action on the terms and conditions set forth in this Stipulation.

(nn)  "**Settlement Administrator**" means the settlement administrator retained by Plaintiffs' Lead Counsel to provide notice to the Settlement Class and administer the Settlement.

(oo)  "**Settlement Class**" means all persons and entities that (i) purchased or otherwise acquired Katapult securities between June 15, 2021 and August 9, 2021 (both dates inclusive) and/or (ii) beneficially owned and/or held common stock of FinServ as of May 11, 2021 and were eligible to vote at FinServ's June 7, 2021 special meeting. Excluded from the Settlement Class are (i) Katapult, Orlando Zayas, Karissa Cupito, Derek Medlin, Lee Einbinder, Howard Kurz, Robert Matza, Diane B. Glossman, Aris Kekedjian, and FinServ Holdings; (ii) any person who was an officer or director of FinServ Holdings or FinServ between November 5, 2019 and June 9, 2021; (iii) any person who was an officer or director of Katapult between May 18, 2021 and August 10, 2021; (iv) the immediate family members, meaning the parents, spouse, siblings, or children, of any of the foregoing persons; (v) any trusts, estates, entities, or accounts that held FinServ or Katapult shares for the benefit of the foregoing persons or entities; and (vi) the legal representatives, heirs, successors-in-interest, successors, transferees, and assigns of the foregoing persons or entities. Also excluded from the Settlement Class is any Settlement Class Member that validly and timely requested exclusion in accordance with the requirements set by the Court (each person in the foregoing categories is an "**Excluded Person**" and, collectively, these are the "**Excluded Persons**").

(pp)  "**Settlement Class Member**" means a member of the Settlement Class.

(qq)    "**Summary Notice**" means the Summary Notice of Pendency and Proposed Settlement of Stockholder Class Action, Settlement Hearing, and Right to Appear, substantially in the form attached hereto as **Exhibit A-3**, to be published as set forth in the Preliminary Approval Order.

(rr)    "**Taxes**" means: (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the New York Settlement Fund (including any resulting from appreciation in value of the New York Settlement Shares); and (ii) the expenses and costs incurred by Plaintiffs' Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the New York Settlement Fund (including, without limitation, expenses of tax attorneys and accountants).

(ss)    "**Unknown Claims**" means (i) any Released Plaintiffs' Claims that Plaintiffs or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendants' Persons, and (ii) any Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Plaintiffs' Persons, including, without limitation, those which, if known, might have affected the decision to enter into the Settlement or to object or not to object to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, the Parties shall expressly, and by operation of the New York Judgment, each member of the Settlement Class shall be deemed to have, and shall have, expressly waived, relinquished, and released any and all provisions, rights, and benefits conferred by or under Cal. Civ. Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Parties acknowledge, and Settlement Class Members by operation of law shall be deemed to have acknowledged, that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is the intention of the Parties and Settlement Class Members (by operation of law), to completely, fully, finally, and forever extinguish any and all of the Released Claims, known or unknown, suspected or unsuspected, which now exist, heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.   The Parties acknowledge, and Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of "Released Plaintiffs' Claims" and "Released Defendants' Claims" was separately bargained for and was a material element of the Settlement and was relied upon by the Parties in entering into this Stipulation.

## II.    CLASS CERTIFICATION

2.    Solely for the purposes of the Settlement and for no other purpose, the Parties stipulate and agree to: (a) certification of the Settlement Class as an opt-out class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3); (b) appointment of Plaintiffs as Class Representatives for the Settlement Class; and (c) appointment of Plaintiffs' Lead Counsel as Class Counsel for the Settlement Class.

## III.    RELEASE OF CLAIMS

3.    The obligations incurred pursuant to this Stipulation are in consideration of: (a) the full and final disposition of the Action; and (b) the Releases provided for under this Stipulation.

4.      Pursuant to the New York Judgment, without further action by anyone, upon the Effective Date of the Settlement, Plaintiffs and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the New York Judgment shall have, dismissed with prejudice, released, waived, and forever discharged the Released Plaintiffs' Claims against the Released Defendants' Persons, and shall forever be barred and enjoined from prosecuting the Released Plaintiffs' Claims against the Released Defendants' Persons.  This Release shall not apply to any of the Excluded Plaintiffs' Claims.

5.      Pursuant to the New York Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the New York Judgment shall have, dismissed with prejudice, released, waived, and forever discharged the Released Defendants' Claims against the Released Plaintiffs' Persons, and shall forever be barred and enjoined from prosecuting the Released Defendants' Claims against the Released Plaintiffs' Persons.  This Release shall not apply to any of the Excluded Defendants' Claims.

6.      Notwithstanding Paragraphs 4-5 above, nothing in the New York Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the New York Judgment.

## IV.    SETTLEMENT CONSIDERATION

7.      In full settlement of the Released Plaintiffs' Claims, Defendants shall pay, or cause to be paid, the New York Settlement Consideration as follows:

17

(a)    <u>New York Cash Settlement Amount</u>:  Defendants shall deposit, or cause to be deposited, the New York Cash Settlement Amount into the New York Escrow Account within fifteen (15) business days of the later of: (i) the Court's entry of the Preliminary Approval Order; or (ii) Plaintiffs' Lead Counsel having provided Defendants' Counsel all information necessary to transfer the New York Cash Settlement Amount into the New York Escrow Account.  Within five (5) business days after the date of full execution of this Stipulation, Plaintiffs' Lead Counsel shall provide Defendants' Counsel, in writing, all information necessary to transfer the New York Cash Settlement Amount into the New York Escrow Account, including (i) a completed Form W-9; (ii) a tax identification number for the New York Escrow Account; (iii) a completed wire transfer, ACH transfer, or similar anti-fraud payment request form signed by an authorized representative of the New York Escrow Account; and (iv) all required wire funding instructions and information, including payee name, telephone, and email contact information and a physical address for the escrow agent for the New York Escrow Account (the "**New York Escrow Agent**").

(b)    <u>Additional Component of New York Settlement Consideration</u>:  Defendants shall provide additional consideration of $725,000, in common stock and/or cash, as follows:

i.    The number of New York Settlement Shares shall be calculated by dividing $725,000 by the volume-weighted average per share price ("**VWAP**") of Katapult common stock for the ten (10) consecutive trading days immediately preceding the date of the New York Settlement Hearing (the "**New York Settlement Hearing VWAP**").  In the event that the quotient described in the preceding sentence yields a fractional number of shares, the number of shares issued will be rounded up to nearest whole share if that fraction is equal to, or

greater than, one half of one share, and otherwise rounded down to the nearest whole share.

    ii.    Within ten (10) business days following the later of: (a) the date of entry of the New York Judgment; or (b) the date Defendants' Counsel receives written instruction from Plaintiffs' Lead Counsel identifying the New York Brokerage Account and all necessary information for transferring the New York Settlement Shares to the New York Brokerage Account, Katapult shall deliver the New York Settlement Shares to the New York Brokerage Account in accordance with written instructions from Plaintiffs' Lead Counsel; *provided, however*, that if the number of shares as calculated above exceeds 43,839, then Katapult shall have twelve (12) months from the New York Settlement Hearing to deliver the number of shares above 43,839 (the "**New York Excess Settlement Shares**") to the New York Brokerage Account in two equal installments, with the first installment to be delivered within six (6) months of the New York Settlement Hearing and the second installment to be delivered within twelve (12) months of the New York Settlement Hearing.

    iii.    In the event that (i) the calculation for the Delaware Settlement Shares results in a number below 167,797 (such difference being the "**Delaware Unused Shares**"); (ii) the calculation for the New York Settlement Shares results in a number exceeding 43,839; (iii) the number of the New York Excess Settlement Shares is greater than the number of the Delaware Unused Shares; and (iv) the Delaware Judgment is entered before the New York Judgment, then the Delaware Unused Shares shall be delivered to the New York Brokerage Account along with

the first 43,839 New York Settlement Shares, and the number of New York Excess Settlement Shares shall be reduced by the number of the Delaware Unused Shares. In the event that (i) the calculation for the Delaware Settlement Shares results in a number below 167,797; (ii) the calculation for the New York Settlement Shares results in a number exceeding 43,839; (iii) the number of the New York Excess Settlement Shares is less than or equal to the number of the Delaware Unused Shares; and (iv) the Delaware Judgment is entered before the New York Judgment, then the portion of the Delaware Unused Shares that is equal to the number of the New York Excess Settlement Shares shall be delivered to the New York Brokerage Account along with the first 43,839 New York Settlement Shares, and the number of New York Excess Settlement Shares shall be reduced to zero. Any Delaware Unused Settlement Shares to be delivered to the New York Brokerage Account shall be treated as "**New York Settlement Shares**" for purposes of this Stipulation.

iv.     In lieu of delivering the New York Excess Settlement Shares to the New York Brokerage Account, Katapult may pay the full value of the New York Excess Settlement Shares in cash, calculated by multiplying the number of New York Excess Settlement Shares by the New York Settlement Hearing VWAP, with such cash amount paid into the New York Escrow Account in two equal installments, with the first installment to be paid within six (6) months of the New York Settlement Hearing, and the second installment to be paid within twelve (12) months of the New York Settlement Hearing.

8.     <u>Issuance and Delivery of New York Settlement Shares</u>. The following terms and conditions shall apply to the issuance and delivery of the New York Settlement Shares:

      (a)     All New York Settlement Shares, including any New York Excess Settlement Shares or any Delaware Unused Settlement Shares to be delivered to the New York Brokerage Account, shall be duly and validly issued in accordance with all applicable federal or state securities laws, rules, or regulations, fully paid, nonassessable, approved for listing on the Nasdaq Global Select Market ("**NASDAQ**") (or any other stock exchange or market on which Katapult's common stock is then listed or quoted), and available for resale at the time of delivery to the New York Brokerage Account, and free from all liens and encumbrances, and shall be either registered under the Securities Act of 1933 (the "**Securities Act**") or exempt from registration under Section 3(a)(10) of the Securities Act ("**Section 3(a)(10)**"); *provided, however*, that should Katapult choose to register the New York Settlement Shares, the registration of the New York Settlement Shares shall not extend the deadline by which the New York Settlement Shares must be issued and delivered as stated under Paragraph 7(b) above.  Katapult shall be responsible for the payment of all costs associated with the issuance of the New York Settlement Shares and the transfer of the New York Settlement Shares to the New York Brokerage Account, including any costs of its transfer agent related to the issuance of the New York Settlement Shares and any costs associated with listing the Settlement Shares on NASDAQ (or any other stock exchange or market on which Katapult's common stock is then listed or quoted).  All costs associated with distributing any New York Settlement Shares to eligible Settlement Class Members and/or DTC participants for the benefit of eligible Settlement Class Members (the "**DTC Participants**"), including any costs incurred by Katapult's transfer agent, shall constitute Notice and Administration Costs.

      (b)     The Parties and their counsel will take all steps reasonably necessary to ensure that each of the following conditions will be satisfied: (i) Settlement Class Members shall be given adequate notice of the New York Settlement Hearing in a timely manner; (ii) the New

York Settlement Hearing shall be open to all Settlement Class Members; (iii) there shall be no improper impediments to the appearance by any Settlement Class Member at the New York Settlement Hearing; (iv) the Court shall be advised before the New York Settlement Hearing that Katapult will rely on the Section 3(a)(10) exemption based on the Court's approval of the issuance of the New York Settlement Shares as part of the consideration provided in exchange for the settlement and release of the Released Plaintiffs' Claims against the Released Defendants' Persons; (v) the New York Settlement Hearing shall include consideration of the fairness of the terms and conditions of the issuance of the New York Settlement Shares as part of the consideration provided in exchange for the settlement and release of the Released Plaintiffs' Claims against the Released Defendants' Persons; and (vi) the order to be entered by the Court shall approve the procedural and substantive fairness to Settlement Class Members of the terms and conditions of the issuance of the New York Settlement Shares as part of the consideration provided in exchange for the settlement and release of the Released Plaintiffs' Claims against the Released Defendants' Persons.

(c)     If the New York Settlement Shares are to be issued pursuant to the exemption from registration under Section 3(a)(10), Katapult must confirm to Plaintiffs' Lead Counsel that Katapult has obtained the written opinion of counsel substantially as described below (but only if and when such opinion of counsel is required by the transfer agent, the stock exchange, or DTC in connection with the issuance and listing of the New York Settlement Shares), and at no cost to the Settlement Class, the New York Settlement Fund, or Plaintiffs' Counsel; such written opinion of counsel to be substantially to the effect that issuance and delivery of the New York Settlement Shares into the New York Brokerage Account is exempt from registration under the Securities Act under Section 3(a)(10) of that Act and such New York Settlement Shares are not

"restricted securities" as defined in Rule 144(a)(3) under that Act and are transferable without registration under that Act by any holder which is not an affiliate (as defined in Rule 144(a)(1) under that Act) of Katapult and has not been an affiliate within 90 days of the date of such transfer.

(d)    From the date of this Stipulation through the date of issuance and delivery of the New York Settlement Shares to the New York Brokerage Account, no capital contributions or capital calls shall be required from holders of Katapult common stock or the Settlement Class.

(e)    The New York Settlement Shares shall be issued by Katapult only in certificate-less (book entry) form.  Katapult shall not issue or otherwise provide any physical certificates for any of the New York Settlement Shares.

(f)    Upon issuance and delivery of the New York Settlement Shares into the New York Brokerage Account, Plaintiffs' Lead Counsel shall have the option, in their sole discretion, to sell all or any portion of the New York Settlement Shares, including any shares awarded to Plaintiffs' Counsel for attorneys' fees, provided any such sale is conducted in a commercially reasonable manner, and provided further that any shares sold for the purposes of attorneys' fees shall not exceed one-third of the New York Settlement Shares.  The net cash proceeds from any sale of the New York Class Settlement Shares will be deposited in the New York Escrow Account pending distribution to eligible Settlement Class Members and/or DTC Participants.  Plaintiffs and the other Settlement Class Members release any and all claims against the Released Defendants' Persons that arise out of, relate to, or are based upon the issuance, transfer, or disposition of the New York Settlement Shares made in accordance with this Stipulation or distributions or sales of the New York Settlement Shares by Plaintiffs' Lead Counsel and the Settlement Administrator, or any of their agents, and shall forever be barred and enjoined from prosecuting any and all such claims against any of the Released Defendants' Persons;

*provided, however*, that the foregoing shall not alter Katapult's obligations under this Stipulation, including with respect to the issuance or delivery of the New York Settlement Shares to the New York Brokerage Account or the payment of costs associated therewith as provided herein.

(g)    Any New York Class Settlement Shares that are not to be sold by Plaintiffs' Lead Counsel shall be transferred from the New York Brokerage Account to Katapult's transfer agent for the benefit of the Settlement Class pending distribution to eligible Settlement Class Members and/or DTC Participants (for the benefit of eligible Settlement Class Members). Any such New York Class Settlement Shares shall be transferred to Katapult's transfer agent in accordance with written instructions provided by Defendants' Counsel to Plaintiffs' Lead Counsel and the Settlement Administrator.

(h)    During the period between the delivery of the New York Settlement Shares to the New York Brokerage Account and the distribution thereof to eligible Settlement Class Members and/or DTC Participants, the New York Settlement Shares shall be treated identically to the existing Katapult common stock, and shall receive all benefits that accrue to the existing Katapult common stock (including, but not limited to, cash dividends and other distributions to shareholders).

(i)    In the event of a CIC prior to the issuance and delivery of the New York Settlement Shares to the New York Brokerage Account: (i) if Katapult's successor entity (the "**Successor Entity**") is a private company, then in lieu of delivering the New York Settlement Shares to the New York Brokerage Account, Katapult shall deposit, or cause to be deposited, $725,000 in cash into the New York Escrow Account within thirty (30) business days after the closing of the CIC Transaction; and (ii) if the Successor Entity is a publicly traded company, then Katapult shall deliver, or cause to be delivered, $725,000 worth of the stock of the Successor Entity

("**Successor Entity New York Settlement Shares**"), calculated by dividing $725,000 by the VWAP of the Successor Entity common stock for the ten (10) consecutive trading days immediately preceding the date of the New York Settlement Hearing, to the New York Brokerage Account within ten (10) business days following the later of: (a) the date of entry of the New York Judgment; or (b) the date Defendants' Counsel receives written instruction from Plaintiffs' Lead Counsel identifying the New York Brokerage Account and all necessary information for transferring the Successor Entity New York Settlement Shares to the New York Brokerage Account.

## V.    USE OF SETTLEMENT FUND

9.    The New York Settlement Fund shall be used to pay:  (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any attorneys' fees and/or Litigation Expenses awarded by the Court from the New York Settlement Fund; and (iv) any other costs or fees approved by the Court. The balance remaining in the New York Settlement Fund (including, if applicable, the net cash proceeds from the sale of any New York Class Settlement Shares deposited into the New York Escrow Account in accordance with the terms of this Stipulation), that is, the Net Settlement Fund, shall be distributed to eligible Settlement Class Members or DTC Participants (for the benefit of eligible Settlement Class Members) pursuant to the proposed Plan of Allocation set forth in the Notice or such other plan of allocation approved by the Court.

10.    Except as provided herein or pursuant to orders of the Court, the New York Net Settlement Fund shall remain in the New York Escrow Account prior to the Effective Date.  All funds held by the New York Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court.  The New York Escrow Agent shall invest any funds in the New York Escrow Account exclusively in United

States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC.  In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the New York Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States. Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held by the New York Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States.

11.    The Parties agree that the New York Settlement Fund is intended to be a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1 and that Plaintiffs' Lead Counsel, as administrators of the New York Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the New York Settlement Fund.  Plaintiffs' Lead Counsel shall also be responsible for causing payment to be made from the New York Settlement Fund of any Taxes owed with respect to the Settlement Fund. The Released Defendants' Persons shall not have any liability or responsibility for any such Taxes. Upon written request, Defendants will provide to Plaintiffs' Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).  Plaintiffs' Lead Counsel, as administrators of the New York Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j),

to cause the qualified settlement fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

12.     All Taxes shall be paid out of the New York Settlement Fund, and shall be timely paid, or caused to be paid, by Plaintiffs' Lead Counsel and without further order of the Court. Any tax returns prepared for the New York Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the New York Settlement Fund shall be paid out of the New York Settlement Fund as provided herein.

13.     The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, Defendants, the other Released Defendants' Persons, Defendants' insurance carriers, and any other person or entity who or which paid any portion of the New York Settlement Consideration shall not have any right to the return of the New York Settlement Fund or any portion thereof for any reason whatsoever, including the inability to locate Settlement Class Members or the failure of Settlement Class Members or DTC Participants to deposit settlement funds distributed by the Settlement Administrator.

14.     Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Plaintiffs' Lead Counsel may pay from the New York Settlement Fund, without further approval from Defendants or further order of the Court, all Notice and Administration Costs actually incurred and paid or payable.  Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the Notice, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Settlement Administrator in connection

with providing notice and administering the Settlement, and the fees, if any, of the New York Escrow Agent. In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to Defendants, any of the other Released Defendants' Persons, or any other person or entity who or which paid any portion of the New York Settlement Consideration.

## VI.    ATTORNEYS' FEES AND LITIGATION EXPENSES

15.    In connection with the Settlement, Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees and payment of Litigation Expenses (the "**Fee and Expense Award**") to be paid solely from (and out of) the New York Settlement Fund. Plaintiffs' Counsel's application for a Fee and Expense Award is not the subject of any agreement among the Parties other than what is set forth in this Stipulation.

16.    Any Fee and Expense Award shall be paid proportionally from the New York Cash Settlement Fund and the New York Settlement Shares (or the net proceeds from the sale of the New York Settlement Shares). Any Fee and Expense Award shall be paid to Plaintiffs' Lead Counsel either (a) if paid from (and out of) the New York Cash Settlement Fund, immediately upon the Fee and Expense Award; or (b) if paid from (and out of) the New York Settlement Shares, immediately upon the Fee and Expense Award or, if the New York Settlement Shares have not yet been delivered to the New York Brokerage Account at the time of the Fee and Expense Award, immediately upon the delivery of the New York Settlement Shares to the New York Brokerage Account in accordance with the terms of this Stipulation, notwithstanding any appeals or potential for appeal from the Fee and Expense Award, timely filed objections to the Fee and Expense Award, or collateral attack on the Settlement or any part of the Settlement.

17.    The payment of the Fee and Expense Award is subject to Plaintiffs' Counsel's obligation to make appropriate refunds or repayments to the New York Settlement Fund, if the

28

Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed and such order reducing or reversing the award has become Final. Plaintiffs' Counsel shall make the appropriate refund or repayment in full no later than twenty-five (25) business days after: (a) receiving from Defendants' Counsel notice of the termination of the Settlement; or (b) any order reducing or reversing the Fee and Expense Award has become Final. With respect to any portion of Plaintiffs' Counsel's Fee and Expense Award paid in New York Settlement Shares, any repayment shall be net of the cost of liquidating or selling such shares. In the event the New York Settlement Shares are liquidated, in lieu of returning the portion of the New York Settlement Shares paid to Plaintiffs' Counsel as part of the Fee and Expense Award, Plaintiffs' Counsel may repay the net cash proceeds from the sale of any such New York Settlement Shares.

18.     Any Fee and Expense Award is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein. Neither Plaintiffs nor Plaintiffs' Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to any Fee and Expense Award.

19.     Plaintiffs' Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in their discretion, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action. The Released Defendants' Persons shall have no responsibility for or liability whatsoever with respect to the allocation of any Fee and Expense Award amongst Plaintiffs' Counsel.

## VII.    SUBMISSION OF THE SETTLEMENT TO THE COURT FOR APPROVAL

20.     As soon as practicable after execution of this Stipulation, Plaintiffs shall apply to the Court for entry of the Preliminary Approval Order, substantially in the form attached hereto as

**Exhibit A**, providing for, among other things: (a) the dissemination by mail (or email) of the Notice; (b) the publication of the Summary Notice; and (c) the scheduling of the New York Settlement Hearing to consider: (1) final approval of the proposed Settlement; (2) the request that the New York Judgment, substantially in the form attached hereto as **Exhibit B**, be entered by the Court; (3) Plaintiffs' Counsel's application for a Fee and Expense Award and approval of the proposed Plan of Allocation, and (4) any objections to any of the foregoing.  The Parties shall take all reasonable and appropriate steps to seek and obtain entry of the Preliminary Approval Order. The date and time of the New York Settlement Hearing set by the Court in Preliminary Approval Order may be changed by the Court without further written notice to the Settlement Class.

21.    The Parties shall request at the New York Settlement Hearing that the Court approve the Settlement and enter the New York Judgment, substantially in the form attached hereto as **Exhibit B**.  The Parties shall take all reasonable and appropriate steps to obtain entry of the New York Judgment.

**VIII.   SETTLEMENT ADMINISTRATION**

22.    Plaintiffs shall retain a Settlement Administrator to provide notice of the Settlement and for the disbursement of the New York Net Settlement Fund to eligible Settlement Class Members and/or DTC Participants (for the benefit of eligible Settlement Class Members). Defendants and the other Released Defendants' Persons shall not have any involvement in or any responsibility, authority, or liability whatsoever for the selection of the Settlement Administrator.

23.    Defendants shall cooperate with Plaintiff in providing notice of the Settlement and administering the Settlement, including, but not limited to, providing the information required under Paragraphs 24 and 25 below.

24.    For purposes of providing notice of the Settlement to potential Settlement Class Members, within ten (10) business days after the Court's entry of the Preliminary Approval Order,

Defendants shall cause to be provided to Plaintiffs' Lead Counsel in an electronically searchable form, such as Microsoft Excel, the stockholder register from FinServ's and Katapult's transfer agent(s) containing the names, mailing addresses and, if available, email addresses for registered holders of FinServ Class A common stock as of May 11, 2021 who were eligible to vote at FinServ's June 7, 2021 special meeting.

25.     For purposes of distributing the New York Net Settlement Fund to eligible Settlement Class Members, no later than five (5) business days prior to the New York Settlement Hearing, Defendants, at no cost to the New York Settlement Fund, Plaintiffs' Counsel, or the Settlement Administrator, shall cause to be provided to the Settlement Administrator or Plaintiffs' Lead Counsel in an electronically searchable form, such as Microsoft Excel, the following information:

(a)     for each of the registered holders of FinServ common stock as of the closing of the de-SPAC as of as of May 11, 2021 and who were eligible to vote at FinServ's June 7, 2021 special meeting, the number of such shares that they held that were eligible to vote;

(b)     a list of the Excluded Persons and, to the extent available, a list of the Redeeming Stockholders, and for each of the Excluded Persons and the Redeeming Stockholders: (i) an indication of whether the Excluded Person or the Redeeming Stockholder was, as of the closing of the de-SPAC Transaction on June 9, 2021, either (x) a record holder of FinServ Class A common stock or (y) a beneficial holder of FinServ Class A common stock whose shares were held via a financial institution on behalf of the Excluded Person or the Redeeming Stockholder; (ii) the number of shares of FinServ Class A common stock owned by the Excluded Person or the Redeeming Stockholder as of the closing of the de-SPAC Transaction on June 9, 2021 ("**Excluded Shares**"); and (iii) for each of the Excluded Stockholders and the Redeeming Stockholders that is

a beneficial holder of FinServ Class A common stock, the name and "DTC Number" of the financial institution where their Excluded Shares were held and the Excluded Stockholder's or the Redeeming Stockholder's account number at such financial institution.

26.    At the request of Plaintiffs' Lead Counsel, Defendants will use reasonable best efforts to provide such additional information or documentation as may be required to distribute the New York Net Settlement Fund to eligible Settlement Class Members and not to Excluded Persons or Redeeming Stockholders.

27.    Excluded Stockholders and Redeeming Stockholders shall not have any right to receive any part of the New York Settlement Fund for his, her, or its own account(s) (*i.e.*, accounts in which he, she, or it holds a proprietary interest, but not including accounts managed on behalf of others), or any additional amount based on any claim relating to the fact that Settlement proceeds are being received by any other stockholder, in each case under any theory, including but not limited to contract, application of statutory or judicial law, or equity.

28.    The New York Net Settlement Fund shall be distributed to eligible Settlement Class Members and/or DTC Participants (for the benefit of eligible Settlement Class Members) in accordance with the proposed Plan of Allocation set forth in the Notice or such other plan of allocation as may be approved by the Court.  The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation, and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.  Plaintiffs and Plaintiffs' Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action.  Defendants and the other Released Defendants' Persons shall not object

in any way to the Plan of Allocation or any other plan of allocation in this Action and shall not have any involvement with the application of the Court-approved plan of allocation.

29.    The New York Net Settlement Fund shall be distributed to eligible Class Members only after the Effective Date of the Settlement and after: (i) all Notice and Administration Costs, all Taxes, and any Fee and Expense Award have been paid from the New York Settlement Fund or reserved; and (ii) the Court has entered an order authorizing the specific distribution of the New York Net Settlement Fund (the "**Class Distribution Order**").    At such time that Plaintiffs' Lead Counsel, in their sole discretion, deem it appropriate to move forward with the distribution of the New York Net Settlement Fund to the Settlement Class, Plaintiffs' Lead Counsel shall apply to the Court, on notice to Defendants' Counsel, for the Class Distribution Order.

30.    Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members.    Plaintiffs, Defendants, and the other Released Defendants' Persons and their respective counsel, shall have no liability whatsoever for the investment or distribution of the New York Settlement Fund or the New York Net Settlement Fund; the determination, administration, or calculation of any payment from the New York Net Settlement Fund; the nonperformance of the Settlement Administrator or a nominee holding shares of FinServ or Katapult common stock; the payment or withholding of Taxes (including interest and penalties) owed by the New York Settlement Fund; or any losses incurred in connection with any of the foregoing.

31.    All proceedings with respect to the administration of the Settlement and distribution pursuant to the Class Distribution Order shall be subject to the exclusive jurisdiction of the Court.

IX.    **CONDITIONS OF SETTLEMENT**

32.    The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events, which the Parties shall use their best efforts to achieve:

(a)     the Court has entered the Preliminary Approval Order, substantially in the form attached hereto as **Exhibit A**;

(b)     the New York Cash Settlement Amount (including any additional cash consideration paid in lieu of Settlement Shares) has been timely paid into the Escrow Account as required by the terms of this Stipulation;

(c)     The New York Settlement Shares have been timely issued and delivered to the New York Brokerage Account as required by the terms of this Stipulation;

(d)     Defendants have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation;

(e)     Plaintiffs have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation;

(f)     the Court has approved the Settlement as described herein, following notice to the Settlement Class and a hearing, and entered the New York Judgment, substantially in the form attached hereto as **Exhibit B**; and

(g)     the New York Judgment has become Final.

33.     Upon the occurrence of the Effective Date, any and all remaining interest or right of Defendants or their insurance carriers in or to the New York Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

## X.     TERMINATION OF SETTLEMENT; EFFECT OF TERMINATION

34.     Plaintiffs and Defendants (provided Defendants unanimously agree amongst themselves) shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("**Termination Notice**") to the other Parties within thirty (30) calendar days of: (a) the Court's final refusal to enter the Preliminary Approval Order in any material respect and such final refusal decision has become Final; (b) the Court's final refusal to

approve the Settlement or any material part thereof and such final refusal decision has become Final; (c) the Court's final refusal to enter the New York Judgment in any material respect as to the Settlement and such final refusal decision has become Final; or (d) the date upon which an order modifying or reversing the New York Judgment in any material respect becomes Final.  In addition to the foregoing, Plaintiffs shall have the unilateral right to terminate the Settlement and this Stipulation, by providing written notice of his election to do so to Defendants within thirty (30) calendar days of any failure by Defendants to timely deliver any portion of the New York Settlement Consideration.  However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application by Plaintiffs' Counsel for attorneys' fees and Litigation Expenses or with respect to any plan of allocation, shall not be considered material to the Settlement, shall not affect the finality of the Judgment, and shall not be grounds for termination of the Settlement. In addition to the foregoing, Defendants shall also have the right to terminate the Settlement in the event the Opt-Out Threshold (as defined in a Confidential Supplemental Agreement between the Parties) has been reached.

35.     If (i) Plaintiffs exercise their right to terminate the Settlement as provided in this Stipulation; or (ii) Defendants exercise their right to terminate the Settlement as provided in this Stipulation, then:

(a)     The Settlement and the relevant portions of this Stipulation shall be canceled and terminated;

(b)     Plaintiffs and Defendants shall revert to their respective positions in the Action as of immediately prior to the execution of the Settlement Term Sheet on May 20, 2024;

(c)     The terms and provisions of this Stipulation, with the exception of this Paragraph 35 and Paragraphs 14, 16, 36, and 58 of this Stipulation, shall have no further force and

effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*; and

(d)     Within twenty-five (25) business days after joint written notification of termination is sent by Defendants' Counsel and Plaintiffs' Lead Counsel to the New York Escrow Agent, (i) the New York Cash Settlement Fund, including, if applicable, the net cash proceeds from the sale of any New York Class Settlement Shares (including accrued interest thereon and change in value as a result of the investment of the cash held in the New York Escrow Account), less any Notice and Administration Costs actually incurred, paid, or payable and less any Taxes paid, due, or owing, shall be refunded by the New York Escrow Agent to Defendants (or such other persons or entities as Defendants may direct); and (ii) if applicable, any New York Class Settlement Shares shall be returned to Katapult (or the cash value thereof as determined by the VWAP formula described above); and

(e)     Any Fee and Expense Award paid to Plaintiffs' Lead Counsel shall be refunded in accordance with Paragraph 17 above.  Such payments may be refunded in cash at Plaintiffs' Lead Counsel's election.

## XI.    NO ADMISSION OF WRONGDOING

36.     Neither the Settlement Term Sheet, this Stipulation (whether or not consummated), including the Exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Settlement Term Sheet or this Stipulation, nor any proceedings taken pursuant to or in connection with the Settlement Term Sheet or this Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)     shall be offered against any of the Released Defendants' Persons as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Defendants' Persons with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Defendants' Persons or in any way referred to for any other reason as against any of the Released Defendants' Persons, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)     shall be offered against any of the Released Plaintiffs' Persons, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Plaintiffs' Persons that any of their claims are without merit, that any of the Released Defendants' Persons had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the New York Settlement Consideration or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Released Plaintiffs' Persons, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)     shall be construed against any of the Released Persons as an admission, concession, or presumption that the consideration to be given hereunder represents the consideration which could be or would have been achieved after trial; *provided, however*, that if this Stipulation is approved by the Court, the Parties and the Released Persons and their respective

counsel may refer to it to effectuate the protections from liability granted under this Stipulation or otherwise to enforce the terms of the Settlement.

## XII.   MISCELLANEOUS PROVISIONS

37.    All of the Exhibits attached hereto are incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, if there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any Exhibit attached hereto, the terms of the Stipulation shall prevail.

38.    Each of the Defendants warrants that, as to the payments made or to be made on behalf of him, her, or it, at the time of entering into this Stipulation and at the time of such payment he, she, or it, or to the best of his, her, or its knowledge, any persons or entities contributing to the payment of the New York Settlement Consideration were not insolvent, nor will the payment required to be made by or on behalf of them render them insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.  This representation is made by each of the Defendants and not by their counsel.

39.    In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the New York Cash Settlement Fund or issuance or delivery of any New York Settlement Shares or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion of the New York Cash Settlement Fund and/or the New York Settlement Shares is required to be returned, and such amount is not promptly deposited into the New York Cash Settlement Fund by others and/or the equivalent value of such New York Settlement Shares is not replaced by others, then, at the election of Plaintiffs, Plaintiffs and Defendants shall jointly move the Court to vacate and set aside the Releases given and the New York Judgment entered in favor of Defendants and the other Released Persons pursuant to this Stipulation, in which event the Releases and the New York

Judgment shall be null and void, and the Parties shall be restored to their respective positions in the Action as provided in Paragraph 35 above and any cash amounts in the New York Escrow Account and, if applicable, any previously issued New York Settlement Shares (less any Taxes paid, due, or owing with respect to the New York Settlement Fund, less any Notice and Administration Costs actually incurred, paid, or payable, and less the cost of liquidating or selling any New York Settlement Shares) shall be returned as provided in Paragraph 35 above.

40.     The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Plaintiffs and any other Settlement Class Members against Defendants with respect to the Released Plaintiffs' Claims.  Accordingly, Plaintiffs and their counsel and Defendants and their counsel agree not to assert in any forum that this Action was brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis.  The Parties agree that New York Settlement Consideration and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

41.     While retaining their right to deny that the claims asserted in the Action were meritorious, Defendants and their counsel, in any statement made to any media representative (whether or not for attribution) will not assert that the Action was commenced or prosecuted in bad faith, nor will they deny that the Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel.  In all events, Plaintiffs and his counsel and Defendants and their counsel shall not make any accusations of wrongful or actionable conduct by any Party concerning the prosecution, defense, and resolution of the Action,

and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

42.     The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived except by a writing signed on behalf of each of the Parties (or their successors-in-interest).

43.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

44.     If any deadline set forth in this Stipulation or the Exhibits thereto falls on a Saturday, Sunday, or legal holiday, that deadline will be continued to the next business day.

45.     Without further Order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

46.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Plaintiffs' Counsel, and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the New York Net Settlement Fund to eligible Settlement Class Members.

47.     The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

48.     This Stipulation and its Exhibits constitute the entire agreement among the Parties concerning the Settlement and this Stipulation and its Exhibits.  Each Party acknowledges that no other agreements, representations, warranties, or inducements have been made by any Party

concerning this Stipulation or its Exhibits other than those contained and memorialized in such documents.

49.    This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

50.    This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, and the Released Persons, and any corporation, partnership, or other entity into or with which any Party may merge, consolidate, or reorganize.  The Parties acknowledge and agree, for the avoidance of doubt, that the Released Defendants' Persons and the Released Plaintiffs' Persons are intended beneficiaries of this Stipulation and are entitled to enforce the Releases contemplated by the Settlement.

51.    The construction, interpretation, operation, effect, and validity of this Stipulation and all documents necessary to effectuate it shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

52.    Any action arising under or to enforce this Stipulation or any portion thereof shall be commenced and maintained only in the Court.

53.    This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and that all Parties have contributed substantially and materially to the preparation of this Stipulation.

54.     All counsel and all other persons executing this Stipulation and any of the Exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

55.     Plaintiffs' Lead Counsel and Defendants' Counsel agree to cooperate fully with one another to obtain (and, if necessary, defend on appeal) all necessary approvals of the Court required of this Stipulation (including, but not limited to, using their best efforts to resolve any objections raised to the Settlement), and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

56.     If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or email transmission, with confirmation of receipt.  Notice shall be provided as follows:

| If to Plaintiffs or Plaintiffs' Lead Counsel: | Wolf Haldenstein Adler Freeman & Herz LLP<br>Attn:  Matthew M. Guiney, Esq.<br>270 Madison Avenue<br>New York, NY 10016<br>(212) 545-4600<br>guiney@whafh.com |
|---|---|
| If to Defendants: | Cooley LLP<br>Attn: Aric H. Wu, Esq.<br>55 Hudson Yards<br>New York, NY 10001<br>(212) 479-6000<br>ahwu@cooley.com |

57.     Except as otherwise provided herein, each Party shall bear its own costs.

58.     Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed, and proceedings in connection with the Stipulation confidential.

59.     All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

60.     No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

**IN WITNESS WHEREOF,** the Parties have caused this Stipulation to be executed, by their duly authorized attorneys, as of July 3, 2024.

[Signatures Beginning on Next Page]

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

 */s/ Matthew M. Guiney*
Matthew M. Guiney
270 Madison Avenue
New York, NY 10016
(212) 545-4600

*Lead Counsel for Plaintiffs
and the Settlement Class*

Brian Schall (Pro Hac Vice forthcoming)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Plaintiffs*

**COOLEY LLP**

*/s/ Aric H. Wu*
Aric H. Wu
Brian M. French
55 Hudson Yards
New York, NY  10001
(212) 479-6000

Koji Fukumura
10265 Science Center Drive
San Diego, CA 92121
(858) 550-6000

*Attorneys for Defendants*