**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GINA McINTOSH, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>KATAPULT HOLDINGS, INC., LEE EINBINDER, HOWARD KURZ, ORLANDO ZAYAS, KARISSA CUPITO and DEREK MEDLIN<br>        Defendants. | Case No. 1:21-cv-07251-KHP |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION
AND CERTIFICATION OF CLASS**

> WOLF HALDENSTEIN ADLER
> FREEMAN & HERZ LLP
> Matthew M. Guiney
> Kate M. McGuire
> 270 Madison Avenue
> New York, New York 10016
> Telephone: (212) 545-4600
> Facsimile: (212) 686-0114
> guiney@whafh.com
>
> *Lead Counsel for Plaintiffs and the Class*

November 8, 2024

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

SUMMARY OF THE LITIGATION AND SETTLEMENT............................................................ 3

    A.   Initial Complaint and Lead Appointment Process ..................................................... 4

    B.   Lead Counsel's Investigation and the Amended Complaint....................................... 4

    C.   The Court Denies in Part the Motion to Dismiss the Amended Complaint and Denied Defendants' Motion for Reconsideration ...................................................... 5

    D.   Plaintiffs Initiated Discovery Of Defendants............................................................ 5

    E.   Mediation Efforts and Settlement Negotiations........................................................ 6

    F.   The Court Grants Preliminary Approval.................................................................... 7

    G.   The Notice Procedure and Response of the Class ..................................................... 7

ARGUMENT .......................................................................................................................... 8

I.    STANDARDS FOR FINAL APPROVAL OF THE SETTLEMENT ............................... 8

II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ........................... 10

    A.   The Proposed Settlement is Procedurally Fair........................................................ 10

        1.   Rule 23(e)(2)(A) – Plaintiffs Have Adequately Represented the Class ........ 10

        2.   Rule 23(e)(2)(B) – the Agreement and Settlement Were Negotiated at Arm's Length ................................................................................................ 11

    B.   The Proposed Settlement is Substantively Fair ...................................................... 12

        1.   Rule 23(e)(2)(C)(i) – the Relief Provided to the Class is Superior to Continued Litigation..................................................................................... 12

            a)   The Settlement Class Faced Significant Risks in Establishing Liability.............................................................................................. 15

            b)   The Settlement Class Faced Significant Hurdles in Certifying a Class and Maintaining it Through Trial and On a Potential Appeal ......... 17

            c)   Even if the Plaintiffs Can Prove Liability, They Might Not Be Successful in Proving Damages...................................................... 18

            d)   The Recovery is Reasonable in Light of the Best Possible Recovery and the Attendant Risks of Litigation ............................................... 19

            e)   While Defendants May Be Able to Sustain a Larger Judgment, that Factor Alone Does Not Undercut the Reasonableness of the Settlement ............................................................................................ 22

        2.   Rule 23(e)(2)(C)(ii) – the Claims Process Is Fair and Rational ................... 22

3.    Rule 23(2)(C)(iii) – the Proposed Award of Attorneys' Fees Supports Final Approval ................................................................................................................ 23

4.    Rule 23(e)(C)(iv) – Any Agreements Required to Be Identified Under Rule 23(e)(3) ................................................................................................................ 24

5.    Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to One Another ...................................................................................................... 25

III.    NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS .................... 25

CONCLUSION ................................................................................................................... 26

## TABLE OF AUTHORITIES

**CASES**                                                                                                               **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)..........................13, 20, 21

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
  No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ............................................................15

*In re AOL Time Warner, Inc. Sec. and ERISA Litig.,*
  No. 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ......................................19

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001)....................................................................................................10, 15

*Christine Asia Co. v. Yun Ma*,
  No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..........................13, 15

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)............................................................................................18

*In re Citigroup Inc. Sec. Litig.*,
  No. 09 Civ. 7359 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014)......................................15

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)................................................................................................. *passim*

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13md2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 25, 2016)........................................23

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005)......................................................................................................................18

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)......................................................................................................................25

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05-cv-10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)......................................23

*Fleisher v. Phoenix Life Insurance Co.*,
  No. 11-cv-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ..........................................14, 19

*Flores v. CGI Inc.*,
  No. 22-CV-350 (KHP), 2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ............................8, 9, 24

*Gay v. Tri-Wire Eng'g Solutions, Inc.,*

No. 12-cv-2231 (KAM)(JO), 2014 WL 28640 (E.D.N.Y. Jan. 2, 2014) ...................................21

*In re Global Crossing Sec. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................................12

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................................................13, 19

*Guevoura Fund Ltd. v. Sillerman*,
No. 15-CV-07192 (CM), 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ..............................8, 24

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ....................................24

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
No. 18-CV-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022) ......................................11

*In re J.P. Morgan Stable Value Fund ERISA Litig.,*
No. 12-CV-2548 (VSB), 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ...................................24

*Lazy Oil Co. v. Witco Corp.*,
95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999)...................15

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
327 F.R.D. 483 (S.D.N.Y. 2018) .........................................................................................13, 19

*In re Luckin Coffee Inc. Sec. Litig.,*
No. 120CV01293JPCJLC, 2021 WL 11114633 (S.D.N.Y. Oct. 26, 2021) ...............................18

*In re Lloyd's Am. Trust Fund Litig.*,
96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002).....................................24

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) .............................................................................................24

*McLaughlin v. IDT Energy*,
No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627 (E.D.N.Y. July 30, 2018) .........................21

*In re Medical X-Ray Film Antitrust Litig.*,
No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ..................................................24

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................................................21

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)...............................................................................................9, 13

*In re Northern Dynasty Mins. Ltd. Sec. Litig.*,
  No. 20-CV-5917 (TAM), 2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023) ...................................10

*In re PaineWebber Ltd. Partnerships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ....................................................14

*In re Par Pharm. Sec. Litig*,
  No. 06-3226, 2013 WL 3930091 (D.N.J. July 29, 2013) ...........................................................16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litigation*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................................21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  No. 05-MD-1720 (MKB)(JO), 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ...................10, 21

*Pearlstein v. BlackBerry Ltd.*,
  No. 13CIV7060CMKHP, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022).........................8, 11, 12

*In re Platinum & Palladium Commodities Litig.*,
  No. 10cv3617, 2015 WL 4560206 (S.D.N.Y. July 7, 2015) ......................................................24

*Pro v. Hertz Equip. Rental Corp.*,
  No. CIV.A. 06-3830(DMC), 2013 WL 3167736 (D.N.J. June 20, 2013) ..................................16

*Schuler v. Medicines Co.*,
  No. 14-1149, 2016 WL 3457218 (D.N.J. June 24, 2016)..........................................................15

*Schutter v. Tarena Int'l, Inc.*,
  No. 21-cv-3502, 2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024) ..................................................10

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11-cv-8331 (CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 21, 2014)............................13

*In re Suprema Specialties, Inc. Sec. Litig.*,
  No. 02-168 (WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008) .................................................16

*Sykes v. Mel Harris & Assocs., LLC*,
  09 Civ. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ............................................21

*In re Tenaris S.A. Sec. Litig.*,
  No. 18-CV-7059(KAM)(SJB), 2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ..........................19

*Vataj v. Johnson*,
  No. 19-CV-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .....................................15

v

*In re Vitamin C Antitrust Litigation*,
　No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ..........................21

*Wallace v. Powell*,
　288 F.R.D. 347 (M.D. Pa. 2012)................................................................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
　396 F.3d 96 (2d Cir. 2005)................................................................................................13, 18

*In re WorldCom Inc. Sec. Litig.*,
　388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................................22

## STATUTES & RULES

Federal Rules of Civil Procedure
　23............................................................................................................................... *passim*
　23(c)(2) ...................................................................................................................................26
　23(c)(2)(B) .............................................................................................................................26
　23(e) ..............................................................................................................................1, 3, 10
　23(e)(1) ...............................................................................................................................4, 26
　23(e)(2) ............................................................................................................................1, 8, 9
　23(e)(2)(A)................................................................................................................................9
　23(e)(2)(B) ..................................................................................................................9, 10, 25
　23(e)(2)(C)(i) ..........................................................................................................................12
　23(e)(2)(C)(ii) .........................................................................................................................21
　23(e)(2)(C)(iii) ........................................................................................................................23
　23(e)(2)(C)(iv) ........................................................................................................................24
　23(e)(2)(D) ..............................................................................................................................24
　23(f)........................................................................................................................................17

Private Securities Litigation Reform Act of 1995 ("PSLRA"),
15 U.S.C. § 78u-4(a), *et seq*....................................................................................................16

Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78a, *et seq* .......................................3
　15 U.S.C. § 78n(a) ("Section 14(a)")........................................................................................3
　15 U.S.C. § 78t(a) ("Section 20(a)").....................................................................................3, 5

SEC Rule 10b-5 ..............................................................................................................................3, 5
SEC Rule 14a-9..................................................................................................................................3

## OTHER AUTHORITIES

4 William B. Rubenstein, Newberg on Class Actions § 12:15 (5th Ed.) (Westlaw 2018) ............23

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Matis Nayman and additional plaintiff Felipe de Castro Luna (collectively, "Plaintiffs"), on behalf of themselves and the Class, respectfully submit this memorandum in support of their motion for final approval of the proposed settlement ("Settlement"), plan of allocation, and certification of the Class as set forth in the Stipulation of Settlement dated July 3, 2024 (the "Stipulation").[1]

## INTRODUCTION

The Settlement provides a recovery of $2,500,000 in cash to the Class to resolve all claims in this Action.  The settlement consideration is comprised of: (i) a cash component of $1,775,000 (the "Cash Component"); and (ii) an additional component worth $725,000 comprised of Katapult common stock (the "Settlement Shares") and/or cash (the "Additional Component").  This is an excellent result for the Class given the risks inherent in this litigation.  The Settlement satisfies the factors delineated in Rule 23(e)(2).  The $2,500,000 recovery is well within the range of reasonableness for securities class action settlements at this stage of the litigation, especially in light of the fact that the Settlement is the product of well-respected mediator Michelle Yoshida's mediator recommendation.  Furthermore, Cornerstone reported that the median settlement in a securities class action from 2018 to 2022 had a 4.7 % recovery rate damages in cases analogous to this one, *i.e.*, where a motion to dismiss has been decided, but a class certification motion has not yet been filed.  *See* Guiney Decl., Ex. E at 14 (Laarni T. Bulan and Laura E. Simons, *Securities Class Action Settlements – 2022 Review and Analysis*, Cornerstone Research).  Here, the

---

[1] "Rule" refers to the Federal Rules of Civil Procedure.  All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation. All exhibits referenced herein are attached to the Declaration of Matthew Guiney in Support of (I) Motion for Final Approval of Settlement, Plan of Allocation and Certification of Class; And (II) Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Reimbursement of Time to Lead Plaintiff (the "Guiney Decl."), filed concurrently with this motion.

$2,500,000 Settlement comprises approximately 5.22% of the approximately $41 million in maximum damages potentially available in this case. Moreover, $41 million was Plaintiff's best-case scenario for damages. Thus, the Settlement is an excellent result. For these reasons and those discussed below, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

The Settlement of this Action was the product of hard work and diligence. By the time the Settlement was reached, Lead Counsel had, among other things, (i) conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, *inter alia*, a review and analysis of filings by Defendants Katapult Holdings Inc., ("Katapult," or the "Company") f/k/a FinServ Acquisition Corp. ("FinServ") (collectively, with individual defendants Orlando Zayas, Karissa (Long) Cupito, Derek Medlin, Lee Einbinder and Howard Kurz, "Defendants") and an earlier Katapult entity ("legacy Katapult"), with the SEC, and public reports and news articles concerning Defendants and legacy Katapult; (ii) retained a private investigator to further investigate relevant facts; (iii) drafted the initial complaint in this action and the Amended Class Action Complaint (the "Amended Complaint"); (iv) opposed Defendants' motion to dismiss the Amended Complaint; (iv) hired an economics expert to assess and analyze damages; (v) engaged in extensive negotiations leading to the Settlement including a full day mediation session and multiple back and forth negotiations with the mediator; and (vi) prepared the settlement papers for the Court. Before reaching the Settlement, Plaintiffs and Lead Counsel had a thorough understanding of the claims and defenses in the Action as well as the risks of establishing liability and damages.

2

On July 24, 2024, Magistrate Judge Katharine H. Parker preliminarily approved the Settlement pursuant to Rule 23(e)(1) and authorized notice of the Settlement to the Class. *See* ECF No. 103.

As more fully set forth by the Claims Administrator in the Declaration of Luiggy Segura Concerning: (A) Mailing of the Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Segura Decl."), notice has been given to the Class as required by the Preliminary Approval Order. *See* Segura Decl. (Ex. A to Guiney Decl.). To date, no Class Member has objected to the Settlement and none have opted out. Guiney Decl. ¶¶ 14-16. Lead Counsel will update the Court as to any objections or exclusions in Plaintiffs' reply memorandum, which is to be filed prior to the settlement hearing.

For the reasons discussed herein and in the Guiney Declaration, the Settlement is a favorable result for the Class, presumptively fair, and readily fulfills the criteria set forth in Rule 23 and applicable case law. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

## SUMMARY OF THE LITIGATION AND SETTLEMENT

Plaintiffs asserted claims on behalf of a putative class of investors pursuant to §§10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("1934 Act") and SEC Rules 10b-5 and 14a-9 promulgated thereunder against Defendants Katapult Holdings Inc., ("Katapult," or the "Company") f/k/a FinServ Acquisition Corp. ("FinServ"), Orlando Zayas, Karissa (Long) Cupito, Derek Medlin, Lee Einbinder and Howard Kurz (collectively, "Defendants").

Defendant Katapult is the product of the merger of an earlier Katapult entity ("legacy Katapult") and Finserv. Finserv was a Special Purpose Acquisition Company ("SPAC"), created with the sole purpose of buying a company to take it public. Legacy Katapult was – and Katapult is – a provider of financing for consumers with sub-optimal credit. Plaintiffs alleged that during

the period leading up to the merger, Defendants falsely offered and reiterated their belief in representations about Katapult's business model and expected performance.

Katapult's access to customers was through a "waterfall" arrangement with prime lenders, where if a prime lender rejected a borrower as too high a risk, that borrower would automatically be passed on to Katapult, who had the opportunity to offer the customer a loan on which Katapult would make profit.  Plaintiffs alleged that: 1) the Proxy Statement Prospectus that Defendants filed on May 18, 2021 in connection with the business combination between FinServ and Katapult (the "Prospectus") failed to disclose critical information about the waterfall, including that prime lenders could decide to extend credit to customers with lower credit ratings that Katapult had projected would be in its customer pool restricting the flow of customers to Katapult.

As to Plaintiffs' Section 10(b) and 10b-5 claims, Plaintiffs alleged that between June 15, 2021 and August 9, 2021, both dates inclusive (the "Class Period"), Defendants made false and misleading statements about Katapult's then current beliefs about its near-term financial prospects, including statements that were misleading because of what Defendants knew was then happening with respect to its waterfall partnerships.

### A.    Initial Complaint and Lead Appointment Process

On August 21, 2021, Plaintiffs filed the initial complaint.  ECF No. 1.  On May 26, 2022, the Court appointed Matis Nayman as Lead Plaintiff and approved his selection of Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Lead Counsel.  ECF No. 40.

### B.    Lead Counsel's Investigation and the Amended Complaint

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) FinServ and Katapult's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, press releases, blog posts, and news articles concerning FinServ and

4

Katapult, (c) FinServ and Katapult investor call transcripts; and (2) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, contacting former Katapult employees and other sources of relevant information.  Lead Counsel also consulted with a damages and loss causation expert.  On November 10, 2022, Plaintiffs filed and served the 71-page operative Second Amended Complaint.  ECF No. 59.

### C.    The Court Denies in Part the Motion to Dismiss the Amended Complaint and Denied Defendants' Motion for Reconsideration

On January 9, 2023, Defendants filed motions to strike, or alternatively, dismiss, Plaintiffs' Second Amended Complaint.  ECF Nos. 65, 68. Plaintiffs filed their oppositions to each of those motions on March 6, 2023 (ECF Nos. 77, 78) and on April 11, 2023, Defendants filed their replies. ECF Nos. 79 and 80.  On August 8, 2023, United States District Judge J. Paul Oetken of the United States District Court for the Southern District of New York denied Defendants' motion to strike and granted in part and denied in part Defendants' motion to dismiss, including dismissal of Plaintiffs 10(b) and 10b-5 claim, as well as the 20(a) claim based thereon, and defendants Cupito and Medlin against whom only dismissed claims were brought.

### D.    Plaintiffs Initiated Discovery Of Defendants

On September 6, 2023, Defendants Lee Einbinder, Katapult Holdings, Inc., Howard Kurz, and Orlando Zayas filed their answer and affirmative defenses to the Amended Complaint, ECF No. 88.  Thereafter, discovery commenced.  On September 25, 2023, the Parties held their Rule 26(f) conference, and on September 26, 2023, the parties' Civil Case Management Plan and Scheduling Order was entered by the Court.  ECF No. 90.  Lead Plaintiffs served interrogatories and multiple document requests on Defendants and received responses and objections from Defendants. Defendants also served multiple document requests on Plaintiffs and received responses and objections from Plaintiffs.

**E.**   **Mediation Efforts and Settlement Negotiations**

On December 18, 2023, Lead Counsel and Defendants' Counsel participated in a full-day mediation session with Ms. Yoshida.  In advance of that session, the Parties exchanged, and provided to Ms. Yoshida, detailed mediation statements and exhibits, which addressed the issues of both liability and damages.  The mediation was conducted on the same day as, and in coordination with, the mediation of a case in a related action, *In re FinServ Acquisition Corp. SPAC Litigation*, No. 2022-0755-PAF ("Delaware Action"), pending in Delaware Chancery Court. The session ended without any final agreement being reached.

Thereafter, Ms. Yoshida conducted further discussions with the Parties, which culminated in Ms. Yoshida making a mediator's recommendation to resolve the Action for total settlement consideration in this Action of $2,500,000 in total value (the "Settlement Consideration"), comprised of: (i) a cash component of $1,775,000 (the "Cash Component"); and (ii) an additional component worth $725,000 comprised of Katapult common stock (the "Settlement Shares") and/or cash (the "Additional Component").

The Parties subsequently accepted Ms. Yoshida's recommendation.  The agreement in principle to settle the Action that was memorialized in a term sheet (the "Term Sheet"), which was fully executed in May 2024, following significant additional negotiations.  The Term Sheet sets forth, *inter alia*, the agreement of Plaintiffs in this case to settle and release all claims asserted against Defendants in return for $1,775,000 of the Cash Component and $725,000 of the Additional Component, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement.  Following extensive negotiations, on July 3, 2024, the Parties executed the Stipulation.

**F.    The Court Grants Preliminary Approval**

On July 3, 2024, Plaintiffs submitted an unopposed motion for entry of Order preliminarily approving the Settlement, preliminarily certifying the Settlement Class and establishing notice procedures.  ECF No. 99.  On July 24, 2024, the Court granted preliminary approval to the Settlement, preliminarily certified the Settlement Class and approved Notice to the Class.

**G.    The Notice Procedure and Response of the Class**

By Order dated July 24, 2024, Magistrate Judge Parker preliminarily approved the Settlement and approved the forms of notice to the Class.  ECF No. 103.  The Court also appointed JND Legal Administration ("JND") as Claims Administrator and instructed JND to disseminate notice to the Class.  *See id*.  Based upon the trading information provided by claimants, JND is determining each claimant's eligibility to participate in the Settlement and calculating each claimant's respective "Recognized Claim" based on the Plan of Allocation.  Guiney Decl. ¶ 35.

The Declaration of Luiggy Segura represents that the Claims Administrator has provided Notice to the Class in compliance with the Preliminary Approval Order.  As stated in the Segura Declaration, in addition to mailing a total of 12,733 Notice Packets to potential Settlement Class Members and nominees, JND caused the Summary Notice to be published in Investor's Business Daily and to be transmitted over PR Newswire.  Guiney Decl. ¶¶ 36-37.

JND also maintains and posts information regarding the Settlement on a dedicated website established for the Action, www.Katapult-FinServSecuritiesLitigation.com, to provide Class Members with information about the Action, as well as downloadable copies of the Notice, Claim Form and Stipulation.  Guiney Decl. ¶ 38.

Pursuant to the Preliminary Approval Order, the deadline for Class Members to submit objections to the Settlement, or the fee, expense and lead plaintiff reimbursement application is November 22, 2024, and the deadline to request exclusion from the Class is also November 22,

2024, 21 days prior to the Settlement Hearing. To date, Lead Counsel and JND have received no objections to the Settlement, fee and expense, or requested reimbursement of time to Plaintiffs, and no exclusions from the Class. Guiney Decl. ¶¶ 16-39.

## ARGUMENT

## I.    STANDARDS FOR FINAL APPROVAL OF THE SETTLEMENT

As a matter of public policy, settlement is strongly favored. *See Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *2 (S.D.N.Y. Oct. 21, 2022) ("[t]here is a strong judicial policy in favor of settlements, particularly in the class action context"). *See also* Pearlstein v. BlackBerry Ltd._, No. 13CIV7060CMKHP, 2022 WL 4554858, at *2 (S.D.N.Y. Sept. 29, 2022) ("The law favors compromise and settlement of class action suits."). While approval of the Settlement is within the Court's discretion, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Guevoura Fund Ltd. v. Sillerman*, No. 15-CV-07192 (CM), 2019 WL 6889901, at *5 (S.D.N.Y. Dec. 18, 2019) (internal citation omitted). Indeed, the Second Circuit has cautioned that a district court may not substitute its own judgment for the business judgment of the parties who negotiated the settlement and has warned that the Court's examination of the proposed settlement should not become so involved as to turn the settlement review into "a rehearsal of [a] trial." *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972) (internal citation omitted).

For a proposed class action settlement to be approved as "fair, reasonable, and adequate", the following four factors must be considered:

(A)    the class representatives and class counsel have adequately represented the class;
(B)    the proposal was negotiated at arm's length;
(C)    the relief provided for the class is adequate, taking into account:
    i.    the costs, risks, and delay of trial and appeal;
    ii.    the effectiveness of any proposed method of distributing relief to the class,

including the method of processing class-member claims;

iii.     the terms of any proposed award of attorneys' fees, including timing of payment; and

iv.     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The advisory committee describes the first two of these factors as "procedural" and the latter two as "substantive." *See* Advisory Committee Notes to 2018 Amendments.

In addition, to evaluate the substantive fairness of a settlement, courts in the Second Circuit also consider what are known as the "*Grinnell* factors": (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). In finding that a settlement is fair, reasonable and adequate, "not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Flores,* 2022 WL 13804077, at *6 (internal quotation omitted). After the 2018 amendment of Rule 23(e), courts must "expressly consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502, 2024 WL 4118465, at *6 (E.D.N.Y. Sept. 6, 2024). "In particular, such evaluation must be conducted in tandem with reviewing the appropriateness of the proposed attorneys' fees and incentive awards encompassed in the settlement agreement." *Id.* at 8.

"There is significant overlap between the Rule 23(e)(2) and the *Grinnell* factors," which courts in this Circuit have acknowledged complement one another. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* No. 05-MD-1720 (MKB)(JO), 2019 WL 6875472, at \*14 (E.D.N.Y. Dec. 16, 2019).

As discussed below, the Settlement readily satisfies Rule 23.[2]

## II.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    The Proposed Settlement is Procedurally Fair

#### 1.    Rule 23(e)(2)(A) – Plaintiffs Have Adequately Represented the Class

In making the determination as to adequacy of representation, "courts consider 'whether (1) plaintiff[s'] interests are antagonistic to the interests of other members of the class and (2) plaintiff[s'] attorneys are qualified, experienced[,] and able to conduct the litigation.' " *In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2023 WL 5511513, at \*5 (E.D.N.Y. Aug. 24, 2023).

Here, Plaintiffs adequately represented the Class. Plaintiffs have communicated regularly with Lead Counsel, overseen the litigation, reviewed drafts of the pleadings and motions, participated in the settlement discussions with Lead Counsel, and approved the Settlement. *See* Declarations of Plaintiff Matis Nayman and Plaintiff Felipe de Castro Luna in Support of Motion for Final Approval of the Settlement, an Award of Attorneys' Fees and Litigation Expenses, and Reimbursement of Time for Plaintiffs, Guiney Decl. Exs. B, C.

In addition, throughout the Action, Plaintiffs benefited from the advice of knowledgeable counsel well-versed in securities class actions. Wolf Haldenstein Freeman Adler & Herz LLP is

---

[2] For a settlement to be deemed "fair, reasonable and adequate", every possible factor need not be satisfied. *See Wallace v. Powell*, 288 F.R.D. 347, 371 (M.D. Pa. 2012) ("Not every factor need weigh in favor of settlement… in order for the Settlement to be approved") (citing *In re Cendant Sec. Litig.,* 264 F.3d 201, 242–43 (3d Cir. 2001)).

among the most experienced and skilled firms in the securities litigation field and has a long and successful track record, serving as lead counsel in many high profile and influential cases.  Guiney Decl. Ex. D.

Lead Counsel assiduously litigated the Action since its inception.   Throughout the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a thorough understanding of the merits of the claims as well as the risks of continuing litigation.   Lead Counsel hired a private investigator and reviewed extensive documents concerning Defendants, including news articles, SEC filings, proxy materials, internal documents, and public statements.  *See* Guiney Decl. ¶¶ 6-7.

In sum, Plaintiffs and Lead Counsel adequately represented the Class.

### 2.      Rule 23(e)(2)(B) – the Agreement and Settlement Were Negotiated at Arm's Length

"The hard fought, arm's-length negotiations and involvement of an experienced mediator 'helps to ensure that the proceedings were free of collusion and undue pressure.'" *Pearlstein,* 2022 WL 4554858, at *7, quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  *See also In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL 2063864, at *7 (S.D.N.Y. June 8, 2022) ("The Court concludes that the settlement was negotiated at arm's length, and that this factor weighs in favor of approving the proposed settlement."). Likewise, "Lead Counsel's belief that the Settlement is in the best interest of the Class is entitled to great weight. *Pearlstein,* 2022 WL 4554858, at *7, citing <u>Signet Jewelers</u>, 2020 U.S. Dist. LEXIS 128998, at *10.

Here, the Settlement was achieved only after thorough and protracted arm's-length negotiations between well-informed and experienced counsel and with the assistance of a well-respected mediator.   Guiney Decl., ¶ 51.   Lead Counsel conducted an exhaustive factual

11

investigation into the alleged wrongdoing and performed a detailed review of the relevant caselaw. *Id*. Lead Counsel was well aware of the strengths and weaknesses of the case at the time of Settlement. While drafting the Amended Complaint, Lead Counsel reviewed Defendants' press releases, conference calls, and public filings. *See* Guiney Decl., ¶¶ 22, 71. Lead Counsel was, thus, well-equipped to judge the strength of Plaintiffs' claims that Defendants misled investors concerning Katapult's then current beliefs at the relevant times, about its near-term financial prospects, including statements that were misleading because of what Defendants knew was then happening with respect to its waterfall partnerships. In addition, briefing the opposition to Defendants' motion to dismiss provided Lead Counsel with an awareness of the defenses that the Class would have faced had the Parties continued on to summary judgment and trial. Thus, Lead Counsel and Plaintiffs were in a position to make a rational assessment of the case when deciding to settle.

In sum, this Settlement was negotiated at arm's length, weighing in favor of final approval.

**B.      The Proposed Settlement is Substantively Fair**

At the final approval stage, the Court need not "decide the merits of the case or resolve unsettled legal questions," nor "foresee with absolute certainty the outcome of the case." *Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-8331 (CM)(MHD), 2014 WL 1224666, at *10 (S.D.N.Y. Mar. 21, 2014). Instead, the Court is to "assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

**1.      Rule 23(e)(2)(C)(i) – the Relief Provided to the Class is Superior to Continued Litigation**

The Second Circuit's *Grinnell* factors are effectively codified in Rule 23(e)(2)(C)(i), which guides the Court's analysis on the substantive fairness of the proposed settlement. Seven of the

*Grinnell* factors are covered by Rule 23(e)(2)(C)(i): the complexity, expense and likely duration of the litigation (factor 1); the risks of establishing liability (factor 4); establishing damages (factor 5); the likelihood of maintaining a class action through trial (factor 6); the ability of the defendants to withstand a greater judgment (factor 7); the range of reasonableness of the settlement fund in light of the best possible recovery (factor 8); and the amount of the settlement in light of all the attendant risks of litigation (factor 9).

The relief provided by the Settlement here is more than adequate – it is a good result. "The adequacy of the amount achieved in settlement may not be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019) (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)). Instead of the best possible world, "there is a range of reasonableness with respect to a settlement," *Newman*, 464 F.2d at 693. What constitutes a reasonable settlement amount "is not susceptible of a mathematical equation yielding a particularized sum," but turns on whether the settlement falls within "a range of reasonableness." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y.), *aff'd,* 117 F.3d 721 (2d Cir. 1997) (internal citations and quotation marks omitted). Indeed, the ratio of the settlement "to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." In re *LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 495 (S.D.N.Y. 2018) (approving settlements where the plaintiffs did not even provide a damages estimate.). This is because "some risks would be attendant upon continuing to litigate." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 696 (S.D.N.Y. 2019). Accordingly, the analysis takes into account "the uncertainties of law and fact in any particular

13

case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119 (quoting *Newman*, 464 F.2d at 693); *see also Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 WL 10847814, at *8 (S.D.N.Y. Sept. 9, 2015) (the settlement amount should not be judged "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."). As the Second Circuit has stated, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.*, 495 F.2d at 455 & n.2

As described further below, proving falsity, scienter, negligence and damages posed serious risks to recovery. The $2,500,000 recovery is above the range of reasonableness for securities class action settlements at this stage of the litigation. The Settlement recovers approximately 5.22% of the $41 million in maximum damages potentially available in this case. As noted above, Cornerstone's most recent report (issued in March 2023) reported that the median settlement in a securities class action from 2018 to 2022 recovered 4.7% of damages in analogous cases, i.e., with under $25 million in damages and a pending motion to dismiss. *See* Guiney Decl., Exhibit E attached hereto at 14 (Laarni T. Bulan and Laura E. Simons, *Securities Class Action Settlements – 2022 Review and Analysis*, Cornerstone Research). Moreover, $41 million was Plaintiff's best-case scenario for damages – it did not account for the numerous arguments Defendants made and likely would have made to reduce damages. Thus, the recovery here is well within the range of reasonableness for securities class action settlements.

Lead Counsel does not agree with any of the arguments Defendants made or would likely have made should the Action continue in litigation.  Nevertheless, if Defendants were successful in making any one of them, damages could be reduced to $0 in the worst-case scenario or, based on expert analysis, be reduced well below $41 million.  The $2,500,000 Settlement comprises 5.22% of the $41 million figure.  The 5.22% recovery here is above the percentage of damages recovered in many other securities class action settlements, including in courts in this District and Circuit.[3]

As discussed, had Plaintiffs continued litigating the Action, they would have had to overcome many difficult challenges.  Given this uncertainty, settling the Action at this juncture will provide the Class with a very good and certain result. Accordingly, this factor militates in favor of the Settlement.

### a)   The Settlement Class Faced Significant Risks in Establishing Liability

The risks of establishing liability at trial weigh in favor of granting approval of the Settlement.  Courts have recognized that "[a] trial on the merits always entails considerable risk." *See*, *e.g.*, *Pro v. Hertz Equip. Rental Corp.*, No. CIV.A. 06-3830(DMC), 2013 WL 3167736, at *4

---

[3] *See*, *e.g.*, *Schuler v. Medicines Co.*, No. 14-1149, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving $4.25 million settlement reflecting approximately 4% of the estimated recoverable damages; noting percentage "falls squarely within the range of previous settlement approvals"); *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, at *3, *9, *13 (E.D. Pa. Nov. 21, 2008) (approving settlement representing 2.5% of damages); *Cendant*, 264 F.3d at 241 (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *see also Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement representing slightly more than 2% of estimated damages and stating, "2% aggregate recovery is consistent with the 2–3% average recovery that the parties identified in other securities class action settlements"); *In re Citigroup Inc. Sec. Litig.*, No. 09 Civ. 7359 (SHS), 2014 WL 2112136, at *5 (S.D.N.Y. May 20, 2014) (approving settlement representing 2% of damages); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"), *aff'd*, 166 F.3d 581 (3d Cir. 1999).

(D.N.J. June 20, 2013). Moreover, the significant unpredictability and complexity posed by securities class actions in particular generally weigh in favor of final approval. *See In re Par Pharm. Sec. Litig.*, No. 06-3226, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013) ("[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate"); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168 (WHW), 2008 WL 906254, at *4-5 (D.N.J. Mar. 31, 2008) (complexity of securities class actions supports final approval).

But before Plaintiffs could even get to trial, they would need to clear other significant hurdles, including successfully moving for class certification, and surviving any *Daubert* and summary judgment challenges. There is still a risk that a Class would not be certified for all potential Class Members. Defendants would also likely have made a *Daubert* challenge and sought summary judgment, and there is no guarantee that Plaintiffs would have prevailed against all of Defendants' challenges. And even if Plaintiffs did prevail, there were risks regarding how the Court's rulings would affect the Class, damages, or how the case would be presented to the jury.

These risks aside, discovery also would have been protracted and may not have produced evidence supporting Plaintiffs' case. Furthermore, the trial of Plaintiffs' claims would inevitably have been long and complex and even a favorable verdict would undoubtedly have spurred a lengthy post-trial and appellate process.

To go forward with the case, Plaintiffs would have to **prove**, *inter alia*, that the statements and omissions were false and misleading, Defendants knew or were reckless in not knowing their statements and omissions were false and misleading at the time made, and that those statements and omissions were corrected and caused recoverable damages for the Settlement Class. Plaintiffs

16

anticipate Defendants would present strong arguments challenging Plaintiffs' pleading and proof on all of those elements in their expected motion(s) for summary judgment and/or at trial.

Although Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that continued litigation poses a real risk that substantially less or no recovery at all might be achieved. Defendants argued at the motion to dismiss stage, and would continue to argue, that their challenged statements were not materially false and misleading when made because, *inter alia*: (i) evidence concerning the tenuousness of Katapult's waterfall arrangements was a matter of public record; (ii) and many of Defendants' alleged misstatements were forward-looking and, thus, protected by the PSLRA's safe harbor.

Accordingly, the pre-trial risks and risk of establishing liability at trial further support the reasonableness of the Settlement.

> **b)** **The Settlement Class Faced Significant Hurdles in Certifying a Class and Maintaining it Through Trial and On a Potential Appeal**

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, the class has not yet been certified, and Plaintiffs are aware that there is a risk the Court could disagree. If the litigation were to continue, Plaintiffs would face challenges in both certifying and then, if successful, maintaining a class action. *Id.* Although Plaintiffs and Settlement Class Counsel believe they would ultimately be successful, Defendants would vigorously contest class certification with substantive arguments in opposition that render class certification far from a *fait accompli*. *Id.*

Moreover, it is a foregone conclusion that, even if Plaintiffs were successful in certifying a class, Defendants would seek interlocutory appeal under Federal Rule of Civil Procedure 23(f), which, at a minimum, would further delay the outcome of the Action. *Id.* Even simple delay

17

caused by appeal presents a litigation with unique risk exposure, which should be weighed against the immediate and certain recovery offered to the Settlement Class.

        **c)**        **Even if the Plaintiffs Can Prove Liability, They Might Not Be Successful in Proving Damages**

The risks of establishing loss causation and damages at trial also weigh in favor of approving the Settlement. If this litigation were to continue, Plaintiffs would inevitably encounter loss causation and damages defenses at the summary judgment phase and at trial. Pursuant to *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345-47 (2005), Plaintiffs would need to show that the disclosure of the alleged securities violations caused investors' losses, as opposed to other unrelated matters.

Risk related to showing causation and damages are significant. *See In re Luckin Coffee Inc. Sec. Litig.,* No. 120CV01293JPCJLC, 2021 WL 11114633, at \*13 (S.D.N.Y. Oct. 26, 2021) ("[t]here were also risks related to proving that Defendants' alleged misrepresentations and omissions caused the alleged losses suffered by Plaintiffs and the Class, and in establishing damages. Thus, there were very significant risks attendant to the continued prosecution of the Action, including the risk of zero recovery"); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 383 (S.D.N.Y. 2013) ("[t]hat loss causation analysis also highlights the risk that plaintiffs might not establish damages at the levels alleged") (internal quotation omitted).

Here, Although Plaintiffs believed that they had meritorious arguments in response to Defendants' assertions, it cannot be disputed that the Parties held extremely disparate views on loss causation and damages and, had Defendants' arguments been accepted in whole or part, they would have dramatically limited or foreclosed any potential recovery. *See In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059(KAM)(SJB), 2024 WL 1719632, at \*8 (E.D.N.Y. Apr. 22, 2024)

18

("proving causation and damages would have required expert discovery, which could substantially increase costs to the settlement class and result in a costly 'battle of the experts'").

### d)     The Recovery is Reasonable in Light of the Best Possible Recovery and the Attendant Risks of Litigation

Courts often consider the range of reasonableness of the recovery in light of the best possible outcome and the attendant risks of continued litigation. In determining the reasonableness of a settlement, the analysis "does not involve the use of a mathematical equation yielding a particularized sum." *Fleisher*, 2015 WL 10847814, at *10 (quoting *Massiah v. MetroPlus Health Plan, Inc.,* No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012)). Indeed, the ratio of the settlement "to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." *LIBOR*, 327 F.R.D. at 495 (approving settlements where the plaintiffs did not even provide a damages estimate.). This is because "some risks would be attendant upon continuing to litigate." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696. Accordingly, the analysis takes into account "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119; *see also Fleisher*, 2015 WL 10847814, at *8 (the settlement amount should not be judged "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."). Securities class actions present challenges to proving liability that are often quite difficult for plaintiffs to meet. *In re AOL Time Warner*, *Inc. Sec. and ERISA Litig.,* No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting the "difficulty of establishing liability is a common risk of securities litigation."). As the Second Circuit has stated, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does

19

not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455.

Consistent with Second Circuit jurisprudence, in settling this Action, Plaintiffs accounted for the estimated damages, the benefits and risks of continuing litigation against Defendants, and the range of possible outcomes should the litigation continue.

The Settlement provides for a Settlement Fund of $2,500,000, with $1,775,000 in cash, and $725,000 in Katapult stock, or if certain conditions prevail at the time for distribution, additional cash. Plaintiffs' estimated maximum aggregate damages were, under the parties' estimation, approximately $41 million. The Settlement represents a strong result for the Class, returning approximately 5.22% of maximum potential damages to investors. This best-case scenario assumes that Plaintiffs prevail at trial and the Court and jury accept Plaintiffs' damages theory, including proof of loss causation, in the full amount proffered by Plaintiffs' expert. Anything less than a complete victory could eliminate recoverable damages. Courts judge the reasonableness of a settlement "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange",* 597 F. Supp. at 762 . *See Grinnell*, 495 F.2d at 455 & n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litigation,* 330 F.R.D. 11, 48 (E.D.N.Y. 2019) (stating that the Second Circuit did not take issue with original settlement recovery of "2.5% of the largest possible estimate of actual damage to [the class]").[4]

---

[4] *See, e.g., McLaughlin v. IDT Energy*, No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627, at *13 (E.D.N.Y. July 30, 2018) (finding $1.9 million monetary recovery reasonable despite possible recovery in excess of

The Settlement Amount provides a significant, immediate, and certain cash payment to the Settlement Class. *See Gay v. Tri-Wire Eng'g Solutions, Inc.,* 12-cv-2231 (KAM)(JO), 2014 WL 28640, at *9 (E.D.N.Y. Jan. 2, 2014) (quoting *Massiah*, 2012 WL 5874655, at *5) ("When a settlement 'assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor.'"); *Sykes v. Mel Harris & Assocs., LLC,* 09 Civ. 8486 (DC), 2016 WL 3030156, at *14 (S.D.N.Y. May 24, 2016) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly."). The proposed settlement will provide "an immediate and certain benefit to" the Settlement Class, and "the substantial burdens and costs that continued and uncertain litigation would impose on the parties, non-party witnesses, and the courts" would be avoided if the settlement were approved. *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010). Furthermore, there are many steps between here and any potential verdict. Moreover, even assuming *arguendo* that continued litigation might result in a larger recovery that would occur only after the expenditure of many millions of dollars more in costs and expenses that would eat up much of any increased recovery.

After evaluating the certain recovery of a significant amount against the risks that continuing this litigation presents to the Settlement Class, this factor weighs in favor of final approval.

---

more than $900 million); *In re "Agent Orange"*, 597 F. Supp. at 762 ("The dollar amount of the settlement by itself is not decisive in the fairness determination. The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate.").

> **e)**    **While Defendants May Be Able to Sustain a Larger Judgment, that Factor Alone Does Not Undercut the Reasonableness of the Settlement**

A defendant's ability to withstand a judgment greater than that secured by settlement is generally not one of the determining factors. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 339 ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other Grinnell factors weigh heavily in favor of settlement approval.'"). In a class action proceeding against a sizable corporation, the defendant "is likely to be able to withstand a more substantial judgment." *In re Vitamin C Antitrust Litigation*, No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012).  But Katapult is not a large corporation.  In this way, the Defendants may not have been able to withstand a greater judgment.  Consequently, this factor weighs in favor of final approval.

### 2.    Rule 23(e)(2)(C)(ii) – the Claims Process Is Fair and Rational

Pursuant to this factor, the Court examines the proposed "method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii).  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Note (2018).  "[T]he plan of allocation must also meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate . . . . An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).  The Plan of Allocation is a fair, reasonable, and adequate method of equitably allocating and distributing the Settlement Amount to the Settlement Class Members, who make proper claims.   The proposed Plan of Allocation represents a reasonable method of ensuring that the Settlement Class Members "get as much of the available damages remedy . . .  as possible and in as simple and expedient a manner as possible."  4 William B.

Rubenstein, Newberg on Class Actions § 12:15 (5th Ed.) (Westlaw 2018); *see also In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 25, 2016) ("A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund."). Numerous courts have held that "a plan of allocation need not be perfect" to warrant court approval. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (collecting cases).

As required by Rule 23(e)(2)(C)(ii), the method for processing Settlement Class Members' claims and distributing relief to eligible claimants is well-established and effective. Here, JND ("JND"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  Claims processing, like the method proposed here, is standard in securities class action settlements.

Thus, the proposed Plan of Allocation is fair, reasonable, and adequate and warrants approval.  Furthermore, this factor weighs in favor of final approval of the settlement.

### 3. Rule 23(e)(2)(C)(iii) – the Proposed Award of Attorneys' Fees Supports Final Approval

Concurrently with this motion, Lead Counsel is applying for attorneys' fees, reimbursement of litigation expenses, and service awards to Lead Plaintiff Nayman and additional Plaintiff De Castro Luna.  Lead Counsel is applying for fees in the amount of 33-1/3% of the Settlement Fund plus $44,131.99 in litigation expenses and costs along with $10,000 service awards in total to Lead Plaintiff and additional named plaintiff.  For purposes of final approval,

the requested fee is firmly within the range of fees granted from comparable class settlement funds and therefore weighs in favor of this Court's granting final approval.  *See Flores,* 2022 WL 13804077, at *10 (33 1/3% is "in line with amounts typically approved by courts in this Circuit for collective actions such as this."); *In re J.P. Morgan Stable Value Fund ERISA Litig.,* No. 12-CV-2548 (VSB), 2019 WL 4734396, at *6 (S.D.N.Y. Sept. 23, 2019) (approving 33-1/3% fee request); *In re Platinum & Palladium Commodities Litig.,* No. 10cv3617, 2015 WL 4560206, at *5 (S.D.N.Y. July 7, 2015) (approving 33-1/3%); *Guevoura Fund Ltd.*, 2019 WL 6889901, at *21 (awarding 33 1/3*)*; *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *17 (S.D.N.Y. Dec. 19, 2014) (33 1/3%); *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262 (RWS), 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (noting "scores of common fund cases where fees . . . were awarded in the range of 33-1/3% of the settlement fund."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146-47, 149 (S.D.N.Y. 2010) (approving 33.33% fee from $50 million common fund recovery); *In re Medical X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *8 (E.D.N.Y. Aug. 7, 1998) (33% fee request of $39 million common fund was reasonable).

### 4.    Rule 23(e)(2)(C)(iv) – Any Agreements Required to Be Identified Under Rule 23(e)(3)

As set forth in Plaintiffs' motion in support of preliminary approval, Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. Plaintiffs and Defendants have entered into a confidential agreement that provides certain conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of securities purchased during the Settlement Class Period request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the

fairness of the Settlement." *Christine Asia Co.*, 2019 WL 5257534, at *1, *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

        **5.      Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to One Another**

The Rule 23(e)(2)(D) factor includes "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23, 2018 Advisory Committee Note.  Pursuant to the Plan of Allocation, Settlement Class Members' individual share of the recovery will be apportioned based upon their *pro rata* losses.  Consequently, the release is tailored from the factual predicate for the Action and treats all Settlement Class Members equitably relative to one another.

**III.    <u>NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS</u>**

Notice of the proposed Settlement to the Class, as approved by the Court in the Preliminary Approval Order (ECF No. 103), satisfied Rule 23's requirement of "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

The Claims Administrator mailed 12,733 Notices to potential Class Members, posted the Internet Notice and Proof of Claim form on the Claims Administrator's website along with a link for online claim filing and a list of important deadlines.  *See* Guiney Decl. Ex. A.  Thus, notice has been given to the Class as required by the Preliminary Approval Order.

Both the substance of the Notice and the means of dissemination satisfied these standards. The Court-approved notice included all the information required by Rule 23(c)(2)(B) and the PSLRA, including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the

definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the Settling Parties' reasons for proposing the Settlement; (vi) the attorneys' fees and costs sought, including the requested reimbursement of time to Plaintiffs; (vii) how to opt out of the Class; (viii) how to object to the Settlement, Plan of Allocation, requested attorneys' fees or expenses, or the proposed Plaintiffs reimbursement; and (ix) the binding effect of a judgment on Class members.

This combination of individual first-class mail to all Class members who could be identified with reasonable effort was "the best notice practicable under the circumstances." Fed. R. Civ. P. 23 (c)(2)(B). The notice program here readily satisfied Rule 23(e)(1)'s requirement that notice of a settlement be "reasonable" as it "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *Wal-Mart*, 396 F.3d at 114. Clearly, the notice program was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the notice given to the Class satisfies due process and Rule 23.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court: (i) grant final approval of the Settlement; (ii) approve the Plan of Allocation; (iii) grant final certification of the Class for settlement purposes; and (iv) enter the Judgment.

Dated: November 8, 2024

Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

/s/ Matthew M. Guiney
Matthew M. Guiney
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600

26

Facsimile: (212) 686-0114
guiney@whafh.com

*Lead Counsel for Plaintiffs and the Class*

Brian Schall
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel*

27

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/   Matthew M. Guiney