**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GINA McINTOSH, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>KATAPULT HOLDINGS, INC., LEE EINBINDER, HOWARD KURZ, ORLANDO ZAYAS, KARISSA CUPITO and DEREK MEDLIN<br>        Defendants. | Case No. 1:21-cv-07251-KHP |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS**

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................... 1

INTRODUCTION ........................................................................................................................... 1

LEGAL ARGUMENT ..................................................................................................................... 2

I.      LEGAL STANDARD ........................................................................................................... 2

      A.      The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or The Lodestar Method ............................................................ 5

            1.      The Requested Attorneys' Fees Are  Reasonable Under The Percentage-Of-The-Fund Method ................................................................................... 5

            2.      The Percentage Fees Are Reasonable Under A Lodestar Method  ............................................................................................................ 7

      B.      Other Factors Considered By Courts In The Second Circuit  Confirm That The Requested Fee Is Fair And Reasonable ................................................... 9

            1.      The Time and Labor Expended By Counsel Support the Requested Fee ....................................................................................... 9

            2.      The Risks of Litigation Support the Requested Fee ................................. 10

            3.      The Magnitude and Complexity of the Action Support the Requested Fee ..................................................................................... 12

            4.      The Quality of Lead Counsel's Representation Supports the Requested Fee ..................................................................................... 12

            5.      The Requested Fee in Relation to the Settlement .................................... 14

            6.      Public Policy Considerations Support the Requested Fee ....................... 14

            7.      The Requested Fee Has Been Approved by Lead Plaintiffs..................... 15

            8.      The Reaction of the Class to Date Supports the Requested Fee ............... 16

      C.      The Expenses Incurred Are Reasonable And  Were Necessary To Achieve The Benefit Obtained .................................................................................. 16

      D.      Lead Plaintiffs Should Be Awarded Their Reasonable Costs And  Expenses Under 15 U.S.C. § 77Z-1(A)(4) ............................................................. 17

CONCLUSION ............................................................................................................................. 18

# **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Abel v. Town Sports Int'l, LLC*,
    No. 09 Civ. 10388 (DF), 2012 WL 6720919 (S.D.N.Y. Dec. 18, 2012) ....................................3

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................................................11

*Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*,
    568 U.S. 455 (2013) ............................................................................................................15

*Anwar v. Fairfield Greenwich Ltd.*,
    No. 09-CV-118 (VM), 2012 WL 1981505 (S.D.N.Y. June 1, 2012) ...................................13, 17

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ............................................................................................................15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ..............................................................................................................4

*Blum v. Stenson*,
    465 U.S. 886 (1984) ...........................................................................................................3, 5

*In re Bristol–Myers Squibb Sec. Litig.*,
    361 F. Supp. 2d 229 (S.D.N.Y. 2005) ..................................................................................15

*In re Citigroup Inc. Bond Litig.*,
    988 F. Supp. 2d 371 (S.D.N.Y. 2013) ................................................................................5, 12

*City of Providence v. Aéropostale, Inc.*,
    No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..........................6

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...................6, 14

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13md2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) .................................. 2-3

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................................................................11

*In re Deutsche Telekom AG Sec. Litig.*,
    No. 00-CV-9475 (NRB), 2005 WL 7984326 (S.D.N.Y. June 9, 2005) ......................................8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).................... *passim*

*Flores v. CGI Inc.*,
  No. 22-CV-350 (KHP), 2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ......................................6

*Fogarazzo v. Lehman Bros., Inc.*,
  No. 03 Civ 5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) .................................6, 12

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)......................................................................................... *passim*

*Guevoura Fund Ltd. v. Sillerman*,
  No. 1:15-cv-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................... *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ......................................6

*Hicks v. Morgan Stanley*,
  No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...................................4

*In re Initial Public Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009)..................................................................................7, 13

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
  No. 12-CV-2548 (VSB), 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ....................................6

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)..................................6

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................. *passim*

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................................3, 18

*McDaniel v. Cnty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010)..................................................................................................3

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ............................................................................................................8

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................................................8

*Nichols v. Noom, Inc.*,
   No. 20-CV-3677 (KHP), 2022 WL 2705354 (S.D.N.Y. July 12, 2022) ...................................17

*Pillsbury Co. v. Conboy*,
   459 U.S. 248 (1983)...........................................................................................................4

*In re Platinum & Palladium Commodities Litig.*,
   No. 10cv3617, 2015 WL 4560206 (S.D.N.Y. July 7, 2015) .........................................................6

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005).......................................................................................... 4-5

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999)......................................................................................... 5-6

*Schutter v. Tarena Int'l, Inc.*,
   No. 21-CV-3502 (PKC) (RML), 2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024).........................11

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)...................................11

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).................................................................................14, 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................................................4

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989)..........................................................................................4, 8

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM)**,** 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007).....................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)..................................................................................3, 5, 6, 8

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)............................................................................3, 5, 13

**Statutes and Rules**

Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4(a), *et seq* .......... *passim*
   15 U.S.C. § 77z-1(a)(4)..............................................................................................................17
   15 U.S.C. §§ 78u-5 ............................................................................................................11, 12

Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78a, *et seq* ........................................9
    15 U.S.C. § 78n(a) ("Section 14(a)") ..............................................................................................9

## PRELIMINARY STATEMENT

Lead Plaintiff Matis Nayman and additional Plaintiff Felipe de Castro Luna (collectively, "Plaintiffs"), on behalf of the Class, respectfully submit this memorandum in support of their application for: (i) an award to Lead Counsel Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") of attorneys' fees of one-third of the Settlement Fund, or $833,333; (ii) reimbursement of litigation expenses in the amount of $44,131.99; and (iii) reimbursement of $8,000 to Lead Plaintiff Nayman and $2,000 to Plaintiff De Castro Luna for the time they spent representing the Class, pursuant to the PSLRA, 15 U.S.C. Section 78u-4(a)(4).[1]

## INTRODUCTION

The Settlement, which has been preliminarily approved by the Court, provides a recovery of $2,500,000 in value. The settlement consideration is comprised of: (i) a cash component of $1,775,000 (the "Cash Component"); and (ii) an additional component worth $725,000 comprised of Katapult common stock (the "Settlement Shares") and/or cash (the "Additional Component") to resolve all claims in the Action.[2]  This is an excellent result for the Class, particularly in light of the substantial risks and expenses of continued litigation as detailed in the Final Approval Brief (defined below), including the risk of recovering a smaller amount – or nothing at all – after potentially years of costly and protracted litigation.  Lead Counsel and additional Plaintiffs' Counsel litigated this Action on a fully contingent basis and have not received any compensation for their prosecution of the case or reimbursement of their expenses since inception.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated July 3, 2024 (the "Stipulation").  ECF No. 101-1.

[2] The Settling Parties agreed that Magistrate Katharine H. Parker would have jurisdiction over Lead Plaintiff's motion for preliminary approval, as well as the instant motion for final approval.  *See* ECF No. 97.  References to the "Court" below include Magistrate Judge Parker.

As discussed herein, and in the Declaration of Matthew M. Guiney in Support of (I) Motion for Final Approval of Settlement, Plan of Allocation and Certification of the Class; and (II) Motion for Attorneys' Fees and Expenses and Reimbursement of Time for Lead Plaintiff (the "Guiney Decl."), filed concurrently with this motion, it is respectfully submitted that Lead Counsel's requested fee award of one-third of the Settlement Fund is fair, reasonable, and appropriate.  The requested fee award represents a lodestar multiplier of 1.02 based on Plaintiffs' Counsel's lodestar and is, consequently, well within the range of attorney fee awards routinely granted by courts in this Circuit.  The requested expenses are also reasonable and were necessarily incurred for the successful prosecution of the Action.  Such expenses included fees for investigators, a damage expert, financial analysts, mediation costs, legal research, and court filings.  *See* Guiney Decl. ¶ 71.

Finally, Lead Plaintiff's request to be reimbursed for the time it spent representing the Class is also reasonable and justified, and similar reimbursements are routinely made to lead plaintiffs in these types of cases.  *See* Guiney Decl. ¶ 63.

Accordingly, and for the reasons set forth herein, Plaintiffs respectfully request that the Court approve the motion for attorneys' fees and reimbursement of expenses, and for a reimbursement for the time it spent successfully litigating this case.[3]

## LEGAL ARGUMENT

### I. LEGAL STANDARD

"'Attorneys whose work created a common fund for the benefit of a group of plaintiffs' may receive 'reasonable' attorneys' fees from the fund." *See In re Credit Default Swaps Antitrust*

---

[3] A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Guiney Declaration and in Lead Plaintiff's Motion in Support of Final Approval of Settlement, Plan of Allocation and Certification of Class ("Final Approval Brief").

*Litig.*, No. 13md2476 (DLC), 2016 WL 2731524, at \*16 (S.D.N.Y. Apr. 26, 2016) ("*CDS*") (quoting *Victor v. Argent Classic Convertible Arbitrage Fund L.P.,* 623 F.3d 82, 86 (2d Cir. 2010)). "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable." *Abel v. Town Sports Int'l, LLC*, No. 09 Civ. 10388 (DF), 2012 WL 6720919, at \*26 (S.D.N.Y. Dec. 18, 2012) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method" although "'the trend in this Circuit is toward the percentage method.'" *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (citation omitted); *see also Blum*, 465 U.S. at 900 n.16 (noting that in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (noting that "[t]he trend in this Circuit is toward the percentage method, which 'directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'") (citations omitted).

The percentage method provides "appropriate financial incentives" necessary "to attract well-qualified plaintiffs' counsel who are able to take a case to trial," while also "directly align[ing] interests of the class and its counsel" by providing "a powerful incentive for the efficient prosecution and early resolution of litigation." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355, 359 (S.D.N.Y. 2005). "Although district courts may use both methods when approving an award of attorneys' fees, the Second Circuit encourages using the lodestar method only as a cross-check for the percentage method." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at \*14 (S.D.N.Y. Dec. 23, 2009) (citing *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000)). Awarding reasonable attorneys' fees from the common fund recognizes and compensates Lead Counsel's efforts in bringing and prosecuting

3

this case and advances the purpose of the antitrust laws, which rely on private actions like this one to further important public-policy goals. *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) (noting the importance of private actions "as a means of furthering the policy goals of . . . the federal antitrust laws").

The Supreme Court has also emphasized that private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions are "'a most effective weapon in the enforcement' of the securities laws and . . . 'a necessary supplement to [SEC] action'") (citation omitted)). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

In the Second Circuit, courts evaluating whether a fee is reasonable consider "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Goldberger*, 209 F.3d at 50 (citing *In re Union Carbide Corp. Consumer Products Business Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)); *see also Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *16 (S.D.N.Y. Dec. 18, 2019) (court approving fees in securities settlement, holding, "Courts in the Second Circuit consider traditional criteria that reflect a reasonable fee in common fund cases," and listing the *Goldberger* factors). The *Goldberger* factors "need not be applied in a formulaic way" because each case is different and "in certain cases, one factor may outweigh the rest." *In re*

4

*Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).  Counsel respectfully submit that an analysis of the *Goldberger* factors, as well as the percentage-of-recovery and lodestar analyses herein, demonstrate that the fee and expense request is reasonable and appropriate and warrants approval by the Court.

### A. The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or The Lodestar Method

As the Second Circuit held in *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, "Courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method."  396 F.3d at 121 (citation omitted) ("*Visa*").  Regardless of whether the Court applies the percentage or lodestar method here, its ultimate task is to ensure that the fees awarded are "reasonable" under the circumstances.  *Goldberger*, 209 F.3d at 47.  The determination of "reasonableness" is within the Court's discretion.  *Id.*; *WorldCom, Inc.*, 388 F. Supp. 2d at 355. The one-third fee requested is undoubtedly reasonable under the circumstances presented here.

### 1. The Requested Attorneys' Fees Are Reasonable Under The Percentage-Of-The-Fund Method

The Supreme Court has endorsed the percentage-of-the-fund method, noting that "under the 'common fund doctrine' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."  *Blum*, 465 U.S. at 900 n.16.  Indeed, "[a]s this Court recently observed, 'using the percentage of the fund method to compensate plaintiffs' counsel in major securities fraud class actions is now firmly entrenched in the jurisprudence of this Circuit.'"  *In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 373 (S.D.N.Y. 2013) (quoting *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388, Nos. 09 MD 2070 (SHS), 07 Civ. 9901 (SHS), 2013 WL 3942951, at *15 (S.D.N.Y. Aug. 1, 2013)); *see also Visa*, 396 F.3d at 121;  (the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.") (citation omitted); *Savoie v. Merchs. Bank,* 166

F.3d 456, 460 (2d Cir. 1999) (the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). District courts, in turn, have repeatedly recognized the benefits of the percentage method in common fund cases. As the Second Circuit has noted, the "trend [among District Courts] in this Circuit is toward the percentage method." *Visa*, 396 F.3d at 121; *see Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194 (SAS), 2011 WL 671745, at *2 (S.D.N.Y. Feb. 23, 2011); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010).

Lead Counsel respectfully requests a fee award representing 33.3% of the Settlement Fund. This fee request is well within the range of amounts typically awarded in class actions settlements of comparable value in this Circuit and nationwide. *See Guevoura*, 2019 WL 6889901, at *21 (awarding 33 1/3%*); In re J.P. Morgan Stable Value Fund ERISA Litig.,* No. 12-CV-2548 (VSB), 2019 WL 4734396, at *6 (S.D.N.Y. Sept. 23, 2019) (approving 33 1/3% fee request); *Flores v. CGI Inc.,* No. 22-CV-350 (KHP), 2022 WL 13804077, at *10 (S.D.N.Y. Oct. 21, 2022) (33 1/3% is "in line with amounts typically approved by courts in this Circuit for collective actions such as this."); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *17 (S.D.N.Y. Dec. 19, 2014) (33 1/3%); *In re Platinum & Palladium Commodities Litig.,* No. 10cv3617, 2015 WL 4560206, at *5 (S.D.N.Y. July 7, 2015) (approving 33 1/3% fee request of approximately $12 million common settlement fund); *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *13-14 (S.D.N.Y. May 9, 2014) (33%); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) (33 1/3%); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (noting "scores of common fund cases where fees . . . were awarded in the range of 33-1/3% of the settlement fund.").

In sum, when considered on a percentage basis, the requested fee of 33.3% of the Settlement Fund comports with the fees commonly awarded in securities class actions involving settlements of comparable value. The percentage method thus demonstrates the reasonableness of the requested fee.

### 2.  The Percentage Fees Are Reasonable Under A Lodestar Method

The Second Circuit also encourages district courts to crosscheck the reasonableness of a requested fee pursuant to the lodestar method. *See Goldberger*, 209 F.3d at 50. Here, the lodestar method confirms the reasonableness of the requested fee. Under the lodestar method, the Court: (i) determines counsel's lodestar by multiplying the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and (ii) adjusts that lodestar figure by applying a multiplier "to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010).

In this entirely contingent action, Lead Counsel collectively expended more than 1,090 hours of attorney and other professional support time investigating, prosecuting and ultimately settling these claims. Guiney Decl. ¶ 68. The litigation has proceeded for nearly three years to date. Lead Counsel has submitted detailed time records illustrating the hours spent by each attorney as well as detailing the tasks carried out by the firm in the litigation. "Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable." *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009).

Lead Counsel's total lodestar, derived by multiplying these hours by each firm's current

hourly rates for its attorneys, paralegals and other professional staff, is $814,237.50.[4]   The requested 33.3% fee, which amounts to $833,333 (without interest), represents a near perfect 1.02 multiplier. *Id.* The time is summarized in the following chart:[5]

| Firm | Hours Since Inception | Lodestar |
|---|---|---|
| WHAFH | 1096.8 | $814,237.50 |

Significantly, the requested multiplier in this Action is well below the range commonly awarded in securities class actions of similar magnitude.  In complex class actions with significant contingency risks, lodestar multipliers between 3 and 4.5 are commonly awarded.  *See Visa*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable and explaining that "multipliers of between 3 and 4.5 have become common" in common fund class actions); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-9475 (NRB), 2005 WL 7984326, at *4-5 (S.D.N.Y. June 9, 2005) (awarding fee representing a 3.96 multiplier); *Maley*, 186 F. Supp. 2d at 369 (awarding fee representing a 4.65 multiplier, which is "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding fee representing a 3.97 multiplier).

In sum, whether calculated as a percentage-of-the-fund or under the lodestar method, the requested fee is within (or, in this case, below) the range of amounts regularly awarded by courts in securities class actions.  Additionally, as set forth below, the factors established by the Second Circuit in *Goldberger* further demonstrate that the requested fee is eminently fair.

---

[4] The Supreme Court has approved the use of current rather than historical rates in the lodestar calculation.  *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).  Using current rates helps "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *Union Carbide Corp.*, 724 F. Supp. at 163 (citation omitted).

[5] *See* Guiney Decl. ¶ 68.

**B.      Other Factors Considered By Courts In The Second Circuit
Confirm That The Requested Fee Is Fair And Reasonable**

Consideration of the *Goldberger* factors, *Goldberger*, 209 F.3d at 50, provides further confirmation that the fee requested here is reasonable.

**1.      The Time and Labor Expended By Counsel Support the Requested Fee**

The claims in this Action are complex.  As set forth more fully in the Guiney Declaration, Lead Counsel's efforts on behalf of the Settlement Class commenced in August 2021, with the filing of a class action alleging federal securities claims as well on behalf of (a) all persons and entities who purchased or otherwise acquired Katapult securities between June 15, 2021 and August 9, 2021, both dates inclusive, and/or (b) beneficially owned and/or held the Class A common stock of FinServ Acquisition Corp. ("FinServ") as of May 11, 2021 and were eligible to vote at FinServ's June 7, 2021 special meeting and were allegedly damaged thereby.  In the course of litigating this action, Counsel: (i) conducted an extensive investigation, including through the retention of a private investigator; (ii) drafted detailed initial and consolidated amended complaints; (iii) briefed oppositions to the motions to strike and dismiss and succeeded in preserving Plaintiffs' 14(a) and related claims; and (iv) entered into hard fought negotiations, including through the use of the highly respected mediator, Michelle Yoshida, Esq. of Phillips ADR.  *See* Guiney Decl. ¶ 41.

On July 3, 2024, after extensive investigation and litigation in this Action and months of hard-fought negotiations, Lead Plaintiffs and the Defendants entered into the Stipulation for the terms of the proposed settlement, and on July 24, 2024, the Court entered an Order Preliminarily Approving the Settlement and Providing for Notice and, among other things, scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

Lead Counsel collectively devoted over 1,000 hours to this Action (excluding time devoted to preparing this submission), yielding a "lodestar" amount of $814,237.50. Guiney Decl. ¶ 68. Nearly all of those hours were expended during the riskiest phases of the litigation, before the settlement had been negotiated, when there was little or no certainty that Class Counsel would be paid anything for their considerable time and effort. That Lead Counsel overcame the considerable obstacles raised by Defendants through their diligent efforts is especially noteworthy.

The many hours expended by Lead Counsel, which resulted in the favorable Settlement, are plainly reasonable in view of the work performed in this complex securities action. Counsel spent significant time and effort thoroughly investigating and litigating the case, assessing the strengths and weaknesses of the claims and defenses, and effectively and efficiently settling the litigation on terms highly favorable to the Settlement Class. The work, spanning nearly three years, included numerous briefs and motions and extensive consultations with an involved and active mediator for many months prior to settlement. The significant time and effort devoted to this case by Lead Counsel, and their commitment to the efficient management of the litigation, support approval of the requested award. *See* Guiney Decl. ¶¶ 6-7, 22-28, 67.

Again, based on a 33.3% fee award, Lead Counsel's combined lodestar of $814,237.50 would yield a multiplier of approximately 1. Guiney Decl. ¶ 69. The significant effort devoted to this case by Lead Counsel to obtain the $2.5 million settlement confirms that the 33.3% fee request is eminently reasonable.

### 2. The Risks of Litigation Support the Requested Fee

The Second Circuit has recognized that the risks associated with a case undertaken on a contingent fee basis is an important consideration in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless

10

> of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted). *Guevoura*, 2019 WL 6889901, at *19 ("As in any securities litigation, Lead Plaintiff faced risks at later stages of litigation, including at trial and on appeal of prevailing on his securities fraud claims."). Indeed, "'The most important *Goldberger* factor is often the case's risk.'" *Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC) (RML), 2024 WL 4118465, at *16 (E.D.N.Y. Sept. 9, 2024) (citation omitted). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award").

As set forth herein and in the accompanying Guiney Declaration, Lead Counsel faced significant challenges to establishing liability and damages in this action. Guiney Decl. ¶¶ 46-50. Defendants aggressively litigated the motion to dismiss and could be expected to continue to aggressively litigate the action throughout. Although Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are meritorious, there is a real risk that no recovery at all might be achieved. Defendants argued at the motion to dismiss stage, and would continue to argue, that their challenged statements were not materially false and misleading when made because, *inter alia*: (i) evidence concerning the tenuousness of Katapult's waterfall arrangements was a matter of public record; (ii) and many of Defendants' alleged misstatements were forward-looking and, thus, protected by the PSLRA's safe harbor. They could also be expected to continue to argue that they could not be shown to be either negligent nor knowing in their misrepresentations or omission, and that no damage was actually caused by any of their actions. The risks that Plaintiffs' counsel

11

has taken on in respect to seeking relief for the Class Members have been substantial.

### 3.   The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action support the requested fee.  "This case, like virtually all securities actions, was inherently complex."  *Guevoura*, No. 2019 WL 6889901, at *19.  Courts have long recognized that securities class actions are notoriously complex and difficult to prove. *See, e.g., Fogarazzo,* 2011 WL 671745, at *3 ("securities actions are highly complex"); *Flag Telecom Holdings*, 2010 WL 4537550, at *27 (emphasizing that securities class litigation is "notably difficult and notoriously uncertain") (citation omitted).  In cases that require more expertise, a larger percentage of the fund should be awarded to the lawyers who can competently prosecute the case. *See Citigroup Inc.*, 988 F. Supp. 2d at 379 ("The upshot is that the magnitude and complexity of the litigation also weigh in favor of a significant award.").

As set forth herein and in the accompanying Guiney Declaration, the Action involved difficult and complex legal and factual matters.  The claims involved raised a host of difficult questions about whether information that Plaintiffs allege was omitted about the instability of Defendants' waterfall growth model was actually publicly available; whether Defendants' statements about that model and their expected near-term financial status in fact contained misrepresentations or omissions; what Defendants knew about the instability of their waterfall growth model and when they knew it; whether any misrepresentations were covered by the PSLRA's safe harbor; and whether the misrepresentations and omissions caused any actual harm, and if so, the extent of those damages.  In short, the Action raised a multitude of complex questions, and required a significant undertaking over an extended period of years.

### 4.   The Quality of Lead Counsel's Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports

12

the reasonableness of the requested fee.  "In evaluating the quality of representation, courts in the Second Circuit have review[ed] the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  *Guevoura*, 2019 WL 6889901, at *20 (internal quotation marks and citation omitted).  Lead Counsel submit that the quality of their efforts in the litigation and their substantial experience in the complex litigation of securities and other class actions were key elements in enabling them to negotiate this Settlement. *See WorldCom,* 388 F. Supp. 2d at 359 ("If the Lead Plaintiff had been represented by less tenacious and competent counsel, it is by no means clear that it would have achieved the success it did here on behalf of the Class . . . it is likely that less able plaintiffs' counsel would have achieved far less.").  Indeed, Lead Counsel worked diligently and expeditiously to prosecute this complex case, achieving a superb result for the members of the Settlement Class.

Another consideration for assessing the quality of services rendered by Lead Counsel is the quality of the opposing counsel in the case.  *See Maley*, 186 F. Supp. 2d at 373.  Here, Defendants were represented by skilled and highly regarded counsel from Cooley LLP, one of the most prominent defense firms with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases. Throughout the Action, Defendants' counsel litigated aggressively and unfailingly.  Indeed, Defendants' counsel challenged Plaintiffs at nearly every step of this litigation.  Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance, and in this case it supports approval of the requested fee. *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, No. 09-CV-118 (VM), 2012 WL 1981505, at *2 (S.D.N.Y. June 1, 2012) (considering "the quality and vigor of opposing counsel"); *IPO*, 671 F. Supp. 2d at 510 (finding plaintiffs' counsel's prosecution against "such formidable opponents . . . an impressive feat").

13

That Lead Counsel was able to negotiate a substantial recovery in the face of such formidable (and well-financed) opposition is a telling testament to the skill and dedication that they brought to every phase of this Action.

### 5.    The Requested Fee in Relation to the Settlement

Regardless of which method a court uses to award attorneys' fees, the award must be reasonable under the circumstances of the particular case. *See Goldberger*, 209 F.3d at 47. Courts have interpreted this factor as requiring review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse Tech., Inc.*, 2010 WL 2653354, at *3 (citation omitted).

As set forth herein, the requested 33.3 % fee falls well within the range of amounts awarded for settlements of magnitude.  In light of the percentage amount and lodestar multipliers of the vast majority of fee awards, the requested fee is reasonable.

### 6.    Public Policy Considerations Support the Requested Fee

"A strong public policy concern exists for rewarding firms for bringing successful securities litigation." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 593 (S.D.N.Y. 2008) (quoting *In re Ashanti Goldfields Sec. Litig.*, No. Civ. 00-717 (DGT), 2005 WL 3050284, at *5 (E.D.N.Y. Nov. 15, 2005)).  In furtherance of this important public policy, courts should award fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the government regulators. *See Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook."); *Maley*, 186 F. Supp. 2d at 373 ("In

considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988) (the federal securities laws are remedial in nature, and the courts must encourage private lawsuits to effectuate their purpose of protecting investors).

The Supreme Court has a longstanding recognition of the importance of private class actions to the enforcement of the securities laws. *See Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, 568 U.S. 455, 478 (2013) ("Congress, the Executive Branch, and this Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission.'") (citations omitted). In a similar vein, courts in this Circuit have recognized that private securities class actions encourage enforcement of the securities laws.[6] "Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Telik*, 576 F. Supp. 2d at 585 (citing *Maley*, 186 F. Supp. 2d at 369). Approval of the requested fees and expenses would be fully consistent with these important public policy considerations.

### 7.    The Requested Fee Has Been Approved by Lead Plaintiffs

As set forth in Plaintiffs' respective declarations, Plaintiffs oversaw the prosecution and resolution of this Action, and had a basis for assessing the reasonableness of the fee request. *See* Guiney Decl., Exs. B, C. Both Lead Plaintiff Nayman and Additional Plaintiff De Castro Luna

---

[6] *See Telik*, 576 F. Supp. 2d at 585; *In re Bristol–Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 236 (S.D.N.Y. 2005) ("[P]ublic policy supports granting attorneys fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC").

approve the fee request.

### 8.    The Reaction of the Class to Date Supports the Requested Fee

In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit consider the reaction of the Class to the fee request in deciding how large a fee to award. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM) 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007); *Maley*, 186 F. Supp. 2d at 374 ("The reaction by members of the Class is entitled to great weight by the Court."). As of November 8, 2024, the Claims Administrator has disseminated the Notice to approximately 4,327 Settlement Class Members informing them of Lead Counsel's intent to apply for an award of attorneys' fees up to 33.3% of the Settlement Fund and reimbursement of up to $60,000 in expenses and up to $10,000 in PSLRA awards. Guiney Decl. ¶¶ 62, 82. While the time to object does not expire until November 22, 2024, to date, not a single objection to any aspect of the Settlement has been received. Guiney Decl. ¶ 39. The absence of any objection to the fee request from any Class Member strongly militates in favor of the fee request.

### C.    The Expenses Incurred Are Reasonable And Were Necessary To Achieve The Benefit Obtained

Lead Counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably and necessarily incurred in prosecuting this Action. Guiney Decl. ¶¶ 70-71. The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of litigation expenses in an amount not to exceed $60,000. Lead counsel have submitted declarations attesting to the accuracy of their expenses and it is well-established that expenses are properly recovered by counsel. *See Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

16

Lead Counsel's declarations, filed contemporaneously with this motion and memorandum, itemize the various categories of expenses incurred by Lead Counsel. Guiney Decl. ¶ 71. They are the type of expenses typically billed by attorneys to paying clients in the marketplace and include such costs as fees paid to experts, notice costs, computerized research, copying and travel. *Anwar,* 2012 WL 1981505, at *3 (reimbursing expenses such as "mediation fees, expert witness fees, electronic legal research, photocopying, postage, and travel expenses, each of which is the type 'the paying, arm's length market' reimburses attorneys") (citation omitted).

These expenses were reasonable and necessary in this Action and have been expended for the direct benefit of the Class. "Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses." *Anwar,* 2012 WL 1981505, at *3 (citation omitted). Similarly, here, the litigation expenses incurred by counsel should be reimbursed.

**D.      Lead plaintiffs should be awarded their reasonable costs and expenses under 15 U.S.C. § 77z-1(a)(4)**

The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 77z-1(a)(4). "Service payments 'are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.'" *Nichols v. Noom, Inc.*, No. 20-CV-3677 (KHP), 2022 WL 2705354, at *11 (S.D.N.Y. July 12, 2022) (citation omitted).

Here, Plaintiffs spent a significant amount of time representing the Settlement Class throughout the course of the litigation and having incurred certain expenses due to their representation of the Class, now seek an aggregate of $10,000 in PSLRA awards. Guiney Decl. ¶

17

84.

Plaintiffs have diligently pursued their claims against Defendants for several years. They have actively and effectively fulfilled their obligations as representatives of the Settlement Class, complying with the many demands placed upon them, and providing valuable assistance to Lead Counsel. In devoting substantial effort to the commencement of, oversight of, and participation in this Action on behalf of the Settlement Class, Lead Plaintiffs, among other things: (i) participated in discussions with Lead Counsel concerning significant developments in the litigation; (ii) reviewed pleadings and briefs; and (iii) oversaw settlement negotiations on behalf of the Settlement Class. Guiney Decl. ¶ 79.

The foregoing efforts by Plaintiffs are precisely the types of activities courts have found to support reimbursement to class representatives. *See, e.g., Marsh & McLennan*, 2009 WL 5178546, at *21 (noting that these efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives").

Thus, the modest amounts requested are fair and reasonable. These awards were included in the notice and no class member has objected to date. Lead Counsel respectfully submits that the requested reimbursement awards should be approved by the Court.

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award: (i) attorneys' fees in the amount of 33.3% of the Settlement Fund, or $833,333 plus interest incurred at the same rate as the Settlement Fund; (ii) reimbursement of $44,131.99 litigation expenses; and (iii) $10,000 in total in PSLRA awards representing Plaintiffs' costs and expenses.

Dated: November 8, 2024                    Respectfully submitted,

**WOLF HALDENSTEIN ADLER**

18

Case 1:21-cv-07251-KHP   Document 109   Filed 11/08/24   Page 25 of 25

**FREEMAN & HERZ LLP**

/s/  Matthew M. Guiney
Matthew M. Guiney
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
guiney@whafh.com

*Lead Counsel for Plaintiffs and the Class*

Brian Schall
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel*

19